FINRA CORP. ACTION FAQ

## FAQ: MMTLP Corporate Action and Trading Halt

March 16, 2023



FINRA has received a number of questions relating to a corporate action and trading halt in the Series A Preferred Shares of Meta Materials, Inc. (Meta Materials) that traded under the symbol MMTLP. This *Investor Insights* article provides general information about how corporate actions and trading halts are processed as well as specific information related to MMTLP.

### Corporate Actions—FINRA's Role

A corporate action occurs when a company makes a change that has or could have an impact on its stock and shareholders. Corporate actions include issuing a dividend, engaging in a stock split, or effecting a merger.

When a company decides to engage in a corporate action that affects a security listed on a national securities exchange, the company must provide notice to the listing exchange and comply with all applicable listing standards and rules of the exchange concerning that security. In contrast, when a company decides to engage in a corporate action that affects an unlisted security that trades in the over-the-counter (OTC) market, federal law requires that the company submit notice of the corporate action to FINRA, and FINRA reviews the submission and publishes a notification about the corporate action to the marketplace (unless the submission is deemed deficient by FINRA). This function helps to keep investors and the market informed of corporate actions affecting OTC securities and of relevant dates.

A company can have both listed and unlisted securities, so different rules can apply to the same company depending on which security is the subject of a corporate action. In any event, FINRA does not initiate, approve, or conduct the underlying corporate action that the company is making, and the

Pg 1

company itself is responsible for making sure the corporate action complies with all applicable laws and regulations.

FINRA regulates broker-dealers that facilitate investor access to the securities markets, including the OTC market. However, unlike securities exchanges that list securities, FINRA does not establish listing standards or otherwise regulate the companies that issue OTC securities.

The MMTLP Corporate Action

Meta Materials' Series A Preferred Shares were issued in connection with the June 2021 merger between Torchlight Energy Resources and Metamaterial Inc. While the company that resulted from the merger—Meta Materials—had common stock that became listed on Nasdaq, the Series A Preferred Shares were unlisted. These unlisted shares later began trading in the OTC market under the symbol MMTLP (further discussion below).

On July 15, 2022, the company filed a Form S-1 registration statement with the Securities and Exchange Commission (SEC) to register the issuance of the common stock of Next Bridge Hydrocarbons, Inc. (Next Bridge), which at that time was a wholly owned subsidiary of Meta Materials. As disclosed in the registration statement, Meta Materials would distribute to MMTLP shareholders one share of Next Bridge common stock per one share of MMTLP held, and would cancel the Series A Preferred Shares trading under the symbol MMTLP. According to the Form S-1 filed, immediately after the corporate action, Next Bridge would be an independent public reporting company. After several amendments, the registration statement for the Next Bridge shares became effective on November 18, 2022.

On November 23, 2022, Meta Materials issued an announcement regarding the Next Bridge / MMTLP corporate action, stating that each holder of its Series A Preferred Shares—MMTLP—as of December 12, 2022, would become entitled to receive one share of the common stock of Next Bridge for every one share of MMTLP held. Meta Materials also stated that the Next Bridge shares would be distributed to MMTLP shareholders on December 14, 2022, at which time all MMTLP shares would be automatically cancelled and MMTLP holders would cease to have any rights with respect to those shares. In addition, the company stated that the Next Bridge shares received in the distribution would not be eligible for electronic transfer through The Depository Trust Company (DTC) (or through any other established clearing corporation).

As required by federal law, Meta Materials also notified FINRA of the Next Bridge / MMTLP corporate action. Consistent with the information provided by Meta Materials, on December 6 and 8, 2022, FINRA provided public notice of the corporate action on FINRA's website. FINRA's corporate action notice stated that the Next Bridge shares would be distributed to those MMTLP shareholders with settled positions as of December 12, 2022, and further clarified that any purchasers after December 8, 2022, (*i.e.*, those with trades due to settle on or after December 13, 2022) would not be entitled to receive Next Bridge shares in the corporate action distribution. FINRA's corporate action notice also stated that the MMTLP symbol would be deleted effective December 13, 2022 (*i.e.*, when an issuer cancels shares, FINRA will likewise

delete the symbol; see the company's announcement stating that the MMTLP shares were to be cancelled as of the December 14, 2022, distribution date of the Next Bridge shares).

On December 9, 2022, FINRA halted trading in MMTLP. One of FINRA's roles in regulating the activities of broker-dealers trading OTC equity securities is exercising the authority to require such firms to halt quoting and trading activities when FINRA determines that doing so is necessary to protect investors and the public interest. Since imposing the halt, FINRA has received questions regarding the MMTLP trading halt and its impact on investors. Below are answers to some questions FINRA has received.

### 1. Why did FINRA halt trading in MMTLP?

FINRA is permitted under its rules to impose a quoting and trading halt in an OTC equity security where FINRA determines that an extraordinary event has occurred or is ongoing that has had a material effect on the market for the security or has caused or has the potential to cause major disruption to the marketplace or significant uncertainty in the settlement and clearance process. FINRA made such a determination for MMTLP and halted trading on December 9.

Among FINRA's concerns were the facts that, after December 12, the MMTLP shares would cease to be DTC-eligible; MMTLP shares would be cancelled at the time of the distribution (*i.e.*, December 14); and Next Bridge common stock was not expected to be DTC-eligible—raising uncertainty regarding how transactions executed after December 8 would settle in an orderly manner in relation to these dates. Had MMTLP continued trading after December 8, there was the possibility that investors buying MMTLP during that time period may not have realized that those shares were about to be cancelled by Meta Materials, that they may not receive MMTLP shares before they were cancelled, and that they would not be recorded on December 12 as MMTLP holders eligible to receive Next Bridge common stock in the distribution.

### 2. Why did FINRA halt trading on December 9 if shareholders as of December 12 were entitled to receive the Next Bridge distribution?

FINRA halted trading in MMTLP on Friday, December 9, because securities transactions typically must settle within two business days in accordance with SEC rules. This means that trades in MMTLP executed on December 8 typically would settle on December 12, while trades executed on December 9 or December 12 typically would not settle until after December 12. This is important because a seller ceases to be a holder of shares and a purchaser becomes a holder of shares only after a transaction settles. Therefore, for purposes of the Next Bridge / MMTLP corporate action, only those trades in MMTLP that were executed on or before December 8 typically would have settled in time to establish the purchaser as a new holder of the shares as of December 12.

In addition, after December 12, the MMTLP shares would no longer be DTC-eligible (and the Next Bridge shares were not expected to be DTC-eligible). This means that, after December 12, any unsettled trades in MMTLP would have needed to be handled through broker-to-broker processes outside of DTC. Thus, there was uncertainty about whether trades executed *after* December 8 would settle in an orderly manner, including whether they would settle before the MMTLP shares were cancelled on December 14.

Pg 3

In other words, for trades in MMTLP executed after December 8, the seller of MMTLP shares would still have been recorded as the holder eligible to receive Next Bridge shares as part of the corporate action distribution, and the buyer would not be recorded as eligible to receive Next Bridge shares in the distribution. Moreover, the buyer would have purchased shares that would be cancelled on December 14, and there was uncertainty as to whether these trades would be settled in an orderly manner before the cancellation date. *See also* Question # 7 below.

### 3. Has the MMTLP trading halt ended?

Yes. As stated in the MMTLP trading halt notice published on December 9, the MMTLP halt ended concurrent with FINRA's deletion of the MMTLP symbol, which occurred on December 13, 2022. FINRA's website was updated on February 16, 2023, to reflect the December 13 end of the trading halt (this update occurred later than normal due to a coding issue introduced in connection with a system migration). The MMTLP shares were cancelled by the issuer on December 14 and therefore it has not been possible to trade them since that time, irrespective of the halt status displayed on FINRA's website.

### 4. How were MMTLP shares publicly quoted and traded in the first place?

The answer to the question of whether a security is tradeable is determined by the application of federal law, including any applicable SEC rules. Where a security is or becomes tradeable, a public market for the security may develop—as it did with MMTLP.

FINRA does not approve a company's issuance of securities or approve or determine when broker-dealers or customers may begin trading those securities. However, once a broker-dealer executes a transaction in an unlisted security, the firm is required by FINRA rules to report the executed transaction to FINRA. And where a symbol does not yet exist for the security, the broker-dealer must request a symbol from FINRA. Because the issuer obtained a CUSIP for the Series A Preferred Shares, FINRA assigned the MMTLP symbol in 2021 upon request by a broker-dealer to facilitate electronic reporting of an executed transaction that occurred in the security.

This trade reporting process is separate from the process by which a broker-dealer begins quoting a security in compliance with SEC Rule 15c2-11. Rule 15c2-11 requires a broker-dealer, prior to quoting a security on its own behalf, to review specified information about the company that issued the security (unless an exception applies). In some cases, a broker-dealer also must file a form with FINRA—a Form 211. In this case, FINRA did not receive a Form 211. Instead, broker-dealers relied on an exception to SEC Rule 15c2-11 that permits broker-dealers to publish a quotation for unsolicited customer orders.

### 5. Did FINRA cancel the MMTLP shares? Did FINRA delete the MMTLP symbol?

FINRA did not cancel the MMTLP shares. The issuer, Meta Materials, cancelled the shares effective December 14. In fact, FINRA does not and cannot cancel any securities that are issued by a company—this was an action of the issuer. However, just as FINRA assigns symbols to unlisted securities, FINRA also can unassign or "delete" a symbol, for example, where it is no longer needed to quote or trade a security. In this case, FINRA deleted the MMTLP symbol on December 13 in light of the imminent

Pg4

cancellation of the shares as announced by the company in connection with the Next Bridge / MMTLP corporate action.

On December 8, FINRA amended its original December 6 corporate action announcement to clarify, among other things, that it would be deleting the MMTLP symbol on December 13 rather than cancelling the shares (because the issuer itself was responsible for cancelling the Series A Preferred Shares). Because the MMTLP shares have been cancelled by the issuer, they can no longer be traded, and the symbol can no longer be reinstated.

**6. What happened to investors who did not sell their MMTLP shares prior to the trading halt?**

Investors who had settled positions in MMTLP on December 12 were holders entitled to receive shares of Next Bridge as part the Next Bridge / MMTLP corporate action. Thus, applying the standard settlement cycle of T+2, an investor who did not sell MMTLP by December 8 would receive Next Bridge shares in the distribution—and this would be the case even had FINRA not halted trading on December 9.

As described in the Next Bridge prospectus filed with the SEC, Next Bridge anticipated that the distribution process for the Next Bridge shares would take about two weeks and would be effected by its transfer agent, American Stock Transfer & Trust Company LLC. Transfer agents work for securities issuers to record changes of securities ownership, maintain security holder records, cancel and issue certificates, and distribute dividends. SEC rules and regulations include registration and other requirements for registered transfer agents. FINRA does not regulate transfer agents and does not have a role in distributing securities as part of a corporate action.

*See also* Question #10 regarding what investors should do if they have not received their Next Bridge shares and Question #11 regarding whether the Next Bridge shares are tradeable.

**7. What would have happened to any trades executed after December 8 had FINRA not halted trading in MMTLP?**

As mentioned above, applying the T+2 settlement cycle, trades executed after December 8 would not have settled in time for the purchaser to become a holder of the MMTLP shares by December 12. Any trades in MMTLP not settled by December 12 would have needed to be resolved through broker-to-broker processes outside of DTC. There also was concern that the MMTLP shares may have been cancelled by the issuer before broker-to-broker settlement occurred. In addition, there was the potential for confusion and disagreement in the settlement process among the parties with respect to which security should be delivered to the buyer. For example, an investor entering a buy order in MMTLP on or after December 9 may not have understood that they would not be a holder entitled to receive the Next Bridge shares in the corporate action distribution (because the seller of MMTLP shares during that time period would have received Next Bridge shares as part of the distribution), and that the MMTLP shares purchased would imminently be cancelled.

**8. Is there public data concerning short sale activity in MMTLP?**

Pg 5

Yes, there are several data sets published by FINRA and the SEC about short sale activity that include data for MMTLP.

***Short Interest Data:*** "Short interest" in a security is a snapshot of the total open short positions existing on the books and records of broker-dealers for that security on a given settlement date. FINRA's short interest reports reflect short positions held both in customer and proprietary accounts and are published twice each month. FINRA published short interest reports for MMTLP from October 15, 2021, through November 30, 2022 (the last short interest reporting settlement date available for MMTLP). These reports are available on FINRA's website. Short interest reports for Next Bridge are not available on FINRA's website because firms report short interest by security symbol and Next Bridge does not have a symbol. FINRA is considering how it might enhance the usefulness of the short interest information available to investors, which could include changes to the content and frequency of the short interest reporting.

***Short Sale Volume:*** FINRA also publishes daily short sale volume data by security for OTC equity securities. Importantly, while the two data sets are related in that short sale volume activity may ultimately result in a reportable short interest position, they are not the same. In fact, a particular short sale will not necessarily result in a short position that is later reported in FINRA's short interest report. For example, while the total short sale volume for transactions in MMTLP that settled from November 16, 2022, through November 30, 2022, was 7,413,679 shares, the published short interest for MMTLP on settlement date November 30, 2022, was 4,658,068 shares.

Differences in the two data sets are expected and occur for a variety of reasons; for example, where a short sale has been covered (either on the same day or at another time prior to the short interest reporting settlement date), which means that there is no longer a short position to report as short interest by the reporting settlement date. As another example, the daily short sale volume may reflect the execution of a short sale transaction by a firm solely to facilitate an immediate execution of a customer long sale, such that the short sale does not and was not intended to result in a short position. FINRA encourages investors to review information on the differences between these data sets. Importantly, the daily short sale volume does not equate to an end-of-day short position and should not be confused with short interest.

***Fails-to-Deliver:*** The SEC publishes data on the total quantity of "fails-to-deliver" per security as of each reporting settlement date. As the SEC has explained, a fail-to-deliver can occur as the result of either a long or a short sale. For example, a fail-to-deliver can result from a "naked" short sale—where the seller does not borrow or arrange to borrow shares in time to make delivery to the buyer within the standard settlement period. A fail-to-deliver also may result from a long sale where there was a delay in the delivery of shares within the standard settlement period.

Among other things, SEC Regulation SHO imposes close-out requirements for fails-to-deliver in equity securities. These requirements include close-outs of fails-to-deliver in threshold securities. A "threshold security" is a security that meets defined criteria designed to address concerns regarding large and

persistent failures to deliver and potentially abusive "naked" short selling. Regulation SHO's threshold security criteria include quantitative standards that apply to the securities of issuers that are SEC-reporting companies. FINRA has a separate rule, with a different quantitative threshold, for the securities of issuers that are not SEC-reporting companies.

Due to a systems coding issue, FINRA incorrectly classified MMTLP as the security of a non-SEC-reporting company and, as a result, incorrectly published its "Threshold Securities List" showing that MMTLP met the FINRA threshold standard from October 22, 2021, through January 4, 2022, and from October 17, 2022, through December 13, 2022. While MMTLP did meet the quantitative criteria under FINRA Rule 4320, it was subject to the Regulation SHO standard instead because MMTLP was issued by an SEC-reporting company. Since it began trading in October 2021, MMTLP did not have fails-to-deliver of the size or duration that would have rendered it a threshold security under Regulation SHO, and it was therefore an error to publish it on the Threshold Securities List. FINRA has now removed MMTLP from the Threshold Securities List.

**9. What happens if short positions in MMTLP were not closed out before FINRA halted trading?**

Broker-dealers have operational conventions in place for adjusting short positions following a corporate action. In this instance, FINRA understands that firms have adjusted short positions in MMTLP to reflect an equal size short position in Next Bridge (*i.e.*, an account with a short position of 100 shares of MMTLP now reflects a short position of 100 shares of Next Bridge). In other words, the corporate action did not compel short positions to be closed or extinguish any obligations associated with outstanding short positions.

**10. What should investors do if they believe they have not received their Next Bridge shares?**

If you held a settled position in MMTLP on December 12, 2022, your account should reflect your position in Next Bridge. Your broker-dealer is required to maintain possession or control of your shares in compliance with federal law. You also may request a transfer of shares from the broker-dealer's name to your name; however, this transfer may take time to achieve and your broker-dealer or the transfer agent may charge a fee for this service. If you believe that your shares are not properly reflected in your account or your broker-dealer has not been willing to transfer your shares pursuant to your instructions, you should contact your broker-dealer to understand the status of your Next Bridge shares.

Your broker-dealer may reflect your Next Bridge shares in your account using a numeric or alphanumeric identifier. Different firms may use different identifiers because an official CUSIP number, which is an identifier assigned by CUSIP Global Services at the request of the issuer—not FINRA— has not, to date, been assigned to Next Bridge common stock. The absence of an official CUSIP number does not affect the status of the Next Bridge shares reflected in your account. If you believe that your broker-dealer has not provided a satisfactory explanation to your questions, you may submit an investor complaint to FINRA.

**11. Are the Next Bridge shares tradeable?**



Pg 7

As discussed above, Next Bridge filed a Form S-1 registration statement with the SEC to register the issuance of 165,523,363 shares of common stock in connection with the Next Bridge / MMTLP corporate action, which became effective on November 18, 2022. According to the prospectus, Next Bridge is an independent public reporting company. The shares are freely tradeable under federal law.

As of the date of this article, the Next Bridge shares neither have a CUSIP number nor a security symbol. If Next Bridge were to obtain a CUSIP number, that would facilitate secondary market trading. Broker-dealers would be able to request that FINRA assign a symbol to the Next Bridge shares in connection with quoting and trading activity (where such request is consistent with FINRA rules and policies and with federal law). However, even without a CUSIP number, any trades in Next Bridge shares executed by a broker-dealer must be reported by the firm to FINRA for regulatory purposes through a file submission process.

---

As part of its mission, FINRA provides resources on its website to assist retail investors through the investment process. As relevant to the questions around trading in MMTLP, FINRA has published Investor Insight articles addressing short interest and short sale volume data, as well as corporate actions and the mechanics and risks of trading OTC securities. Visit FINRA's For Investors webpage for more information.

*Note: This article was modified on March 27, 2023, to remove references to the registration of the MMTLP shares, which raised questions that are not relevant to the main focus of this article. The registration status of the MMTLP shares is determined under the Securities Act of 1933 and applicable SEC rules and interpretive guidance thereunder, and not FINRA rules.*

### Here's a bullet-point timeline of the MMTLP corporate action and related events based on the FINRA FAQ document dated March 16, 2023:

- **June 2021:** Torchlight Energy Resources merges with Metamaterial Inc., forming Meta Materials, Inc. Series A Preferred Shares (later MMTLP) are issued, unlisted but eventually traded OTC. Meta Materials' common stock lists on Nasdaq.
- **October 15, 2021:** FINRA begins publishing short interest reports for MMTLP after a broker-dealer requests the symbol for trade reporting.
- **July 15, 2022:** Meta Materials files a Form S-1 with the SEC to register Next Bridge Hydrocarbons, Inc. common stock for distribution to MMTLP shareholders, planning to cancel MMTLP shares.
- **November 18, 2022:** The Form S-1 becomes effective after amendments.
- **November 23, 2022:** Meta Materials announces the corporate action: MMTLP holders as of December 12, 2022, receive one Next Bridge share per MMTLP share, distributed December 14, 2022, when MMTLP shares are canceled.

Pg 8

- **December 6, 2022**: FINRA issues a public notice of the corporate action.
- **December 8, 2022**: FINRA amends the notice, clarifying MMTLP symbol deletion on December 13, 2022, and that purchases after this date won't receive Next Bridge shares.
- **December 9, 2022**: FINRA halts trading in MMTLP due to settlement uncertainties.
- **December 12, 2022**: Record date for MMTLP holders to receive Next Bridge shares.
- **December 13, 2022**: FINRA deletes the MMTLP symbol; trading halt officially ends.
- **December 14, 2022**: Meta Materials cancels MMTLP shares; Next Bridge shares are distributed.
- **February 16, 2023**: FINRA updates its website to reflect the halt's end (delayed due to a coding issue).
- **March 16, 2023**: FINRA publishes this FAQ.

This timeline aligns with the document's details, focusing on key dates and actions.

## MMTLP 1st CORPORATE ACTION

**Daily List Events**

### Summary

| Date/Time | Event Type | Eff/Ex Date/Time | Symbol | Issue Name | Market |
|---|---|---|---|---|---|
| 12/06/2022 14:53:29 | Exchanged | 12/13/2022 00:00:00 | MMTLP | META MATLS INC PFD SER A | OTC Equity |

### Comments

MMTLP shareholders with settled positions as of 12/12/22 Record Date will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held on Pay Date of 12/14/22. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. MMTLP shares will be canceled effective 12/13/22.

### Details

| | Current Value |
|---|---|
| Daily List Date/Time | 12/06/2022 14:53:29 |
| Event Type | Exchanged |
| Effective/Ex Date/Time | 12/13/2022 00:00:00 |
| Symbol | MMTLP |
| Issue Name | META MATLS INC PFD SER A |
| Class | |
| Market Category | OTC Equity |
| Offering Type | No Restrictions |
| Daily List Comment | MMTLP shareholders with settled positions as of 12/12/22 Record Date will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held on Pay Date of 12/14/22. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. MMTLP shares will be canceled effective 12/13/22. |



Let's analyze whether the two corporate action notices for MMTLP, dated December 6 and December 8, 2022, comply with SEC Rule 10b-17, which requires issuers to notify FINRA of certain corporate actions affecting OTC securities at least 10 days before the record date. Here's a 200-word evaluation:

**December 6, 2022 Notice**: This notice announces that MMTLP shareholders with settled positions as of the record date, December 12, 2022, will receive one Next Bridge Hydrocarbons share per MMTLP share on the payable date, December 14, 2022. It specifies that purchases after December 8 won't receive the distribution, and MMTLP shares will be canceled effective December 13, 2022. Rule 10b-17 requires notification to FINRA at least 10 days before the record date (December 12), meaning notice was due by December 2. The notice was published on December 6, only 6 days prior, failing to meet the 10-day requirement.

**December 8, 2022 Notice**: This amends the December 6 notice, clarifying that the MMTLP symbol will be deleted (not canceled) on December 13, 2022, with other details unchanged. It still references the same record date (December 12) and payable date (December 14). Published 4 days before the record date, it also fails the 10-day notice requirement of Rule 10b-17.

Both notices violate Rule 10b-17's timing requirement, as they were issued too late. However, FINRA's role is to publish what the issuer submits, and Meta Materials was responsible for timely notification. The notices themselves are clear but non-compliant due to timing.

Pg 10

PURCHASES AFTER 12 08 RECEIVE NO DISTRIBUTION

### The first MMTLP Corporate Action
Comments

MMTLP shareholders with settled positions as of 12/12/22 Record Date will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held on Pay Date of 12/14/22. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. MMTLP shares will be canceled effective 12/13/22.

### The December 8th revised Corporate Action
Comments

See Daily List of 12/6/2022. Announcement Revised: MMTLP shareholders with settled positions as of 12/12/22 will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. Symbol: MMTLP will be deleted effective 12/13/22.

LII > Electronic Code of Federal Regulations (e-CFR)
> Title 17—Commodity and Securities Exchanges
> CHAPTER II—SECURITIES AND EXCHANGE COMMISSION
> PART 240—GENERAL RULES AND REGULATIONS, SECURITIES EXCHANGE ACT OF 1934
> Subpart A—Rules and Regulations Under the Securities Exchange Act of 1934
> Manipulative and Deceptive Devices and Contrivances
> § 240.10b-17 Untimely announcements of record dates.

# 17 CFR § 240.10b-17 - Untimely announcements of record dates.

CFR    Table of Popular Names

### § 240.10b-17 Untimely announcements of record dates.

**(a)** It shall constitute a "manipulative or deceptive device or contrivance" as used in section 10(b) of the Act for any issuer of a class of securities publicly traded by the use of any means or instrumentality of interstate commerce or of the mails or of any facility of any national securities exchange to fail to give notice in accordance with paragraph (b) of this section of the following actions relating to such class of securities:

> **(1)** A dividend or other distribution in cash or in kind, except an ordinary interest payment on a debt security, but including a dividend or distribution of any security of the same or another issuer;

> **(2)** A stock split or reverse split; or

**14. What information must be submitted to be in compliance with SEA Rule 10b-17?**

SEA Rule 10b-17 prescribes information that must be included in the notice, including, but not limited to: the title of the security; date of declaration; record date; payment or distribution date; for cash distributions, the amount to be paid per share; for distribution of securities, generally the amount of the security outstanding immediately prior to and immediately following the dividend or distribution and the rate of the dividend or distribution; details of any condition that must be satisfied to enable the payment or distribution; and additional details relating to stock or reverse splits. Issuers should review the text of SEA Rule 10b-17 to fully understand their obligation, which may be amended from time to time.

**(3)** A rights or other subscription offering.

**(b)** Notice shall be deemed to have been given in accordance with this section only if:

**(1)** Given to the National Association of Securities Dealers, Inc., no later than 10 days prior to the record date involved or, in case of a rights subscription or other offering if such 10 days advance notice is not practical, on or before the record date and in no event later than the effective date of the registration statement to which the offering relates, and such notice includes:

**(i)** Title of the security to which the declaration relates;

**(ii)** Date of declaration;

**(iii)** Date of record for determining holders entitled to receive the dividend or other distribution or to participate in the stock or reverse split;

**(iv)** Date of payment or distribution or, in the case of a stock or reverse split or rights or other subscription offering, the date of delivery;

**(v)** For a dividend or other distribution including a stock or reverse split or rights or other subscription offering:

**(a)** In cash, the amount of cash to be paid or distributed per share, except if exact per share cash distributions cannot be given because of existing conversion rights which may be exercised during the notice period and which may affect the per share cash distribution, then a reasonable approximation of the per share distribution may be provided so long as the actual per share distribution is subsequently provided on the record date,

**(b)** In the same security, the amount of the security outstanding immediately prior to and immediately following the dividend or distribution and the rate of the dividend or distribution,

**(c)** In any other security of the same issuer, the amount to be paid or distributed and the rate of the dividend or distribution,

**(d)** In any security of another issuer, the name of the issuer and title of that security, the amount to be paid or distributed, and the rate of the dividend or distribution and if that security is a right or a warrant, the subscription price,

**(e)** In any other property (including securities not covered under paragraphs (b)(1)(v) (*b*) through (*d*) of this section) the identity of the property and its value and basis for assigning that value;

**(vi)** Method of settlement of fractional interests;

**(vii)** Details of any condition which must be satisfied or Government approval which must be secured to enable payment of distribution; and in

Pg 14

**(viii)** The case of stock or reverse split in addition to the aforementioned information;

   *(a)* The name and address of the transfer or exchange agent; or

**(2)** The Commission, upon written request or upon its own motion, exempts the issuer from compliance with paragraph (b)(1) of this section either unconditionally or on specified terms or conditions, as not constituting a manipulative or deceptive device or contrivance comprehended within the purpose of this section; or

**(3)** Given in accordance with procedures of the national securities exchange or exchanges upon which a security of such issuer is registered pursuant to section 12 of the Act which contain requirements substantially comparable to those set forth in paragraph (b)(1) of this section.

**(c)** The provisions of this rule shall not apply, however, to redeemable securities issued by open-end investment companies and unit investment trusts registered with the Commission under the Investment Company Act of 1940.

(Secs. 10(b), 23(a), 48 Stat. 891, as amended, 49 Stat. 1379, 15 U.S.C. 78j)
[36 FR 11514, June 15, 1971, as amended at 37 FR 4330, Mar. 2, 1972]

## 💼 CFR Toolbox



Law about... Articles from Wex

Pg 15