**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| CONTIQUE WILLCOT,<br><br>                              Plaintiff,<br><br>     v.<br><br>SECURITIES & EXCHANGE COMMISSION,<br>GTS SECURITIES LLC, ARI RUBINSTEIN,<br>NEXT BRIDGE HYDROCARBONS, INC.,<br>JOHN BRDA, GREGORY MCCABE, FINANCIAL<br>INDUSTRY REGULATORY AUTHORITY,<br><br>                              Defendants. | Case No.: 7:24-CV-00317-RCG-DC |

**DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION TO LIFT PSLRA DISCOVERY STAY
AND EXPEDITE DISCOVERY**

I.  **INTRODUCTION**

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"), prior to its answer date and without waiver of its right to submit Rule 12(b) motions, submits this Opposition to Plaintiff Contique Willcot's ("Willcot") Motion to Lift PSLRA Discovery Stay and Expedite Discovery (the "Motion") [ECF nos. 29, 30, 31 & 32].[1]

First, the Motion is procedurally improper and premature. As an initial matter, Willcot failed to meet and confer with FINRA before filing the Motion, in violation of Local Rule of Civil Procedure 7(i). In addition, no discovery is permitted prior to a Rule 26(f) conference taking place, and no Rule 26(f) conference has been held nor is one scheduled. Indeed, none of the defendants have yet responded to Willcot's First Amended Complaint ("FAC").[2] Finally, none of the factors considered in determining whether to provide expedited discovery weigh in Willcot's favor. Most notably, Willcot does not satisfy the good cause requirement to expedite discovery under Rule 26 because discovery allegedly needed to oppose a motion to dismiss is not good cause.

Second, the Motion fails on the merits. There is no stay to lift because a motion to dismiss, which would trigger the Private Securities Litigation Reform Act's ("PSLRA") mandatory stay, has not been filed. Further, once FINRA files its Motion to Dismiss, thus triggering the mandatory stay, discovery will not be necessary to preserve documents potentially relevant to this action (should the FAC survive FINRA's forthcoming Motion to Dismiss) because there is no potential

---

[1] Willcot filed what appears to be the same motion four times.

[2] FINRA's responsive pleading deadline is May 12, 2025, at which point FINRA will be moving to dismiss the FAC on multiple grounds, including, but not limited to: (i) the Court's lack of personal jurisdiction over FINRA in this action; (ii) FINRA's regulatory immunity, which bars all claims asserted against it; and (iii) the lack of any private right of action against FINRA for the alleged misconduct described in the FAC. By filing this Opposition, FINRA is not submitting to this Court's jurisdiction over FINRA in this matter.

for destruction of relevant information. FINRA is duty-bound by federal law to preserve its records. Moreover, Willcot will not suffer undue prejudice if discovery awaits the Court's decision on FINRA's Motion to Dismiss. Indeed, the Motion to Dismiss should be decided at the earliest stages of litigation and before discovery. FINRA has numerous straightforward, irrefutable legal bases for dismissing Willcot's FAC. Most importantly, the Court lacks personal jurisdiction over FINRA and FINRA is absolutely immune from suit and should not be subjected to the burdens of discovery. Finally, the discovery that Willcot seeks is not "particularized" as required by the PSLRA.[3] Rather, it is voluminous, burdensome, and irrelevant to the purported need (defending against FINRA's forthcoming Motion to Dismiss, which will be based on legal arguments rather than factual issues, rendering discovery wholly unnecessary). In sum, Willcot's Motion is procedurally and substantively deficient and should be denied.

## II. ARGUMENT

### A. Willcot Failed to Comply with Local Rule 7(i)

This case is in its infancy. The FAC [ECF No. 3] contains eight causes of action against six parties related to alleged securities fraud surrounding an equity stock that traded on the over-the-counter ("OTC") market under the ticker MMTLP between October 2021 and December 2022, and the equity stock for Torchlight Energy Resources, Inc. ("TRCH"). To date, none of the six defendants have answered or otherwise responded to the FAC, as their responses are not yet due.[4] As a result, a discovery conference contemplated by the Federal Rules of Civil Procedure has not

---

[3] The PSLRA provides: "In any private action arising under this chapter, all discovery . . . shall be stayed . . . unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B).

[4] *See* fn. 2, above.

been scheduled. *See* Fed. R. Civ. P. 26(f). Nonetheless, on April 24, 2025, Willcot filed this Motion seeking expedited discovery and to lift the mandatory stay provision in the PSLRA. *See generally* Motion. In so doing, Willcot "seeks access to [Blue Sheet Data] and TRCH/MMTLP transaction data from June 21, 2021, to December 12, 2022, to investigate alleged market manipulation and regulatory failures that resulted in the loss of his $30,000+ investment." Motion at 1.

Under Local Rule of Civil Procedure CV-7(i), the movant on a non-dispositive motion must confer with the parties in an attempt to resolve the matter prior to filing the motion. *See* LR CV-7(i) ("The court may refuse to hear or may deny a non-dispositive motion unless the movant advises the court within the body of the motion that counsel for the parties have first conferred in a good-faith attempt to resolve the matter by agreement and, further, certifies the specific reason that no agreement could be made."). Here, Willcot did not meet and confer as required by the Court's rules, and therefore, the Motion does not contain the required certification.

**B.    There is No Basis for Expedited Discovery Under Fed. R. Civ. P. 26**

Willcot's Motion is also premature because "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1).

In the Fifth Circuit, a party seeking expedited discovery before a Rule 26(f) conference must establish "good cause" for the discovery sought. *See, e.g., Davis v. Duncan Energy Partners, L.P.*, 801 F.Supp.2d 589. 597-98 (S.D. Tex. 2011). To determine whether good cause exists courts consider the following factors: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery

process the request was made." *Greenthal v. Joyce*, 2016 WL 362312, at *2 (S.D. Tex. Jan. 29, 2016) (citations omitted).

Here, based on the factors cited in *Greenthal*, Willcot has not established good cause. First, there is no preliminary injunction pending. Second, the vast breadth of Willcot's request—encompassing 18-months of Blue Sheet Data and any other trading data related to TRCH or MMTLP—is disproportionate to any alleged need. In fact, Willcot has not and cannot establish any alleged need, given that FINRA will be filing its Motion to Dismiss based on straightforward legal arguments addressing the Court's lack of jurisdiction and long-standing, irrefutable precedent holding that FINRA is absolutely immune from suit (among other arguments).[5]

As to the third factor – the purpose for the expedited discovery – Willcot's asserted purpose is deficient as a matter of law. Willcot claims that he will face "undue prejudice by preventing [him] from opposing dismissal and risks evidence destruction" and access to Blue Sheet Data is "essential to proving Defendants' alleged misconduct." Motion at 1, 3. However, Willcot cites no factual basis for his unfounded concern of potential evidence destruction. Further, good cause does not exist where a plaintiff seeks to impose burdensome discovery upon a defendant in an effort to survive a forthcoming motion to dismiss. *See, e.g., United Biologics, LLC v. Am. Acad. of Allergy*, 2014 WL 12637937, at *4 (W.D. Tex. Mar. 20, 2014) ("Plaintiffs' proposed discovery requests suggest that the actual purpose of the proposed expedited discovery is to uncover facts necessary

---

[5] FINRA's upcoming Motion to Dismiss should also be decided expeditiously, and prior to discovery, given the fact that FINRA will be asserting an immunity defense. Immunity provides protection "not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery." *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (cleaned up). And the United States Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (citations omitted). Under the circumstances, FINRA reserves the right to move to stay any discovery or other case proceedings after filing its Motion to Dismiss.

to state a sufficient claim. This is not a purpose allowed by the Federal Rules."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

The fourth factor related to the burden of compliance also disfavors discovery. The burden on FINRA to collect, redact, and produce the desired information would be immense. Blue Sheet Data is an investigative tool available to FINRA's examination and investigation teams for the purpose of conducting regulatory investigations under FINRA Rules. *See* FINRA Rules 8211, 8213. In prior unsuccessful litigations seeking to obtain some of the same Blue Sheet Data, FINRA established that Blue Sheet Data is collected in a proprietary system, and the data contains highly sensitive and confidential data, including the personal, financial, and identifying information of other, third-party investors. *See* Affidavit of Sam Draddy ("Draddy Aff.") ¶¶ 8-16, attached as Exhibit A to the Declaration. of David C. Kent, filed concurrently herewith. FINRA itself limits internal access to this proprietary system. *Id.* ¶ 9. In addition, Blue Sheet Data is not made publicly available, and it is difficult to understand without significant knowledge, training, and experience. *Id.* ¶ 15-17. As a result, production of Blue Sheet Data would also impose a significant burden on FINRA in terms of both the volume and the nature of the information. Draddy Aff. ¶¶ 21-22.

Lastly, regarding the fifth factor, Willcot's discovery request is being made well in advance of the typical discovery process. Specifically, FINRA has not responded to the FAC, and the obligation to schedule a Rule 26(f) conference has not been triggered.

Accordingly, expedited discovery is not warranted here. *See, e.g., United Biologics, LLC*, 2014 WL 12637937, at *4 (denying expedited discovery in the form of interrogatories and document requests where the "over-broad requests suggest[ed] that [p]laintiffs [were] fishing for

facts . . . to replace asserted conclusions in their complaint."). Like other MMTLP investors who have prematurely and unsuccessfully sought Blue Sheet Data to support their conclusory claims against FINRA, Willcot's Motion should be denied.[6]

### C. Willcot's Motion to Lift the PSLRA Stay Lacks Merit

As an initial matter, Willcot's request to lift the PSLRA's stay is premature because the stay only arises if and when a defendant files a motion to dismiss. 15 U.S.C. § 78u-4(b)(3)(B). FINRA does anticipate filing a Motion to Dismiss. Thus, it will address Willcot's Motion as if it were timely—and in that case the request to lift the PSLRA stay nevertheless fails on its merits.

The party seeking expedited discovery bears the burden of establishing that the PSLRA mandatory stay should be lifted. *See Davis v. Duncan Energy Partners L.P.*, 801 F.Supp.2d 589, 592 (S.D. Tex. 2011) ("The party seeking expedited discovery bears the burden of demonstrating that the PSLRA's mandatory stay should be lifted."); *see also In re Cassava Sciences, Inc. Sec. Lit.*, 2023 WL 28436, at *2 (W.D. Tex. Jan. 2, 2023) ("The burden of establishing the need for a partial lifting of the discovery stay, not surprisingly, is a heavy one.") (citations omitted). To meet this burden, the plaintiff "must prove either that the requested discovery is needed to (1) preserve

---

[6] The following MMTLP-related cases were all dismissed with prejudice by other federal courts: *Hensley v. TD Ameritrade, Inc.,* No. 23-cv-5159, slip op. (W.D. Wash. Oct. 2, 2023); *Park v. FINRA*, 2023 WL 11795601, at *3-5 (N.D. Ga. Sept. 25, 2023); *Hofman v. Fidelity Brokerage Servs., LLC*, 2023 WL 3872564, at *6-8 (C.D. Cal. May 8, 2023); *Tawil v. FINRA,* 2023 WL 4353179, at *1-2 (N.D. Fla. May 24, 2023).

In addition, courts have justifiably rejected other retail investors' attempts to obtain pre-action discovery of Blue Sheet Data. *See Khorassani v. FINRA,* 2023 WL 4029701 (N.Y. Sup.Ct. N.Y. Cty. June 15, 2023); *see also Steamroller, LLC v. OTC Mkts. Grp., Inc.*, 2024 WL 3850536 (N.Y. Sup.Ct. N.Y. Cty. Aug. 15, 2024). Additionally, the plaintiff in *Traudt v. Rubenstein*, D. Vt. No. 2:24-cv-782-cr (D. Vt. July 17, 2024), another MMTLP investor, also made numerous unsuccessful attempts at obtaining expedited discovery, including Blue Sheet Data, prior to the court's adjudication of FINRA's motion to dismiss.

evidence or (2) prevent undue prejudice." *Cassava Sciences,* 2023 WL 28436, at *2 (citing 15 U.S.C. § 78u-4(b)(3)(B)); *see also* fn. 3.

### 1. Willcot Has Not Established a Need to Preserve Evidence.

Here, lifting the PSLRA's mandatory stay is not necessary to preserve evidence because FINRA is already legally obligated by the federal securities laws to retain all the trading data that Willcot seeks in his Motion. Code of Federal Regulations Title 17 includes express rules and regulations applicable to national securities associations, like FINRA. Part 240 contains the General Rules and Regulations for the Securities Exchange Act of 1934 ("Exchange Act") for "Preservation of Records and Reports of Certain Stabilizing Activities" and provides the following "[r]ecordkeeping rule" for, among other entities, national securities associations:

> Every national securities exchange, national securities association, registered clearing agency and the Municipal Securities Rulemaking Board shall keep and preserve at least one copy of all documents, including all correspondence, memoranda, papers, books, notices, accounts, and other such records as shall be made or received by it in the course of its business as such and in the conduct of its self-regulatory activity.

17 CFR 240.17a-1(a). The rules further provide that:

> Every national securities exchange, national securities association, registered clearing agency and the Municipal Securities Rulemaking Board shall keep all such documents for a period of not less than five years. . . .

17 CFR 240.17a-1(b).

Moreover, Willcot provides no support for his conclusion that there is an alleged threat that relevant evidence will be destroyed. The speculative assertions that evidence may be destroyed are insufficient to establish a basis to grant expedited discovery for the purpose of preserving evidence.

### 2. Willcot Has Not Established Any Undue Prejudice.

Discovery also is not necessary to prevent undue prejudice. Undue prejudice sufficient to lift the PSLRA mandatory stay means "improper or unfair treatment amounting to something less

than irreparable harm." *Alaska Laborers Emps. Ret. Fund v. Mays Clear Channel Commc'ns, Inc.*, 2007 WL 9710527, at *4 (W.D. Tex. Feb. 14, 2007). Here, Willcot does not allege any improper or unfair treatment; instead, Willcot is essentially arguing that a delay in commencing discovery will prejudice his ability to overcome a motion to dismiss. "Prejudice caused by the delay inherent in the PSLRA's discovery stay cannot be 'undue' prejudice because it is prejudice which is neither improper nor unfair." *In re Cassava Sciences,* 2023 WL 28436, at *2 (citations omitted). Indeed, the mandatory stay "is prejudice which has been mandated by Congress after a balancing of the various policy interests at stake in securities litigation, including a plaintiff's need to collect and preserve evidence." *In re CFS-Related Sec. Fraud Lit.*, 179 F.Supp.2d 1260, 1265 (N.D. Okla. 2001). As such, "exceptional circumstances are required to lift the stay." *Cassava Sciences*, 2023 WL 28436, at *2; *see also Barrett v. Wilson*, 2011 WL 13134638, at *3 (S.D. Tex. Aug. 15, 2011).

Willcot seeks all Blue Sheet Data and transaction data for TRCH and MMTLP transactions over an 18-month period, claiming that without this data, he will face "undue prejudice by preventing [Willcot] from opposing dismissal and risks evidence destruction." Motion at 1. These conclusory statements and broad requests are neither "particularized" nor "necessary to preserve evidence or to prevent undue prejudice to [plaintiff]." 15 U.S.C. § 78u-4(b)(3)(B); *Cassava Sciences*, 2023 WL 28436, at *2. *See also, e.g., Davis*, 801 F.Supp.2d at 593-94 (discovery seeking "all materials," and "all documents and communications" were not particularized to justify lifting the PSLRA stay). Rather, such fishing expeditions are the precise discovery abuses that the PSLRA's mandatory stay is designed to prevent. *See ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 354, n. 85 (5th Cir. 2002) (noting the heightened pleading standards for securities fraud claims as consistent with "the PSLRA's goal of flushing out suits which are built on mere

speculation and conclusory allegations and which aim to use discovery as a fishing expedition to substantiate frivolous claims") (citations omitted).

In addition, the information Willcot seeks is not even relevant to Willcot's purported purpose—namely to counter FINRA's defenses that will be raised in its forthcoming Motion to Dismiss. The arguments FINRA intends to advance are legal arguments for which the trading data sought by Willcot will have no bearing. For example, Blue Sheet Data and trading activity regarding TRCH or MMTLP will not assist the Court in deciding whether: (i) it has personal jurisdiction over FINRA in this action; (ii) whether FINRA's activities were regulatory in nature and thus Willcot's claims are barred by regulatory immunity; or (iii) whether Willcot may maintain a private right of action against FINRA for any claim asserted in the FAC. Accordingly, there is no basis to lift the PSLRA mandatory stay and allow expedited discovery.

      **D.**    **FINRA's Response to Willcot's Memorandum on FINRA's "Contemptuous Treatment of Retail Investors"**

Willcot's Motion also includes a separate memorandum to the Court, alleging that FINRA has engaged in a "[m]alicious smear campaign, a collusive whitewash designed to silence victims like Plaintiff, whose $30,000+ investment was obliterated by MMTLP's fraudulent halt." Motion p. 11-12. Willcot's assertions are wholly without merit or support.

The alleged "evidence" that Willcot points to in support of his argument that FINRA acted fraudulently does not demonstrate any wrongdoing by FINRA. *See e.g.*, Motion Exh. I [ECF 32-12] (a series of emails showing various FINRA employees performing their regulatory duties); *see also* Motion Exh. AA [ECF 32-2] (citing the SEC's complaint against MMTLP officers as evidence that FINRA somehow "enabled 2021's fraudulent MMTLP listing" (Motion p. 12)). Willcot also accuses FINRA, without any demonstrable support, of trying to "silence victims" and showing

"despicable contempt toward retail investors" (Motion p. 12)— when all FINRA has done is defend itself in legal proceedings.

Willcot then concludes that FINRA breached its "regulatory trust" in issuing the trade halt and that "*Credit Suisse Sec. (USA) LLC v. Simmonds,* 566 U.S. 221, 227 (2012) holds that misconduct voids immunity." Motion p. 12. However, *Credit Suisse* contains no such holding; it addresses equitable tolling. *Credit Suisse*, 566 U.S. at 227. Further, FINRA was authorized to issue the trade halt pursuant to its SEC-approved rules and subject to SEC oversight. *See* FINRA Rule 6440. *See also NHBPA v. Black (NHBPA II)*, 107 F.4th 415, 435 (5th Cir. 2024) (SEC has "formidable oversight power to supervise, investigate, and discipline [FINRA] for any possible wrongdoing or regulatory missteps.") (citations omitted). Finally, and importantly, as stated in one of the authorities cited by Willcot, there is no fraud exception to FINRA's immunity defense. *See DL Cap. Grp., LLC v. NASD*, 409 F.3d 93, 98 (2d Cir. 2005) ("precedent, not to mention common sense, strongly militates against carving out a 'fraud' exception to SRO immunity").

Willcot does not establish that FINRA did anything other than execute its regulatory duties in good faith, and the defenses FINRA intends to assert in its forthcoming Motion to Dismiss are dispositive. Moreover, Willcot failed to satisfy the burden of establishing any basis for expedited discovery. As such, the Motion should be denied.

### III. <u>CONCLUSION</u>

For all of the foregoing reasons, Willcot's Motion should be denied in its entirety.

Respectfully submitted,

*/s/ David C. Kent*

David C. Kent
State Bar No. 11316400
david.kent@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201
(469) 357-2500
(469) 327-0860 (fax)
*Attorneys for Defendant Financial Industry Regulatory Authority, Inc.*

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing was served on all *pro se* parties and counsel of record through the CM/ECF system on April 30, 2025.

*/s/ David C. Kent*