# EXHIBIT A




## Khorassani - Draddy Affidavit for signature.pdf

| | |
|---|---|
| DocVerify ID: | E4C44CF4-D197-4538-8CC3-74E6D0E599A4 |
| Created: | June 02, 2023 08:06:02 -8:00 |
| Pages: | 6 |
| Remote Notary: | Yes / State: PA |

This document is a DocVerify VeriVaulted protected version of the document named above. It was created by a notary or on the behalf of a notary, and it is also a DocVerify E-Sign document, which means this document was created for the purposes of Electronic Signatures and/or Electronic Notary. Tampered or altered documents can be easily verified and validated with the DocVerify veriCheck system. This remote online notarization involved the use of communication technology.

Go to www.docverify.com at any time to verify or validate the authenticity and integrity of this or any other DocVerify VeriVaulted document.

### E-Signature Summary

**E-Signature 1: Samuel J. Draddy (SD)**
June 02, 2023 08:30:34 -8:00 [F1718501F095] [198.202.241.81]
sam.draddy@finra.org (Principal) (ID Verified)

**E-Signature Notary: Mary Lalla (MEL)**
June 02, 2023 08:30:34 -8:00 [4BE96243E276] [98.115.32.44]
mary.lalla@faegredrinker.com
I, Mary Lalla, did witness the participants named above electronically sign this document.



DocVerify documents cannot be altered or tampered with in any way once they are protected by the DocVerify VeriVault System. Best viewed with Adobe Reader or Adobe Acrobat. All visible electronic signatures contained in this document are symbolic representations of the persons signature, and not intended to be an accurate depiction of the persons actual signature as defined by various Acts and/or Laws.

DocVerify ID: E4C44CF4-D197-4538-8CC3-74E6D0E599A4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------- X
DAVID KHORASSANI,                                :
                                                 :   INDEX NO. 153819/2023
                        Petitioner,              :
                                                 :   **AFFIDAVIT OF SAM DRADDY IN
        v.                                       :   SUPPORT OF FINRA'S OPPOSITION
                                                 :   TO PETITION TO COMPEL
FINANCIAL INDUSTRY REGULATORY                    :   DISCLOSURE (CPLR § 3102(C))**
AUTHORITY,                                       :
                                                 :
                        Respondent.              :
                                                 :
------------------------------------------------- X

STATE OF MARYLAND          )
                           ) ss:
COUNTY OF MONTGOMERY       )

I, Sam Draddy, being duly sworn, deposes and says:

1. I have worked in the securities industry for more than 20 years. I am currently employed at the Financial Industry Regulatory Authority, Inc. ("FINRA"), and I have been with FINRA for 16 years. I am a Senior Vice President in FINRA's National Cause and Financial Crimes Detection Programs, Market Investigations Team, and I am the head of FINRA's Insider Trading, Market Fraud, and Offering Investigations Unit. In my role at FINRA, I also supervise FINRA's Blue Sheets Team.

2. I submit this affidavit in support of FINRA's opposition to the Petition for Pre-Action Disclosure filed by the Petitioner in this proceeding. I have personal knowledge of the facts and information set forth herein.

3. FINRA is a private self-regulatory organization ("SRO") registered as a national securities association with the Securities and Exchange Commission ("SEC") under the Securities Exchange Act of 1934, as amended (the "Exchange Act"). As an SRO, FINRA is

authorized, with oversight from the SEC, to investigate and discipline FINRA member firms and their associated persons for violations of FINRA rules or the federal securities laws.

4. As required by the Exchange Act, FINRA routinely conducts examinations of its member firms and their associated persons to evaluate compliance with FINRA rules and the federal securities laws. FINRA also initiates cause examinations and investigations to determine whether disciplinary proceedings should be initiated or pursued against member firms or their associated persons.

5. FINRA is not a government agency, and its examinations and investigations are confidential and non-public. FINRA does not voluntarily disclose materials from its examination or investigative files except to the SEC, other regulators, or law enforcement, pursuant to specific regulatory or law enforcement requests.

6. One of the investigative tools available to FINRA's examination and investigation teams is the ability to request Electronic Blue Sheet data.

7. FINRA does not receive an automated feed of all Electronic Blue Sheet data from all member firms for all securities for all trading dates.

8. Instead, FINRA sends requests for Electronic Blue Sheet data to clearing firms to obtain detailed transaction data regarding a specific security for specific dates that are relevant to ongoing investigations. The requests are generated in FINRA's proprietary Blue Sheet data system. FINRA's Blue Sheets Team, which reports to me, manages the operational issues that may arise from requests for Electronic Blue Sheet data and the responses thereto.

9. FINRA strictly limits access to the Electronic Blue Sheet data system to specified internal users with a regulatory purpose. Those users' access may be further limited based on

their role and responsibilities at FINRA. Access to FINRA's proprietary Blue Sheet data system is restricted for reasons of security and confidentiality.

10. In response to Electronic Blue Sheet data requests, a clearing firm will provide data to FINRA in a proscribed format.

11. Electronic Blue Sheet data could reveal the confidential trading approach of firms and their customers.

12. Electronic Blue Sheet data also includes confidential personal, financial, and identifying information for individual and other investors, such as their names, social security numbers, address information, and brokerage account numbers. The level of detail provided in Electronic Blue Sheet data is more sensitive than an individual's checking account or credit card transaction information. FINRA considers and treats Electronic Blue Sheet data as highly sensitive and confidential.

13. Electronic Blue Sheet data submitted by U.S.-based clearing firms in response to FINRA's regulatory requests is maintained and can be analyzed in FINRA's proprietary Blue Sheet data system by FINRA users with authorized access.

14. FINRA can also request and receive Blue Sheet data from Canadian clearing firms. Blue Sheet data received from Canadian clearing firms is not maintained in FINRA's proprietary Blue Sheet data system, and it is subject to additional levels of confidentiality required by an agreement between FINRA and the Canadian securities regulator, New Self-Regulatory Organization of Canada (formerly the Investment Industry Regulatory Organization of Canada).

15. FINRA does not make Electronic Blue Sheet Data publicly available. Because Electronic Blue Sheet is used solely for regulatory and law enforcement purposes, FINRA does

not voluntarily disclose this data to third parties except the SEC, other regulators, and law enforcement, pursuant to specific regulatory or law enforcement requests for the data.

16. To my knowledge, FINRA has never voluntarily released any Electronic Blue Sheet data it collected in an investigation except to another regulator or law enforcement agency through required non-public channels involving specific regulatory or law enforcement requests for that data.

17. Electronic Blue Sheet data is complex and difficult to understand without significant knowledge, training, and experience. It is my experience that several years of training and hands-on experience are required to properly interpret and analyze Electronic Blue Sheet data.

18. FINRA does not routinely confirm the accuracy or integrity of Electronic Blue Sheet data submitted in response to regulatory requests.

19. Electronic Blue Sheet data does not identify the position held in a specific security on a specific date by any person or entity. Instead, the data reflects transactions made by individuals or entities that executed trades in a specific security on a specific date.

20. Electronic Blue Sheet data does not contain information about whether or how a short position was covered or whether a short sale is "naked."

21. Producing Electronic Blue Sheet data would impose a significant burden upon FINRA and would require FINRA to redirect multiple staff members away from FINRA's regulatory work to identify, export, review, and prepare the data for production.

    a. First, members of FINRA's Blue Sheets Team and FINRA's Office of General Counsel would need to collaborate to identify all potentially responsive Electronic Blue Sheet submissions sent in response to a FINRA request.

b.  Second, after identifying potentially responsive Blue Sheet requests, FINRA's Blue Sheets Team would need to export the data from the proprietary Blue Sheet data system into a format that could be reviewed and prepared for production. FINRA's Blue Sheets Team reports that in order to provide Electronic Blue Sheet data in a workable format, it would export the data into Excel spreadsheets. Excel spreadsheets with more than 100,000 lines of data are exceedingly difficult to review. Thus, potentially responsive Blue Sheet Data that exceeds 100,000 transactions would have to be exported into multiple spreadsheets.

c.  FINRA's Blue Sheets Team would then transmit the resulting Excel spreadsheets to the Office of General Counsel for review and potential production.

d.  If FINRA requested Blue Sheet Data pursuant to its agreement with the Canadian securities regulator, FINRA would have to notify the Canadian securities regulator in advance of producing any responsive data.

e.  If the Canadian securities regulator provided data in response to a FINRA request, FINRA would have to identify the investigation matter in which that data is stored and collect the data for review and potential production.

f.  To avoid potentially revealing confidential trading approaches, I would ask the Office of General Counsel to redact firm and customer names prior to production.

g.  Further, to avoid noncompliance with the requirements of any applicable data privacy laws and to protect investors, I would ask the Office of General Counsel to conduct a review of each resulting transaction and to redact any confidential personal, financial, and identifying information prior to production.

h.  Finally, to ensure the integrity of the data that FINRA would produce and to prevent the data from being modified after production, I would ask the Office of General Counsel to lock any spreadsheets prior to production.

i.  Each of these steps requires a significant time investment as well as coordination among multiple FINRA departments.

22.  Given the highly sensitive and confidential nature of Blue Sheet Data, the complexity of interpreting the data, and the significant burden imposed upon FINRA staff to produce the data, the disclosure of Blue Sheet Data to the Petitioner would frustrate FINRA's mission of protecting investors and safeguarding market integrity.

June 2, 2023

*Samuel J. Draddy*
Signed on 2023/06/02 08:30:34 -8:00

Sam Draddy

SWORN AND SUBSCRIBED

BEFORE ME THIS 2nd DAY OF JUNE, 2023

*Mary Lalla*
Signed on 2023/06/02 08:30:34 -8:00

Notary Public

Commonwealth of Pennsylvania - Notary Seal
Mary E Lalla, Notary Public
Philadelphia County
My Commission Expires Jun 16, 2024
Commission Number 1270070
Notary Stamp 2023/06/02 08:30:34 PST
4BE96243E276

Notarial act performed by audio-visual communication

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------- X
DAVID KHORASSANI,

                          Petitioner,

v.

FINANCIAL INDUSTRY REGULATORY
AUTHORITY,

                          Respondent.

-------------------------------------------------------------------- X

Index No. 153819/2023

**CERTIFICATION PURSUANT TO RULE 202.8-B OF THE UNIFORM CIVIL RULES FOR THE SUPREME COURT**

      I, John P. Mitchell, counsel for Respondent Financial Industry Regulatory Authority, Inc. ("FINRA"), hereby certify that the foregoing Affidavit of Sam Draddy complies with the word limit set forth in Rule 202.8-b of the Uniform Civil Rules for the Supreme Court because the Affidavit contains 1318 words, excluding those words in the caption and signature block.

Dated: Princeton, New Jersey
          June 2, 2023

FAEGRE DRINKER BIDDLE & REATH LLP

By:    */s/ John P. Mitchell*
       John P. Mitchell, Bar No. 4108544
       john.mitchell@faegredrinker.com
       1177 Avenue of the Americas
       41st Floor
       New York, New York 10036
       Telephone: (212) 248-3140
       Facsimile: (212) 248-3141

Attorneys for Respondent
Financial Industry Regulatory Authority, Inc.