**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **CONTIQUE WILLCOT,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 24-cv-00317-DC-RCG** |
| | ) | |
| **SECURITIES AND EXCHANGE** | ) | |
| **COMMISSION, et al.,** | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

---

**DEFENDANT NEXT BRIDGE HYDROCARBONS INC.'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM
PURSUANT TO 12(b)(6)**

---

**TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), Defendant

Next Bridge Hydrocarbons, Inc. files this Motion to Dismiss the First Amended Complaint of

Plaintiff Contique Willcot ("FAC") for failure to state claims upon which relief can be granted,

and in support thereof Defendant respectfully shows as follows:

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................ 1

Table of Authorities................................................................................................... 2

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND ............................................................................................... 1

III.    LEGAL STANDARDS ...................................................................................... 2

        A.      Rule 12(b)(6)....................................................................................... 2

        B.      Section 10(b) of the Exchange Act and Rule 9(b) ..................................... 3

                i.      Materiality.................................................................................. 4

                ii.     Scienter ..................................................................................... 5

                iii.    Loss Causation ........................................................................... 6

IV.     ARGUMENTS AND AUTHORITIES ................................................................ 6

        C.      Plaintiff Failed to Establish Statutory Standing for His Section 10(b) or Rule 10b-5 claims ............................................................................. 7

        D.      Plaintiff Failed to State a §10(b) or Rule 10b-5 Claim Under FRCP 9(b) and the PSLRA ............................................................................. 9

                i.      Plaintiff fails to allege facts sufficient to show a purchase or sale of a security in connection with a material misstatement or omission by NBH.................. 9

                ii.     Plaintiff's scienter allegations are insufficient.................................11

                iii.    Plaintiff's loss causation allegations are insufficient ..................... 13

        E.      Plaintiff Failed to State a Claim for Unjust Enrichment and Conspiracy to Commit Fraud Because His Section 10(b) or Rule 10b-5 Claims Fail as a Matter of Law... 14

                i.      Unjust Enrichment ................................................................... 14

                ii.     Conspiracy to Commit Fraud..................................................... 15

        F.      Plaintiff Failed to State a Claim Under §13 of the Exchange Act ......................... 16

        G.      Plaintiff Failed to State a Claim for Violation of the Sherman Antitrust Act and Clayton Act ...................................................................... 17

        H.      Plaintiff Failed to State a Claim for Negligence .................................... 18

        I.      Plaintiff's Emotional Distress (Negligent or Intentional Infliction) claim fails as a matter of law because NBH does not owe Plaintiff an independent legal duty....... 19

V.      CONCLUSION................................................................................................ 21

## Table of Authorities

**Cases**                                                                                            **Page(s)**

*Abrams v. Baker Hughes, Inc.,*
  292 F.3d 424 (5th Cir. 2002) ...................................................................................19

*Amorosa v. AOL Time Warner Inc.,*
  409 F. App'x 412 (2d Cir. 2011) ...............................................................................8

*Barrie v. Intervoice–Brite, Inc.,*
  397 F.3d 249 (5th Cir. 2005) ...............................................................................6, 10

*Basic Inc. v. Levinson,*
  485 U.S. 224, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988) .............................................4

*Bayou Bottling, Inc. v. Dr. Pepper Co.,*
  725 F.2d 300 (5th Cir. 1984) ...................................................................................18

*Bell Atlantic Corporation v. Twombly,*
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .........................................2

*Benchmark Electronics, Inc. v. J.M. Huber Corp.,*
  343 F.3d 719 (5th Cir. 2003) ....................................................................................4

*Birnbaum v. Newport Steel Corp.,*
  193 F.2d 461 (2d Cir. 1952) .....................................................................................7

*Blue Chips Stamp v. Manor Drug Stores,*
  421 U.S. 723. 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975) .......................................7, 13

*Carroll v. Fort James Corp.,*
  470 F.3d 1171 (5th Cir. 2006) ..................................................................................4

*Central Bank of Denver N.A. v. First Interstate Bank of Denver, N.A.,*
  511 U.S., 114 S.Ct. 1439, 128 L. Ed. 2d 119 (1994) ..............................................15

*Delaware Cnty. Employees Ret. Sys. v. Cabot Oil & Gas Corp.,*
  620 F. Supp. 3d 603 (S.D. Tex. 2022) .....................................................................10

*Denicus v. Bosacker,*
  No. 6:19-cv-655-JCM, 2021 U.S. Dist. LEXIS 125398 (W.D. Tex. Jan. 26, 2021) ..................14

*Dura Pharmaceuticals, Inc. v. Broudo,*
  544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) .................................3, 6, 13

*Ernst & Ernst v. Hochfelder,*
425 U.S. 197 ..........................................................................................................19

*Hancock v. Chicago Title Ins. Co.*,
635 F. Supp. 2d 539 (N.D. Tex. 2009) ...................................................................14

*Hoffman-La Roche Inc. v. Zeltwanger*,
144 S.W.3d 438 (Tex. 2004) .................................................................................20

*Holland v. GEXA Corp.*,
161 F. App'x 364 (5th Cir. 2005) .............................................................................8

*In re Donald J. Trump Casino Sec. Litigation*,
7 F.3d 357 (3d Cir. 1993) ........................................................................................5

*In re Enron Corporation Securities, Derivative & "ERISA" Litigation*,
238 F. Supp. 3d 799 (S.D. Tex. 2017) ...................................................................15

*In re Franklin Bank Corp. SEC. Litigation*,
782 F.Supp. 2d 364 (S.D. Tex. 2011) .....................................................................11

*In re Katrina Canal Breaches Litigation*,
495 F.3d 191 (5th Cir. 2007) ...................................................................................2

*Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,
537 F.3d 527 (5th Cir. 2008) ...................................................................................5

*Janus Capital Group, Inc. v. First Derivative Traders*,
131 S. Ct. 2296 (2011) ...........................................................................................10

*Kapps v. Torch Offshore, Inc.*,
379 F.3d 207 (5th Cir. 2004) ...................................................................................4

*Krim v. BancTexas Group, Inc.*,
989 F.2d 1435 (5th Cir. 1993) .................................................................................8

*Licht v. Watson*,
567 F. App'x 689 (11th Cir. 2014) .........................................................................14

*Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*,
369 F.3d 464 (5th Cir. 2004) ...................................................................................3

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27, 131 S. Ct. 1309, 179 L. Ed. 2d 398 (2011) .........................................4

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006) .........................................7

*MM Steel, L.P. v. JSW Steel (USA) Inc.*,
806 F.3d 835 (5th Cir. 2015) .................................................................................17

*Motient Corp. v. Dondero*,
529 F.3d 532 (5th Cir. 2008) .................................................................................17

*Nathenson v. Zonagen Inc.,*
   267 F.3d 400 (5th Cir. 2001) ................................................................................11

*Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.,*
   369 F.3d 27 (2d Cir. 2004) ...................................................................................8

*Owens v. Jastrow,*
   789 F.3d 529 (5th Cir. 2015) ................................................................................12

*Paul F. Newton & Co. v. Texas Commerce Bank,*
   630 F.2d 1111 (5th Cir. 1980) ..............................................................................13

*Plaisance v. Schiller,*
   No. CV H-17-3741, 2019 WL 1205628 (S.D. Tex. Mar. 14, 2019) ...........................10

*Plotkin v. IP Axess Inc.,*
   407 F.3d 690 (5th Cir. 2005) ..................................................................................4

*Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.,*
   769 F.3d 313 (5th Cir. 2014) ..................................................................................6

*R2 Invs. LDC v. Phillips,*
   401 F.3d 638 (5th Cir. 2005) ..............................................................................4, 5

*Regents of University of California v. Credit Suisse First Boston (USA), Inc.,*
   482 F.3d 372 (5th Cir. 2007) ................................................................................15

*Rosenberg v. XM Ventures,*
   274 F.3d 137 (3d Cir. 2001) ................................................................................16

*Rosenzweig v. Azurix Corp.,*
   332 F.3d 854 (5th Cir. 2003) ..................................................................................5

*SCI Tex. Funeral Servs. v. Nelson,*
   540 S.W.3d 539 (Tex. 2018) ................................................................................19

*Shaw v. Digital Equip. Corp.,*
   82 F.3d 1194 (1st Cir. 1996) ................................................................................11

*Shushany v. Allwaste, Inc.,*
   992 F.2d 517 (5th Cir.1993) ................................................................................11

*Southland Sec. Corp. v. INSpire Ins. Solutions Inc.,*
   365 F.3d 353 (5th Cir. 2004) ................................................................................12

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta Inc*
   552 U.S. 148, 128 S. Ct. 761, 167 L. Ed. 2d 627 (2008) .......................................15

*Tellabs, Inc., v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) .................................................3, 5, 6

*Thesling v. Bioenvision, Inc.,*
   374 F. App'x 141 (2d Cir. 2010) .................................................................................17

*Tuberville v. Fin. Indus. Regulatory Auth.,*
   874 F.3d 1268 (11th Cir. 2017) .................................................................................19

*Tuchman v. DSC Communications,*
   14 F.3d 1061 (5th Cir.1994) .......................................................................................9

*Twyman v. Twyman,*
   855 S.W.2d 619 (Tex. 1993) ....................................................................................19

**Statutes**

15 U.S.C. §§ 1-2 ...........................................................................................................1

15 U.S.C. §12-27 ..........................................................................................................1

15 U.S.C. §78 ...................................................................................................... *passim*

15 U.S.C. §78(a)(1) .......................................................................................................1

15 U.S.C. § 78cc .........................................................................................................14

15 U.S.C. § 78j ........................................................................................................3, 7

15 U.S.C. § 78m(d) ................................................................................................16, 17

15 U.S.C. § 78o-3 ................................................................................................19, 20

15 U.S.C. § 78u–4 ............................................................................................5, 6, 13

15 U.S.C.S. § 1 ............................................................................................................17

**Rules**

17 C.F.R. § 240.l0b-5 .........................................................................................*passim*

FINRA Rule 2020, Use of Manipulative, Deceptive or Other Fraudulent Devices ....................7

F.R.C.P. 9(b) .....................................................................................................*passim*

F.R.C.P. 12(b)(6) ..............................................................................................1,2 6, 17

**Other**

Restatement (Second) of Torts § 283 ...........................................................................18

## I.    INTRODUCTION

Plaintiff's claims arise out of his frustration with a U3 Trading Halt enacted by FINRA in regard to the trading of preferred shares of Meta Materials, Inc ("MMTLP"). The inclusion of Next Bridge Hydrocarbons, Inc. ("NBH") in this lawsuit is absurd considering it was simply the recipient of asset transfers from Meta Materials and didn't control the trading of MMTLP. In the FAC, Plaintiff attempts to allege six claims for relief against NBH: (i) Count 1—Violations of Securities Exchange Act of 1934 (15 U.S.C. §78); (ii) Count 2 – Violation of the Sherman Antitrust Act (15 U.S.C. §§ 1-2) and the Clayton Act (15 U.S.C. §§ 12-27); (iii) Count 3 –  Negligence; (iv) Count 5 –  Unjust Enrichment; (v) Count 6 – Conspiracy to Commit Fraud; and (vi) Count 8 – Emotional Distress (Negligent or Intentional Infliction).

While the FAC is eighty pages in length, it utterly lacks substance and specificity as to the basis of the claims asserted against NBH and fails to meet the heightened pleading standards under FRCP 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") and fails to establish standing for violations of federal securities laws and federal antitrust laws. In addition, Plaintiff's own allegations prove that he cannot plausibly state a cause of action against NBH for which relief may be granted. Dismissal *with prejudice* is accordingly appropriate consistent with the arguments set forth below.

## II.    BACKGROUND

The reality is Plaintiff's claims against NBH are based on alleged regulatory failures stemming from the U3 trading halt of MMTLP securities enacted by FINRA. The Court should not entertain Plaintiff's misguided attempt to involve NBH in its vendetta against FINRA and the

SEC for enacting a trading halt of MMTLP securities. NBH had no control over this process, nor does NBH have the ability or authority to overturn it.

NBH is a private energy company engaged in the acquisition, exploration, exploitation and/or development of oil and natural gas properties in the United States. In 2021, Torchlight Energy Resources (TRCH) merged with Meta Materials, Inc. (MMAT), creating Series A Preferred shares ("MMTLP Shares"). Those shares began trading on the OTC market sometime in October of 2021 with the ticker, MMLTP. NBH spun off from MMAT, resulting in NBH becoming an independent company that is not publicly traded. The holders of MMTLP Shares were to receive a 1-for-1 share exchange of shares of Next Bridge common shares. The exchange was to take place on December 14, 2022.

On December 9, 2022, FINRA halted trading of MMTLP shares, citing an "extraordinary event" code U3. The abrupt trading halt and cancellation of MMTLP shares without prior notice led to significant investor frustration. Many shareholders were unable to sell their positions before the halt and have since been unable to trade their NBH shares, as the company remains private and its shares are not traded on any public exchange. Plaintiff alleges that he is a 'shareholder' of MMTLP.

### III.    LEGAL STANDARDS

#### A.    Rule 12(b)(6)

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation,* 495 F.3d 191, 205 (5th Cir. 2007) (*quoting Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 570 (2007)), cert. denied, 552 U.S. 1182 (2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (*quoting Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004))(internal quotation marks omitted).

**B.     Section 10(b) of the Exchange Act and Rule 9(b)**

Under § 10(b) of the Securities and Exchange Act of 1934, "[i]t shall be unlawful for any person, directly or indirectly, ... [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). SEC Rule 10b–5 implements § 10(b) by forbidding, among other things, the making of any "untrue statement of material fact" or the omission of any material fact "necessary in order to make the statements made ... not misleading." 17 C.F.R. § 240.10b–5. Section 10(b) has been interpreted to provide a right of action to securities purchasers or sellers injured by its violation. *Tellabs, Inc., v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). "But the statutes make these latter actions available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (internal citations omitted).

To state a private cause of action under § 10(b), a plaintiff must allege: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) loss causation. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 641 (5th Cir. 2005). For fraud claims, including securities fraud claims, Rule 9(b) requires the complaint to "state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003); *see also Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

### i.    Materiality

To be actionable, a misrepresentation of fact, including an omission, must be material. Materiality is not a test of "statistical significance." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 43–44, 131 S.Ct. 1309, 179 L.Ed.2d 398 (2011). Instead, it requires a "fact-specific inquiry ... of [the] source, content, and context" of the alleged statement or omission. *Id.* A fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in making an investment decision. ... For an omission to be material, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 213–14 (5th Cir. 2004)(quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988)(emphasis removed)). Materiality can be determined at the pleading

stage, and "many [securities] cases have been properly dismissed on the pleadings for lack of materiality." *Id.* at 216 (citing *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 369 n.13 (3d Cir. 1993)(If "alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality [it is] appropriate for the district court to rule that the allegations are inactionable as a matter of law.")(citations omitted; insertion in original)).

### ii.    Scienter

Section 10(b) and Rule 10b–5 do not protect investors against negligence or corporate mismanagement. *Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 539 (5th Cir. 2008). Under the PSLRA, for "each act or omission alleged," the plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). Scienter consists of "an intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *Phillips*, 401 F.3d at 643 (internal quotation marks omitted). Severe recklessness is "limited to those highly unreasonable omissions and misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003)(internal quotation marks omitted).

In *Tellabs*, the Supreme Court described how to analyze the sufficiency of scienter allegations under the PSLRA on a motion to dismiss. 551 U.S. at 322–23. The district court must first determine the factually sufficient complaint allegations and take them as true. *Id.* at 322. The

court then considers documents incorporated in the complaint by reference and matters subject to judicial notice. *Id.* at 322–23. Finally, the court must take into account plausible inferences opposing as well as supporting a scienter inference. *Id.* at 323. The factual allegations are evaluated collectively, not in isolation, to determine whether the pleadings support a strong scienter inference. *Cf. Barrie v. Intervoice–Brite, Inc.*, 397 F.3d 249, 260 (5th Cir. 2005)("While [the Fifth Circuit] will view a complaint *in toto* when considering whether a complaint has adequately pled scienter, each allegation of fraud must individually meet the particularity requirements of the PSLRA." (internal citation omitted)).

### iii.    Loss Causation

Under the PSLRA, "the plaintiff shall have the burden of proving that the act or omission of the defendant ... caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u–4(b)(4). The PSLRA "makes clear Congress' intent to permit private securities fraud actions for recovery where, but only where, plaintiffs adequately allege and prove the traditional elements of causation and loss." *Dura*, 544 U.S. at 346. "To establish proximate causation, the plaintiff must allege that when the 'relevant truth' about the fraud began to leak out or otherwise make its way into the marketplace, it caused the price of the stock to depreciate and, thereby, proximately caused the plaintiff's economic harm." *Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 320 (5th Cir. 2014).

## IV.    ARGUMENTS AND AUTHORITIES

Plaintiff's claims against NBH should be dismissed pursuant to FRCP 12(b)(6) because: (a) Plaintiff failed to establish statutory standing for his §10(b) or Rule 10b-5 claims under the Securities Exchange Act of 1934; (b) Plaintiff failed to state a §10(b) or Rule 10b-5 claim under

FRCP 9(b) and the PSLRA; (c) Plaintiff failed to state a claim for unjust enrichment and conspiracy to commit fraud because his 10(b) claims fail as a matter of law; (d) Plaintiff failed to state a claim under §13 of the Exchange Act; (e) Plaintiff failed to state a claim for Negligence; and (f) Plaintiff's claim for Emotional Distress (Negligent and Intentional) fails as a matter of law as it is not predicated upon an independent legal duty that NBH owes to Plaintiff.

**C.    Plaintiff Failed to Establish Statutory Standing for His Section 10(b) or Rule 10b-5 claims**

Plaintiff claims to be entitled to relief under the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) ("Exchange Act"). Specifically, Plaintiff alleges that Defendants (including NBH) violated Section 10(b) of the Exchange Act and Rule 10b-5 (17 C.F.R. § 240.l0b-5) (as well as FINRA's own Rule 2020, which prohibits manipulative and deceptive devices) by engaging in manipulative practices, including the proliferation of synthetic/counterfeit shares, creation of artificial supply, and failure to ensure market transparency. (FAC, ¶224). Plaintiff has failed to adequately plead statutory standing for his claims.

A complaint asserting a securities fraud claim under the Exchange Act must affirmatively plead and prove that the plaintiff has standing. A plaintiff has standing under the Act as an actual purchaser or seller of securities; however, a plaintiff does not have standing as a mere holder of securities. *Blue Chips Stamp v. Manor Drug Stores*, 421 U.S. 723, 730–31 (1975)(rejecting rejected recognition of holder claims under the federal securities laws because they are speculative and difficult to prove); *see also Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952) (finding that a purchase or sale was required for a Rule 10b–5 cause of action). An investor who held a security and, in reliance on the alleged misstatement, did not sell it, cannot bring suit. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 79–80 (2006).

"It is well established that mere retention of securities in reliance on material misrepresentations or omissions does not form the basis for a § 10(b) or Rule 10b–5 claim." *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1443 (5th Cir. 1993). Courts have also held that plaintiffs failed to satisfy the standing requirement when considering Section 10(b) suits brought, for example, by a plaintiff asserting claims based on the dilution of shareholder equity,[1] and the purchaser of stock in a company whose stock price is negatively impacted by the material misstatement of another company in which the plaintiff did not purchase stock[2].

Here, Plaintiff is a mere holder of MMTLP securities, which is insufficient to satisfy the statutory standing requirement. Indeed, Plaintiff admits that he has not sold his shares of MMTLP: "Many MMTLP traders, including the Plaintiff, were **holding their shares with the intent to execute** opportunity trades-to sell, rather than buy – on December 9 and 12, 2022." (emphasis added) (FAC, ¶96). *See also* FAC, ¶187 ("Shareholders remain unable to trade their positions, and MMTLP investors continue to face financial harm with no clear recourse."). An intent to execute trades does not meet the threshold of a purchase or a sale. *See Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 417 (2d Cir. 2011) (holding "mere holders of securities that did not purchase or sell stock resulting from the defendants' conduct failed to satisfy the standing requirement for Section 10(b) suits").

Because Plaintiff has failed to establish statutory standing, the Court should dismiss Plaintiff's Section 10(b) or Rule 10b-5 claims with prejudice.

---

[1] *See Holland v. GEXA Corp.*, 161 F. App'x 364, 365-66 (5th Cir. 2005).
[2] *See Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.*, 369 F.3d 27, 34 (2d Cir. 2004)

**D.      Plaintiff Failed to State a §10(b) or Rule 10b-5 Claim Under FRCP 9(b) and the PSLRA**

Notwithstanding the fact that Plaintiff failed to establish statutory standing for his section 10(b) or Rule 10b-5 claims, Plaintiff failed to adhere to the heightened pleading standards under FRCP 9(b) and the PSLRA.[3] Indeed, the FAC is utterly void of specific allegations demonstrating (i) materially misleading statements or omissions by NBH in connection with Plaintiff's purchase or sale of an MMTLP security; (ii)  a strong inference of scienter as to NBH; and (iii) loss causation. Accordingly, the FAC fails to meet the heightened pleading standards under FRCP 9(b) and the PSLRA.

**i.      Plaintiff fails to allege facts sufficient to show a purchase or sale of a security in connection with a material misstatement or omission by NBH**

While unclear, Plaintiff's 10b claims against NBH appear to be based on statements allegedly made by Gregory McCabe in April 2020 in his capacity as chairman for TRCH. *See* FAC, ¶29 ("On or about April 23, 2020,….Greg McCabe then Chairman of TRCH, made statements inflating the valuation of the oil and gas properties that would later form NBH."). Plaintiff alleges that NBH, through Gregory McCabe, knowingly made misleading public statements about the value of Orogrande Basin assets and failed to address discrepancies in MMTLP shares." FAC, ¶250.  Specifically, Plaintiff argues that the following statements constitute material misrepresentation: (1) announcement of a "third-party reserve estimate"  concerning the Orogrande Basin and (2) statement of a "probable reserve" of barrels of oil at the Orogrande site. (FAC, ¶¶30-31). As set forth below, Plaintiff's attempt to impute these statements to NBH based

---

[3] "In securities fraud suits, this heightened pleading standard provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims and then attempting to discover unknown wrongs." *Tuchman v. DSC Communications,* 14 F.3d 1061, 1067 (5th Cir.1994).

on Mr. McCabe's current role as CEO of NBH is misguided. Further, the statements which Plaintiff relies upon do not constitute material misrepresentation under Section 10(b) as they are merely optimistic projections, not guarantees.

In *Janus Capital Group Inc. v. First Derivative Traders,* the Supreme Court emphasized that, for purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." 131 S. Ct. 2296, 2302 (2011). A plaintiff cannot hold an individual defendant responsible for unattributed corporate statements in press releases based solely on his title as CFO. *See also Plaisance v. Schiller,* No. CV H-17-3741, 2019 WL 1205628, at *16 (S.D. Tex. Mar. 14, 2019).

Here, Plaintiff has not sufficiently plead specific factual allegations linking NBH to allegedly false and misleading statements made by Gregory McCabe in his capacity as chairman for TRCH. Gregory McCabe's alleged misrepresentations while he was the chairman of TRCH cannot be imputed to NBH. NBH - a private company incorporated in 2021 — has no connection with or responsibility for statements made by McCabe in his capacity as chair for TRCH in 2020. McCabe's current role as CEO of NBH does not change this fact. Courts have rejected this very argument. *See Delaware Cnty. Employees Ret. Sys. v. Cabot Oil & Gas Corp.,* 620 F. Supp. 3d 603, 627 (S.D. Tex. 2022)(holding "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."); *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 256 (5th Cir. 2005). Because Plaintiff does not identify any actionable misrepresentation by NBH concerning the valuation of oil and gas properties, Plaintiff's 10(b) claim fails as a matter of law.

Notwithstanding the foregoing, Plaintiff's reliance on these alleged statements by Mr. McCabe is misplaced as optimistic statements and valuations with disclaimers do not constitute

material misrepresentations under Section 10(b). It is well-established that generalized positive statements about a company's progress are not a basis for liability." *Nathenson v. Zonagen Inc.,* 267 F.3d 400, 419 (5th Cir.2001). *See, e.g., In re Franklin Bank Corp. SEC. Litig.*, 782 F.Supp.2d 364, 381 (S.D.Tex.2011)("Allegations that amount to little more than corporate 'cheerleading' are puffery, projections of future performance not worded as guarantees, and are not actionable under federal securities law because no reasonable investor would consider such vague statements material and because analysts are too sophisticated to rely on vague expressions of optimism rather than specific fact."), *aff'd sub nom. Harold Roucher Trust U/A DTD 9/21/72 v. Nocella*, 464 Fed.Appx. 334 (5th Cir.2012). Indeed, Plaintiff's own allegations demonstrate that Mr. McCabe's statements were not worded as guarantees. *See* FAC, ¶30 (includes the word 'estimate' twice); ¶31 (includes the words 'probable' and 'approximately'); ¶33 ("..inferred great expectations regarding NBH's financial prospects.."). Statements that are predictive in nature are actionable only if they were false when made. *Shushany v. Allwaste, Inc.,* 992 F.2d 517, 524 (5th Cir.1993).

Finally, Plaintiff has entirely failed to plead facts demonstrating a purchase or sale of stock in connection with false or misleading statements by NBH. Because Plaintiff has failed to establish material misrepresentations by NBH and because Plaintiff fails to include facts demonstrating that he made a purchase or sale of an MMTLP security in connection with these alleged misrepresentations, Plaintiff's 10(b) claims should be dismissed with prejudice.

## ii.    Plaintiff's scienter allegations are insufficient

Even if the FAC did allege sufficient facts to support the inference that Plaintiff sold or purchased MMTLP shares in connection with a material misstatement or omission by NBH (it does not), the FAC nevertheless fails to allege sufficient facts supporting a strong inference of scienter as to NBH.

The Plaintiff's FAC relies in part on group pleading to allege scienter as he groups NBH leadership in the same 'scienter bucket' as leadership for Torchlight Energy and Meta Materials. Plaintiff alleges, for instance, that "Torchlight Energy, Meta Materials, and NBH Leadership" engaged in specific acts of scienter through: (i) misrepresentation of asset valuations: "Gregory McCabe knowingly overstated the valuation of Orogrande Basin assets to inflate shareholder expectations and attract investments"; (ii) failure to address trading irregularities: "both McCabe and Brda neglected their fiduciary responsibilities to investigate and resolve synthetic/counterfeit share discrepancies, despite awareness of the harm caused to retail investors"; and (iii) misleading shareholders: public communications from leadership failed to disclose critical information about trading irregularities, share discrepancies, and synthetic/counterfeit share creation, misleading investors about the true state of their holdings." *See* FAC, ¶¶253(h)(i), (h)(iii), h(iv).

The Fifth Circuit does not permit group pleading in securities fraud suits. *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir.2015), *citing Southland*, 365 F.3d at 365 ("[T]he PSLRA requires the plaintiffs to distinguish among those they sue and enlighten *each defendant* as to his or her particular part in the alleged fraud.... [W]e do not construe allegations contained in the [second amended complaint] against 'defendants' as a group as properly imputable to any particular defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded."). Group pleading or group publishing doctrine fails to satisfy the heightened pleading standards of the PSLRA. *Southland*, 365 F.3d at 363 n. 9.

Here, Plaintiff's scienter allegations regarding a failure to address trading irregularities and misleading shareholders are insufficient as they constitute a "group pleading." Plaintiff does not distinguish NBH's particular part in the alleged fraud concerning these acts, nor does Plaintiff plead facts demonstrating NBH acted recklessly or with the intent to deceive. The only allegation

that cannot be considered a "group pleading" is the allegation concerning a misrepresentation of asset valuations. This allegation, however, is similarly insufficient as Plaintiff fails to allege falsity with the requisite particularity under the PSLRA. Moreover, as stated above, Plaintiff admits that Gregory McCabe's alleged statements with regard to the valuation of the oil and gas properties that would later form NBH, were made in his capacity as Chairman of TRCH. *See* FAC, ¶29. These statements cannot be imputed to NBH. *Paul F. Newton & Co. v. Texas Commercial Bank*, 630 F.2d 1111, 1118 (5th Cir. 1980). Accordingly, Plaintiff has failed to adequately plead scienter for NBH.

### iii.    Plaintiff's loss causation allegations are insufficient

The PSLRA requires plaintiffs to plead loss causation, "*i.e.,* a causal connection between the material misrepresentation and the loss." *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 342, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005); 15 U.S.C. § 78u–4(b)(4) ("[T]he plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages"). *Dura* made clear there must be sufficient allegations the misrepresentations caused the plaintiffs' loss; it is insufficient to simply allege the misrepresentation "touches upon a later economic loss." *Dura,* 544 U.S. at 343, 125 S.Ct. 1627.

Leaving aside Plaintiffs' failure to specify the material, misleading representations made by NBH, Plaintiff has not alleged any specific material misrepresentations or omissions by NBH that caused the MMTLP stock to plummet. Indeed, Plaintiff broadly alleges that he has "documented financial losses exceeding $35,000." FAC, ¶285(e). Plaintiff fails to explain the causal connection between NBH's alleged misrepresentations and the economic loss suffered. It is not enough for a plaintiff bringing a Section 10(b) or Rule 10b-5 claim to have merely suffered loss in the value of the investment as a shareholder or creditor. *See Blue Chip Stamps v. Manor*

*Drug Stores*, 421 U.S. 723, 737-38, 749 (1975); *Licht v. Watson*, 567 F. App'x 689, 691 (11th Cir. 2014). Accordingly, Plaintiff's broad and conclusory allegations concerning loss causation are insufficient.

**E.      Plaintiff Failed to State a Claim for Unjust Enrichment and Conspiracy to Commit Fraud Because His Section 10(b) or Rule 10b-5 Claims Fail as a Matter of Law**

Notably, Plaintiff's claims for Unjust Enrichment and Conspiracy to Commit Fraud are predicated upon alleged 10(b) violations of the Exchange Act. (*See* ECF 3, at ¶¶ 239, 241, 250). For sake of brevity, Plaintiff incorporates the arguments set forth above concerning Plaintiff's lack of statutory standing and failure to meet the heightened pleading standards under FRCP 9(b) and the PSLRA.

**i.      Unjust Enrichment**

In Count V, Plaintiff appears to assert a state common law claim for unjust enrichment, but alleges that "Defendants violated Rule l0b-5 (17 C.F.R. § 240 10b-5) and Section 29(b) (15 U.S.C. § 78cc(b)) by profiting from illegal contracts involving synthetic/counterfeit shares and oversold positions." (ECF 3, ¶239). First, unjust enrichment is not an independent cause of action, and should therefore be dismissed. *Denicus v. Bosacker*, No. 6:19-cv-655-JCM, 2021 U.S. Dist. LEXIS 125398 at *9 (W.D. Tex. Jan. 26, 2021); *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 561 (N.D. Tex. 2009).

Further, as set forth above *ad nauseum*, Plaintiff has failed to establish statutory standing for violations of the Exchange Act. Plaintiff's unjust enrichment claim fails on this basis alone. Alternative, Plaintiff's unjust enrichment claim is based on 10(b) violations, which means it is subject to the heightened pleading standards under FRCP 9(b) and the PSLRA. The FAC is void of any allegations demonstrating or identifying the supposed "illegal contracts" that NBH profited

from or how they violated Section 10(b), and as such, is fatally deficient under the heightened pleading standards. Accordingly, the Court should dismiss Plaintiff's unjust enrichment claim with prejudice.

## ii.    Conspiracy to Commit Fraud

In Count VI, Plaintiff alleges that "Defendants violated Section 10(b) and Rule 10b-5 by conspiring to manipulate securities markets through synthetic/counterfeit share creation and suppressing MMTLP's value." FAC, ¶241.

Notably, there is no private right of action under § 10(b) of the Exchange Act for aiding and abetting. *Stoneridge*, 552 U.S. at 155, 128 S.Ct. 761, *citing Central Bank of Denver*, 511 U.S. at 191, 114 S.Ct. 1439 (§ 10(b) does not extend to aider and abettors). A defendant must satisfy the requirements for a primary violation to be liable under § 10(b), i.e., must engage in deceptive conduct involving either a misstatement or a failure to disclose by one with a duty to disclose. *Regents of University of California v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 388 (5th Cir. 2007), *cert. denied sub nom. Regents of University of California v. Merrill Lynch, Pierce, Fenner & Smith*, 552 U.S. 1170, 128 S.Ct. 1120, 169 L.Ed.2d 957 (2008). Further, the particularity requirement for pleading fraud also governs a conspiracy to commit fraud. *See In re Enron Corporation Securities, Derivative & "ERISA" Litigation*, 238 F. Supp. 3d 799, Fed. Sec. L. Rep. (CCH) ¶ 99638 (S.D. Tex. 2017), aff'd, 925 F.3d 727, Fed. Sec. L. Rep. (CCH) ¶ 100419 (5th Cir. 2019), referencing Fed. R. Civ. P. 9(b).

Because there cannot be a private right of action for conspiracy to commit fraud based on Section 10(b) and Rule 10b-5, Plaintiff's conspiracy to commit fraud claim should be dismissed with prejudice for failure to state a claim.

F.    **Plaintiff Failed to State a Claim Under §13 of the Exchange Act**

Section 13(d) of the Exchange Act requires any person (or group of persons) that owns or acquires beneficial ownership of more than 5% of any class of equity securities registered under the Exchange Act to file ownership reports with the SEC on Schedule 13D. Plaintiff alleges that NBH leadership violated Section 13(d) of the Exchange Act(15 U.S.C. § 78m(d)) by failing to disclose material information regarding beneficial ownership and discrepancies in outstanding shares. (FAC, ¶227). Plaintiff appears to argue that NBH violated Section 13(d) by failing to report Gregory McCabe's alleged sale of MMTLP securities in November 2022. *Id* at ¶¶81-82.

Plaintiff's attempt to assert a violation against NBH under Section 13(d) is nonsensical considering NBH has not purchased or sold MMTLP securities. A duty to report under Section 13(d) can only arise when the person or group is a beneficial owner of the securities, which NBH is not. *See Rosenberg,* 274 F.3d at 146 (holding that "the legislative history accompanying section 13(d) manifests Congress' intent that an individual must be a beneficial owner of an issuer's securities prior to becoming a member of a section 13(d) 'group.' "). Indeed, Plaintiff has not even alleged that NBH is subject to the reporting requirements of Section 13(d). *See* FAC, ¶82 ("…Under SEC rules regarding beneficial ownership, **McCabe was required to report** these share transactions, as he held more than 5% of the float) (emphasis added). Accordingly, the Court should reject Plaintiff's lackluster attempt to bootstrap a Section 13(d) violation against NBH based on Gregory McCabe's sale of MMTLP securities.

More importantly, the Fifth Circuit has held that Section 13(d), codified at 15 U.S.C. § 78m(d), does not confer an independent private right of action for money damages. *Motient Corp. v. Dondero*, 529 F.3d 532, 536 (5th Cir. 2008). While courts have recognized that violations

of Section 13(d) may be actionable under Section 10(b) and Rule 10b-5[4], Plaintiff's attempt to convert an alleged regulatory violation into a Section 10(b) claim falls short of the rigorous pleading requirements of Rule 9(b) and the PSLRA. The FAC does not adequately link the alleged Section 13(d) violation to any actionable misrepresentation by NBH under Rule 10b-5. Based on the foregoing, Plaintiff's Section 13(d) claim against NBH is baseless and should be dismissed pursuant to FRCP 12(b)(6).

**G.     Plaintiff Failed to State a Claim for Violation of the Sherman Antitrust Act and Clayton Act**

In Count II, Plaintiff appears to allege that Defendant NBH violated Section 1 of the Sherman Act by "colluding to facilitate synthetic/counterfeit share creation, naked short selling, and other anti-competitive practices that suppressed competition and harmed retail investors." FAC, ¶229. Plaintiff further contends that "Defendants collectively violated Section 4 of the Clayton Act." Plaintiff alleges that Ari Rubenstein, "in concert with others" added naked shorts to TRCH, and that those actions "likely contributed to the anomalous trading volumes" and wholly fails to articulate any allegations against NBH related to the Clayton Act or Sherman Act.

The Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations . . ." 15 U.S.C.S. § 1. To plead a claim for relief under Section 1 of the Sherman Act, a plaintiff must allege that the defendants "(1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 843 (5th Cir. 2015) (internal quotation marks omitted). Here, Plaintiff's FAC is completely void of any

---

[4] *Thesling v. Bioenvision, Inc.*, 374 F. App'x 141 (2d Cir. 2010) (summary order) ("There is no private right of action under section 13(d) of the Exchange Act, but a plaintiff can point to a violation of section 13(d) as the predicate for a 10b–5 claim.").

allegations that NBH engaged in any conspiracy or that it participated in anyway in creating of 'naked shorts' or 'market manipulation.' FAC ¶46-47. It is also absent any allegations that NBH restrained trade in a particular market, or that Plaintiff participates in that same market. As such, Plaintiff's claim for breach of the Sherman Act should be dismissed with prejudice.

Further, Plaintiff has failed to establish 'antitrust standing' to bring a claim under Section 1 of the Sherman Act or Section 4 of the Clayton Act.  Plaintiff must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' alleged acts unlawful. *Norris v. Hearst Trust,* 500 F.3d 454, 465 (5th Cir. 2007). Plaintiff's FAC is absent of any allegations of anticompetitive behavior by Defendant NBH, and lacks any allegations that Defendant NBH engaged in any antitrust activities. Plaintiff has not established that Plaintiff's alleged injuries were caused by any anticompetitive behaviors of NBH. As such, Plaintiff's claim for breach of the Sherman Act should be dismissed with prejudice.

Section 4 of the Clayton Act allows a plaintiff to recover treble damages where an antitrust violation has injured the plaintiff's business or property, and the injury is of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. *Bayou Bottling, Inc. v. Dr Pepper Co.*, 725 F.2d 300, 303 (5th Cir. 1984) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477 (1977)).  For the reasons stated above, Plaintiff lacks standing to assert a Sherman Act violation, and therefore lacks standing to assert treble damages under Section 4 of the Clayton Act. Even if Plaintiff did establish a Section 1 violation, Plaintiff has wholly failed to establish allegations of any conspiracy involving Defendant NBH to restrain trade, and has wholly failed to plead any compensable antitrust injury from any anticompetitive violation or acts under *Brunswick. Id.*   As such, Plaintiff's claims should be dismissed with prejudice.

**H.     Plaintiff Failed to State a Claim for Negligence**

In Count III, Plaintiff appears to allege a claim of Negligence against NBH through the conclusory assertion that "Defendants collectively breached their duty of reasonable care (Restatement (Second) of Torts § 283), resulting in foreseeable and avoidable harm to retail investors, including the Plaintiff." (ECF 3, ¶¶233-235).

In *Ernst & Ernst,* the Supreme Court considered whether negligent acts could violate § 10(b). 425 U.S., at 197. The Court noted that "[t]he words 'manipulative or deceptive' used in conjunction with 'device or contrivance' strongly suggest that § 10(b) was intended to proscribe knowing or intentional misconduct." *Id.* The Supreme Court concluded that the SEC's interpretation would "add a gloss to the operative language of the statute quite different from its commonly accepted meaning." *Id.* at 199.

Similar to the SEC's argument in *Ernst & Ernst*, Plaintiff appears to assert that NBH breached its duty of reasonable care to protect investors. FAC, ¶235. The Court should reject Plaintiff's argument because negligent acts cannot be the basis of Section 10(b) violations. *See e.g. Abrams,* 292 F.3d at 433 (stating that the nature of accounting problems that lead to restatement could "easily arise from negligence, oversight or simple mismanagement, none of which rise to the standard necessary to support a securities fraud action"). Moreover, Plaintiff provides no authority or explanation as to the existence of a duty owed by NBH in regard to alleged trading irregularities of MMTLP securities. Accordingly, Plaintiff's negligence claim should be dismissed for failure to state a claim upon which relief can be granted.

## I.    Plaintiff's Emotional Distress (Negligent or Intentional Infliction) claim fails as a matter of law because NBH does not owe Plaintiff an independent legal duty.

In Count VIII, Plaintiff alleges that Defendants' (including NBH) "reckless disregard for foreseeable harm caused emotional distress to Plaintiff, violating their obligations under Section 15(A)(b)(6) (15 U.S.C. § 78o-3(b)(6)) to protect investors." (FAC, at 53). First and foremost, Texas

does not recognize the tort of negligent infliction of emotional distress. *See SCI Tex. Funeral Servs. v. Nelson*, 540 S.W.3d 539, 546 (Tex. 2018). The only exception to this rule is if the defendant breaches an independent legal duty, such as a duty to not negligently mishandle a corpse. Id. Texas considers the tort of intentional infliction of emotional distress as a "gap-filler" to be used when the victim of severe emotional distress has no other recognized theory of redress. *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). A well-pleaded allegation of intentional infliction of emotional distress requires a showing that defendant (1) acted intentionally or recklessly (2) with extreme or outrageous conduct (3) that caused (4) severe emotional distress. *See Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993).

Plaintiff's contention that NBH owes an independent legal duty pursuant to 15 U.S.C. § 78o-3(B)(6) is baseless as the statute is only applicable to national securities associations - *not* corporations, and appears to indifferently group NBH and other defendants with FINRA and the SEC. *See Tuberville v. Fin. Indus. Regulatory Auth.*, 874 F.3d 1268, 1270 (11th Cir. 2017). Because NBH is a corporation, it does not owe an independent legal duty to Plaintiff pursuant to 15 U.S.C. § 78o-3(B)(6). Further, Plaintiff also failed to plead sufficient allegations of intentional or reckless acts of extreme or outrageous conduct committed by NBH and severe emotional distress. (FAC, at 75). Accordingly, the Court should dismiss Plaintiff's claim for Emotional Distress (Negligent or Intentional Infliction) for failure to state a claim upon which relief can be granted.

## V.    CONCLUSION

WHEREFORE, Defendant Next Bridge Hydrocarbons, Inc. respectfully requests that this Court dismiss Plaintiff's Amended Complaint *with prejudice* for failure to state claims for which relief can be granted, as well as grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

Date: May 8, 2025                    */s/ J. Paul Manning*
                                     J. PAUL MANNING
                                         State Bar No. 24002521
                                         jpmanning@lubbocklawfirm.com
                                     Joshua D. Frost
                                         State Bar No. 24097711
                                         jfrost@lubbocklawfirm.com
                                     **FIELD MANNING STONE AYCOCK P.C.**
                                     2112 Indiana Avenue
                                     Lubbock, Texas 79410-1499
                                     806/792-0810 (Telephone)
                                     806/792-9148 (Facsimile)

                                     **ATTORNEYS FOR DEFENDANT**
                                     **NEXT BRIDGE HYDROCARBONS, INC.**

## CERTIFICATE OF SERVICE

I certify that I served the foregoing document on all counsel of record via the Court's CM/ECF system on May 8, 2025.

                                     */s/ J.Paul Manning*
                                     J.Paul Manning