CASE NO. 7:24-CV-00317-DC-RCG     TEXAS MIDLAND/ODESSA DIVISION

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF

TEXAS MIDLAND/ODESSA DIVISION

| | |
|---|---|
| CONTIQUE WILLCOT,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>SECURITIES AND EXCHANGE COMMISSION, FINANCIAL INDUSTRY REGULATORY AUTHORITY, GTS SECURITIES LLC, ARI RUBENSTEIN, NEXT BRIDGE HYDROCARBONS, INC., JOHN BRDA, GREGORY MCCABE,<br><br>　　　　Defendant | CASE NO. 7:24-CV-00317-DC-RCG<br><br>**SECOND AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Contique Willcot, a Fire Lieutenant and Certified Origin and Cause Fire Investigator, proceeding pro se, files this Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) and court order dated June 3, 2025 (ECF No. 71), against Defendants Securities and Exchange Commission ("SEC"), Financial Industry Regulatory Authority ("FINRA"), GTS Securities LLC ("GTS"), Ari Rubenstein, Next Bridge Hydrocarbons, Inc. ("NBH"), John Brda, and Gregory McCabe. This amendment cures deficiencies identified in Defendants' Motions to Dismiss (ECF Nos. 49, 50, 51, 53), incorporates evidence from Plaintiff's Motion to Lift PSLRA Discovery Stay (ECF No. 32, Exs. A, S, AA, U, V, W, AC, AD, D) and Supplemental to SAC (ECF No. 62, Exs. A-I), and alleges violations of federal securities and antitrust laws, negligence, aiding and abetting fraud, unjust enrichment, and declaratory judgment arising from fraudulent trading of Meta Materials Preferred Shares ("MMTLP").

SECOND AMENDED COMPLAINTJURY TRIAL DEMANDED - 1

Defendants' misconduct caused Plaintiff losses of $65,250,000-$130,500,000 and harmed approximately 65,000 investors. Plaintiff alleges as follows:

## I. INTRODUCTION

1. Plaintiff, applying his expertise as a Certified Fire and Explosion Investigator (CFEI), invested in TRCH and MMTLP, holding 26,100 MMTLP shares potentially valued at $65,250,000-$130,500,000, only to suffer catastrophic losses due to Defendants' misconduct: GTS's unauthorized trading of MMTLP, facilitated by FINRA's provision of a vehicle for fraud; FINRA's opaque U3 trading halt, cementing irreversible harm; the SEC's inaction despite early awareness of fraud, exacerbating investor losses; and NBH, Brda, and McCabe's fraudulent misrepresentations. This action seeks to restore trust in U.S. securities markets, protecting 65,000 investors from systemic fraud (Ex. I).

2. This Second Amended Complaint addresses all deficiencies raised in Defendants' Motions to Dismiss (ECF Nos. 49, 50, 51, 53), including standing, jurisdiction, immunity, pleading specificity, service, and venue, with particularized allegations supported by robust evidence filed with ECF Nos. 32 and 62. It seeks justice for Plaintiff and approximately 65,000 investors harmed by Defendants' actions.

## II. PARTIES

3. Plaintiff Contique Willcot is a resident of Pembroke Pines, Florida, with an address at

SECOND AMENDED COMPLAINTJURY TRIAL DEMANDED - 2

6940 SW 10th Ct, Pembroke Pines, FL 33023.

4. Defendant SEC is a federal agency headquartered at 100 F St NE, Washington, DC 20549, responsible for enforcing federal securities laws, including the Securities Act of 1933 and Securities Exchange Act of 1934.

5. Defendant FINRA is a private corporation headquartered at 1735 K St NW, Washington, DC 20006, acting as a self-regulatory organization (SRO) under the Securities Exchange Act of 1934, regulating broker-dealers, including those in Texas executing MMTLP trades.

6. Defendant GTS is a limited liability company headquartered at 545 Madison Ave, New York, NY 10022, operating as a market maker in OTC securities. GTS was served via its registered agent on March 28, 2025, per FRCP 4(h) and Texas law (ECF No. 23).

7. Defendant Ari Rubenstein is GTS's Chief Executive Officer, residing at 112 Palm Ave, Miami Beach, FL, directing GTS's MMTLP trading activities. Plaintiff served Rubenstein on April 14, 2025, via Mari Vidal, a co-resident of suitable age and discretion, after multiple attempts from February to April 2025, as documented in Plaintiff's affidavit (ECF No. 26, Ex. AF; FRCP 4(e); Fla. Stat. § 48.031). Defendants' litigation participation waives service objections (FRCP 12(h)).

8. Defendant NBH is a private corporation incorporated in Nevada, with its principal

place of business at 300 Ridglea Pl, Suite 950, Fort Worth, TX 76116, successor to TRCH's assets.

9. Defendant John Brda, former TRCH CEO, resides at 1425 Frontenay Ct, St. Louis, MO 63122, and orchestrated fraudulent schemes involving TRCH and MMTLP.

10. Defendant Gregory McCabe, NBH's CEO and former TRCH Chairman, resides at 500 W. Texas Ave, Suite 1020, Midland, TX 79701, and misrepresented NBH's asset valuations.

**III. JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for federal claims arising under the Securities Exchange Act of 1934 (15 U.S.C. § 78), Sherman Act (15 U.S.C. §§ 1-2), and Declaratory Judgment Act (28 U.S.C. § 2201), and under 28 U.S.C. § 1332(a) for diversity jurisdiction, as the amount in controversy exceeds $75,000 and Plaintiff (Florida) is diverse from Defendants (District of Columbia, New York, Texas, Missouri). Supplemental jurisdiction applies to state law claims under 28 U.S.C. § 1367.

12. Venue is proper under 28 U.S.C. § 1391(b)(2) and 15 U.S.C. § 78aa, as substantial events giving rise to the claims, including economic harm to Plaintiff and Texas investors in Midland, and FINRA's regulation of Texas broker-dealers (e.g., Charles Schwab) executing MMTLP trades, occurred in this District (Exs. A, B, C; Choice Healthcare v.

Kaiser Found. Health Plan, 615 F.3d 364, 369 (5th Cir. 2010)). Plaintiff requests jurisdictional discovery if FINRA contests personal jurisdiction, per Choice Healthcare, 615 F.3d at 369.

**IV. FACTUAL ALLEGATIONS**

A. Plaintiff's Investments

13. Plaintiff, applying his CFEI expertise in investigating complex fraud, invested in TRCH and MMTLP, documented by Fidelity and TD Ameritrade statements (ECF No. 32, Exs. V, W, AE).

14. Plaintiff held 26,100 MMTLP shares by December 2022, including 25,413 shares via Fidelity (1,182 from TRCH merger, 22,920 purchased Jan-Mar 2022, 1,314 sold Mar 2022, 2,625 purchased Apr-Dec 2022) and 687 shares via TD Ameritrade (21 purchased Apr 2022, 666 purchased Sep 2022), documented by brokerage statements (ECF No. 32, Exs. V, W, Ex. AE). These shares, potentially valued at $2,500-$5,000 each absent Defendants' misconduct, as evidenced by E*Trade sell orders and market offers at $100,000-$200,000 per share (Exs. AE, D), represent a $65,250,000-$130,500,000 loss due to a manipulated market and U3 halt.

B. TRCH/MMTLP Transactions

SECOND AMENDED COMPLAINTJURY TRIAL DEMANDED - 5

15. In June 2021, TRCH merged with Meta Materials Inc. ("MMAT"), executing a 1-for-2 reverse split, reducing Plaintiff's TRCH shares to 591 MMAT shares. Shareholders received 0.5 MMAT shares and one MMTLP share per TRCH share, tied to an NBH spinoff (Ex. AA). Plaintiff received 591 MMAT shares and 1,182 MMTLP shares (Ex. V).

16. MMTLP, a Series A Preferred Share, was intended as a non-tradable placeholder for NBH's private shares, as confirmed by Brda's January 20, 2023, statement: "The proxy clearly indicated [MMTLP] was not going to be traded" (ECF No. 62, p. 6, Ex. A; Roger James Hamilton, "Billion $$$ Fight Against Naked Short Selling," 26:00).

C. Defendants' Misconduct

17. FINRA made it possible and provided a vehicle for GTS's illegal MMTLP trading by approving outdated 2012 TRCH data without verifying its non-tradable intent, constituting bad faith and non-regulatory conduct unprotected by immunity (Exs. B, C; D'Alessio v. NYSE, 258 F.3d 93, 106 (2d Cir. 2001); Alpine Sec. Corp. v. FINRA, cert. denied, No. 24-1084 (U.S. June 2, 2025)). GTS, as the sole market maker, traded MMTLP on the OOTC grey market from October 7, 2021, creating synthetic shares and enabling naked short selling, inflating prices during Plaintiff's purchases (Exs. A, S; TD Ameritrade email, October 14, 2021). FINRA's Threshold Security List showed 10,000+ daily fails-to-deliver (FTDs) from October 14 to December 12, 2022, peaking at 215,238 shares, but reported zero FTDs on December 12, suggesting data falsification (Exs. S, U,

V, W). On December 9, 2022, FINRA's opaque U3 halt, citing "settlement uncertainty" without transparent justification, violated SEC Rule 10b-17's notice requirement, locking Plaintiff and 65,000 investors out of a short squeeze with potential sales at $100,000-$200,000 per share, causing $65,250,000-$130,500,000 in losses over 912 days (Exs. I, AE, D).

17.1. The significant market value of MMTLP shares, blocked by FINRA's U3 halt on December 9, 2022, is evidenced by executed orders marked "Too Late to Cancel" at extraordinarily high prices. Specifically, Exhibit D (page 1) documents two orders cleared for sale: 1,000 shares at $100,000 per share on December 9, 2022, and 1,000 shares at $200,000 per share on December 11, 2022. Additionally, Exhibit D (page 7) confirms the $200,000 order and two orders of approximately $9,999.99 per share each. Further, Exhibit D (page 8) lists orders for: 5 shares at $24,994.02, 375 shares at $4,894.01, 450 shares at $2,500.00, and 250 shares at $2,479.49. These orders reflect robust market demand and short squeeze potential, which would have yielded Plaintiff's 26,100 shares a value of $65,250,000-$130,500,000 absent Defendants' misconduct (Exs. AE, D).

19. On July 12, 2019, Jeffrey Davies emailed SEC officials (Eric Werner, David B. Reece, Kimberly Cain), warning of TRCH fraud, including stock price spikes and Brda's manipulation (ECF No. 65, Exs. H, I). The SEC's non-discretionary duty under Securities Act § 20(a) to enforce securities laws and protect investors was triggered by this notice and 246 complaints by September 2023 (Ex. AD). The SEC's Mission Statement

mandates it "to protect investors; maintain fair, orderly, and efficient markets; and facilitate capital formation," a duty reinforced by its authority under the Securities Exchange Act of 1934 § 21(d) (15 U.S.C. § 78u(d)) to investigate and enjoin fraudulent practices and under 17 C.F.R. § 202.5 to promptly address securities law violations. With over 4,300 employees and a $2.4 billion budget in FY 2023, the SEC had the capability to investigate and halt the TRCH/MMTLP fraud but failed to exercise these powers despite clear evidence of misconduct (Ex. AH). While the SEC has discretion in how to protect investors, it must protect investors, which it failed to do. Its complete failure to act, despite its duty to enforce securities laws, was arbitrary and capricious, enabling harm to Plaintiff and 65,000 investors (Heckler v. Chaney, 470 U.S. 821, 830 (1985); Axon Enter., Inc. v. FTC, 598 U.S. 175, 191 (2023)). Payments to Professor James J. Angel ($1,144,000, FY21-FY25, netting $15,795) and Congressional meetings (2021-2022) suggest bias, undermining the SEC's investor protection mandate (Ex. G).

20. The SEC's June 25, 2024, complaint against Brda confirms his 2020-2021 scheme to manipulate TRCH stock via a short squeeze and MMTLP Preferred Dividend, raising $137.5 million through an ATM Offering (Ex. AA, pp. 1-9, 36). Brda earned a $1.5 million bonus for his misconduct (p. 37).

21. The NBH prospectus lacked key dates, causing investor confusion (Ex. M). On December 13, 2022, MMTLP shares were exchanged 1:1 for NBH shares, valued at "NA," erasing Plaintiff's investment (Ex. W).

SECOND AMENDED COMPLAINTJURY TRIAL DEMANDED - 8

22. FINRA's regulation of Texas broker-dealers, such as Charles Schwab, which executed MMTLP trades, including 13 million shares on December 8, 2022 (valuing Plaintiff's 687 TD Ameritrade shares at $5,612.79), establishes purposeful availability of Texas, supporting personal jurisdiction (Exs. A, B, C, W; Choice Healthcare v. Kaiser Found. Health Plan, 615 F.3d 364, 369 (5th Cir. 2010)).

23. Blue Sheet data from June 21, 2021, to December 8, 2022, faces spoliation risk by January 2027, as confirmed by TDDS logs, necessitating urgent preservation to uncover Defendants' misconduct and prevent loss of critical evidence. Immediate preservation is critical to prevent irreparable harm (Ex. AC; Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 (S.D.N.Y. 2003)).

**V. CAUSES OF ACTION**

A. Securities Fraud

Count 1: Violation of Securities Exchange Act § 10(b) and Rule 10b-5 (Against All Defendants)

24. Plaintiff incorporates paragraphs 1-23.

25. Defendants knowingly or recklessly engaged in manipulative and deceptive practices in connection with MMTLP trading: a. GTS and Rubenstein's unauthorized trading and

naked short selling, enabled by FINRA's approval of outdated 2012 TRCH data as a vehicle for fraud (Exs. A, B, C, S); b. FINRA's opaque U3 halt and notice revision, cementing irreversible harm through non-regulatory misconduct, and potential data falsification (Exs. I, S, U, V, W); c. SEC's inaction despite awareness of TRCH fraud since 2019, causing further harm by failing to intervene under Securities Act § 20(a) (Exs. G, H, I, AD); d. NBH, Brda, and McCabe's misrepresentations regarding TRCH's asset valuations and MMTLP's purpose, inducing investor reliance (Ex. AA).

26. Defendants knowingly or recklessly engaged in manipulative and deceptive practices in connection with MMTLP trading: a. GTS and Rubenstein's unauthorized trading and naked short selling, creating synthetic shares that inflated MMTLP prices, as evidenced by over 10,000 daily FTDs on FINRA's Threshold Security List from October 14 to December 12, 2022, peaking at 215,238 shares (Exs. A, S, U, V, W); b. FINRA's approval of outdated 2012 TRCH data and opaque U3 halt on December 9, 2022, which blocked an impending short squeeze with potential sales at $100,000-$200,000 per share, as shown by E*Trade sell orders and market offers (Exs. I, AE, D); c. SEC's inaction despite awareness of TRCH fraud since 2019, enabling ongoing harm by failing to intervene under Securities Act § 20(a) (Exs. G, H, I, AD); d. NBH, Brda, and McCabe's misrepresentations regarding TRCH's asset valuations and MMTLP's purpose, inducing investor reliance (Ex. AA). These acts caused Plaintiff's losses of $65,250,000-$130,500,000, robbing him of the short squeeze opportunity (Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007)).

26.1. Each Defendant's actions directly caused Plaintiff's losses: GTS and Rubenstein's unauthorized trading created synthetic shares, inflating MMTLP prices during Plaintiff's purchases (Exs. A, S); FINRA's bad-faith data approval and U3 halt locked Plaintiff out of a short squeeze, preventing sales at $100,000-$200,000 per share (Exs. I, AE, D); the SEC's inaction enabled ongoing fraud (Exs. G, H, I); and NBH, Brda, and McCabe's misrepresentations induced Plaintiff's reliance (Ex. AA). These acts collectively caused Plaintiff's $65,250,000-$130,500,000 loss on 26,100 MMTLP shares, valued at $2,500-$5,000 per share absent misconduct (Exs. V, W, AE, D; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007)).

B. Antitrust Violations

Count 2: Violation of Sherman Act §§ 1-2 and Clayton Act §§ 4, 7 (Against GTS, Rubenstein, NBH, Brda, McCabe)

27. Plaintiff incorporates paragraphs 1-23.

28. Defendants colluded to restrain trade and monopolize the U.S. OTC energy securities market, defined as securities traded on OOTC/OTCBB platforms, including TRCH peers like Abraxas Petroleum (OTC: AXAS), with high entry barriers due to FINRA's stringent broker-dealer oversight and OTC Markets' compliance costs (Ex. B). GTS's unauthorized MMTLP trading, enabled by FINRA's provision of outdated 2012 TRCH data (Exs. A, B, C), coordinated with NBH, Brda, and McCabe's fraudulent

misrepresentations (Ex. AA), created synthetic shares and inflated prices by over 200% in June 2021 (Ex. S). This manipulation caused Plaintiff's losses of $65,250,000-$130,500,000, constituting antitrust injury independent of FINRA's U3 halt (Exs. I, W, AE, D). Defendants' actions violated 15 U.S.C. §§ 1-2, entitling Plaintiff to treble damages under 15 U.S.C. § 15 and injunctive relief under 15 U.S.C. § 18 (MM Steel, L.P. v. JSW Steel (USA) Inc., 806 F.3d 835, 843 (5th Cir. 2015); In re Pool Prods. Distrib. Mkt. Antitrust Litig., 988 F. Supp. 2d 696, 711 (E.D. La. 2013)).

28.1. The relevant market is the U.S. OTC energy securities market, encompassing securities like MMTLP and peers (e.g., Abraxas Petroleum, OTC: AXAS), traded on OOTC/OTCBB platforms, with high entry barriers due to FINRA's broker-dealer oversight and OTC Markets' compliance costs (Ex. B). Defendants GTS, Rubenstein, NBH, Brda, and McCabe colluded to manipulate this market, as evidenced by GTS's exclusive MMTLP trading (TD Ameritrade email, October 14, 2021, Ex. A) and Brda's misrepresentations in the 2020-2021 ATM Offering (Ex. AA, pp. 1-9), which coordinated to inflate prices by over 200% in June 2021, causing Plaintiff's antitrust injury (Ex. S; MM Steel, L.P. v. JSW Steel (USA) Inc., 806 F.3d 835, 843 (5th Cir. 2015)).

C. State Law Claims

Count 3: Negligence (Against All Defendants)

29. Plaintiff incorporates paragraphs 1-23.

30. Defendants owed Plaintiff a duty to maintain market integrity (SEC, FINRA) or act with reasonable care in securities transactions (GTS, Rubenstein, NBH, Brda, McCabe) (Restatement (Second) of Torts § 283).

31. Defendants breached these duties: a. SEC failed to act on known TRCH fraud, causing further harm (Exs. G, H, I, AD); b. FINRA provided a vehicle for GTS's fraud through bad-faith data approval and imposed an opaque U3 halt, cementing losses (Exs. B, C, I, S, U, V, W); c. GTS and Rubenstein engaged in fraudulent trading, creating synthetic shares (Exs. A, S); d. NBH, Brda, and McCabe misrepresented TRCH and NBH's asset valuations (Ex. AA).

32. These breaches proximately caused Plaintiff's losses of $65,250,000-$130,500,000 (Exs. V, W, AE, D).

Count 4: Aiding and Abetting Fraud (Against GTS, Rubenstein)

33. Plaintiff incorporates paragraphs 1-23.

34. GTS and Rubenstein knowingly or recklessly provided substantial assistance to Brda's TRCH/MMTLP fraud (Ex. AA) by fraudulently trading MMTLP and creating synthetic shares (Exs. A, S). As GTS's CEO, Rubenstein personally directed MMTLP trading strategies, evidenced by his oversight of manual order routing (Ex. A, TD

Case 7:24-cv-00317-DC-RCG   Document 73   Filed 06/12/25   Page 14 of 18
CASE NO. 7:24-CV-00317-DC-RCG    TEXAS MIDLAND/ODESSA DIVISION

Ameritrade email, October 14, 2021). This assistance facilitated price manipulation, causing Plaintiff's losses of $65,250,000-$130,500,000 (Exs. V, W, AE, D; Credit Suisse Sec. (USA) LLC v. Simmonds, 566 U.S. 221, 227 (2012)).

Count 5: Unjust Enrichment (Against GTS, Rubenstein, NBH, Brda, McCabe)

35. Plaintiff incorporates paragraphs 1-23.

36. Defendants unjustly profited from fraudulent MMTLP trading (GTS, Rubenstein, Exs. A, S) and misrepresentations (NBH, Brda, McCabe, Ex. AA, p. 37), conferring a direct benefit at Plaintiff's expense. Plaintiff seeks disgorgement of profits to remedy losses of $65,250,000-$130,500,000 (Exs. V, W, AE, D).

D. Declaratory Relief

Count 6: Declaratory Judgment (Against FINRA, SEC)

37. Plaintiff incorporates paragraphs 1-23.

38. Plaintiff seeks declarations that: a. FINRA's U3 halt violated transparency duties under the Securities Exchange Act of 1934 due to its non-regulatory nature and bad faith (Exs. I, S, U, V, W); b. SEC's inaction breached non-discretionary duties under Securities Act § 20(a), failing to protect investors from known fraud (Exs. G, H, I, AD).

The SEC's Mission Statement mandates it "to protect investors; maintain fair, orderly, and efficient markets; and facilitate capital formation," a duty reinforced by its authority under Securities Exchange Act of 1934 § 21(d) (15 U.S.C. § 78u(d)) to investigate and enjoin fraud and under 17 C.F.R. § 202.5 to promptly address violations, supported by its FY 2023 resources of 4,300 employees and a $2.4 billion budget (Ex. AH). This inaction breached its non-discretionary duty to protect investors, by wholly failing to act despite discretion in how to fulfill its investor protection mandate.

39. These declarations are necessary to remedy harm to Plaintiff and 65,000 investors. Over 912 days since the halt, the absence of regulatory action or market correction has compounded investor losses, necessitating judicial intervention (28 U.S.C. § 2201; Axon Enter., Inc. v. FTC, 598 U.S. 175, 191 (2023); Exs. I, AE, D).

**VI. REQUEST FOR RELIEF**

Plaintiff respectfully requests:

a. Compensatory damages of $100,000,000, reflecting Plaintiff's losses on 26,100 MMTLP shares, valued at $3,800 per share (midpoint of $2,500-$5,000), based on E*Trade sell orders, market offers at $100,000-$200,000 per share, and short interest indicating a short squeeze potential (Exs. V, W, I, AE, AG, D). This amount includes proportional damages for 65,000 investors harmed by Defendants' misconduct.

b. Treble damages under 15 U.S.C. § 15 for Sherman Act violations, potentially reaching $300,000,000 based on Plaintiff's antitrust injury.

c. Punitive damages for Defendants' willful misconduct, per BMW of N. Am., Inc. v. Gore, 517 U.S. 559 (1996).

d. Injunctive relief, including access to Blue Sheet data from June 21, 2021, to December 8, 2022, to prevent spoliation by January 2027, as TDDS logs confirm data destruction risks (Ex. AC; Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 (S.D.N.Y. 2003)), and market reforms to prevent future securities fraud.

e. Disgorgement of Defendants' unjust profits.

f. Costs and expenses, including reasonable pro se litigation costs.

g. Declaratory relief as specified in Count 6.

h. Jurisdictional discovery to confirm FINRA's Texas contacts, if contested, per Choice Healthcare v. Kaiser Found. Health Plan, 615 F.3d 364, 369 (5th Cir. 2010).

i. Such other relief as the Court deems just.

**VII. JURY DEMAND**

SECOND AMENDED COMPLAINTJURY TRIAL DEMANDED - 16

Plaintiff demands a trial by jury on all issues so triable.

DATED: June 12, 2025

/s/ Contique Willcot

Contique Willcot, Pro Se

6940 SW 10th Ct

Pembroke Pines, FL 33023

Phone: (954) 274-5173

Email: contiq9@yahoo.com

Certificate of Service

I certify that on June 12, 2025, a true copy of this Second Amended Complaint was served via CM/ECF to:

- Eric Aaron Reicher, SEC, 100 F St NE, Washington, DC 20549, reichere@sec.gov

- Jason J. Rose, SEC, 801 Cherry St, Suite 1900, Fort Worth, TX 76102, rosej@sec.gov

- David C. Kent, Faegre Drinker Biddle & Reath LLP, 2323 Ross Ave, Suite 1700, Dallas, TX 75201, david.kent@faegredrinker.com

- Garland "Land" Murphy, Murphy Ball Stratton LLP, 1001 Fannin St, Suite 720, Houston, TX 77002, lmurphy@mbssmartlaw.com

SECOND AMENDED COMPLAINTJURY TRIAL DEMANDED - 17

- Christopher Barber, Stephen Fraser, Williams Barber & Morel Ltd., 233 S Wacker Dr, Suite 6800, Chicago, IL 60606, cjb@williamsbarbermorel.com, saf@williamsbarbermorel.com

- Judson Paul Manning, Field Manning Stone Aycock P.C., 2112 Indiana Ave, Lubbock, TX 79410, jpmanning@lubbocklawfirm.com

- Jason M. Hopkins, Jason S. Lewis, Ryan D. Lantry, DLA Piper LLP US, 1900 N Pearl St, Suite 2200, Dallas, TX 75201, jason.hopkins@us.dlpiper.com, jason.lewis@us.dlapiper.com, ryan.lantry@us.dlapiper.com (counsel for John Brda and Gregory McCabe)

/s/ Contique Willcot

Contique Willcot, Pro Se

Certification Pursuant to Federal Securities Laws

I, Contique Willcot, certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief regarding claims under federal securities laws.

Executed on June 12, 2025

/s/ Contique Willcot

Contique Willcot