**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| CONTIQUE WILLCOT, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CAUSE NO. 24-CV-00317-DC-RCG |
| | § | |
| SECURITIES AND EXCHANGE | § | |
| COMMISSION *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANTS GTS SECURITIES, LLC'S AND ARI RUBENSTEIN'S**
**<u>MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT</u>**

Faced with fatal defects in his prior pleading, Plaintiff comes now to assert claims that present a stunning reversal. For months, Plaintiff maintained, through certified, sworn allegations that Defendants GTS Securities, LLC ("GTS") and Ari Rubenstein (collectively, the "GTS Defendants") "creat[ed] synthetic shares" and engaged in "naked short selling" that "*depressed* MMTLP prices." Dkt. No. 58-1 at 3 ¶¶ 14–15 (emphasis added); *id.* at 4 ¶ 22; *see also, e.g.*, Dkt. No. 3 at 57 ¶ 253(d)(i)–(ii) ("Specific Acts of Scienter" as to GTS, namely "suppressing the price of MMTLP stock" through "naked short selling" and "synthetic/counterfeit shares"); Dkt. No. 58-1 at 5 ¶ 25 (alleging "collu[sion] to *suppress* MMTLP prices" (emphasis added)). Presumably because such supposed price suppression would have caused Plaintiff to pay less for his shares and thus, benefit when he invested, Plaintiff now somehow asks the Court to indulge the opposite theory, namely that the same alleged conduct, i.e. "naked short selling," actually "inflat[ed]" prices." *E.g.*, SAC at 6 ¶ 17.[1] Through this allegation, Plaintiff now unmistakably contradicts the position he maintained, in sworn pleadings, for months in this litigation. And he contradicts the representations he made when he sought and obtained leave to amend. *See, e.g.*, Dkt. No. 58 at 7–8 ("Plaintiff will allege specific naked short selling acts . . . depressing MMTLP prices . . . .").

Plaintiff's new theory is just as implausible and problematic as his last. His new price inflation theory makes no economic sense, contradicting case after case as to the price effect of alleged naked short selling. Furthermore, Plaintiff complains that he lost the opportunity to participate in a so-called short squeeze, the very kind of manipulative trading conduct that he accuses a defendant of engaging in. *See id.* at 8 ¶ 20 (allegation as to Defendant Brda).

---

[1] Citations to Plaintiff's Second Amended Complaint, Dkt. No. 73, are in the following form: SAC at _ ¶ _. For ease of reference, citations to the Exhibits to the Second Amended Complaint are to their corresponding docket numbers.

While Plaintiff adopts the mantle of "protecting 65,000 investors from systemic fraud" in MMTLP, SAC at 2 ¶ 1, in reality, his newfound theory is an outlier that is at odds with the theories presented by other MMTLP investors. *E.g.*, *Khorassani v. FINRA*, Index No. 153819/2023, 2023 N.Y. Misc. LEXIS 2980, at *4 (N.Y. Sup. Ct. June 15, 2023) (denying presuit discovery, and noting that "the price of MMTLP share[s] dropped from $8.90 on November 18, 2022, to $2.895 per share on December 8, 2022, causing harm to Petitioner"), *aff'd*, 223 A.D.3d 589 (N.Y. App. Div. 2024); *see also* Pl. Scott Traudt's First Mot. to Amend the 1st Am. Compl. at 7, *Traudt v. Rubenstein*, Civ. No. 24-782 (D. Vt. Nov. 8, 2024), Dkt. No. 88 (complaining of "enormous quantities of naked synthetic shares . . . [that] provide[d] for the destruction of the MMTLP share price").

Plaintiff's fatally flawed claims are not getting any better. For the reasons that follow, they should be dismissed with prejudice.

## **ARGUMENT**

### I.    **Plaintiff's Claims Against the GTS Defendants Should Be Dismissed Pursuant to Rule 12(b)(5) Because of Improper Service of Process**

The Court should reject Plaintiff's post hoc efforts to justify his insufficient service of process on the GTS Defendants. As a pro se plaintiff, Plaintiff must comply with the Rules of Civil Procedure, including the rules related to service of pleadings. *See Thrasher v. City of Amarillo*, 709 F.3d 509, 512 (5th Cir. 2013). And he bears the burden of establishing the validity of service. *See Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1345–46 (5th Cir. 1992).

Here too, Plaintiff's arguments raise questions as to the veracity of his statements in this case. As set forth in the GTS Defendants' initial Motion to Dismiss, Dkt. No. 50 at 3–5, Plaintiff's proofs of service as to GTS, Dkt. No. 23, and Defendant Rubenstein, Dkt. No. 26, stated that the

relevant papers were delivered to third party individuals who allegedly represented themselves to be authorized to accept service on behalf of GTS and Mr. Rubenstein.

When confronted with contrary factual evidence, *see* Dkt. No. 50-1 at 1 ¶ 6, Dkt. No. 50-2 at 1 ¶ 6, Plaintiff has pivoted to yet more problematic theories. Plaintiff's pivot may be summarized as follows:

| Defendant | Plaintiff's First Service Theory | Plaintiff's Newfound Theory |
|---|---|---|
| GTS | Third person purports to serve GTS on March 28, 2025, through Mr. Robert "Broomer,"[2] who purportedly represented himself to be "authorized to accept" the documents. Dkt. No. 23. | "GTS was served via its registered agent on March 28, 2025, . . . ." SAC at 3 ¶ 6. |
| Ari Rubenstein | Third person purports to serve Mr. Rubenstein on April 14, 2025, through Ms. Mari Vidal, who purportedly "identified [herself] as the person authorized to accept." Dkt. No. 26. | Plaintiff himself purports to have "successfully served" Mr. Rubenstein on April 14, 2025, through Ms. Mari Vidal, who is now allegedly "a co-resident of suitable age and discretion." Dkt. No. 73-4. |

Plaintiff's new arguments to justify his service efforts are unavailing. Plaintiff now suggests for the first time that he personally "attempted to serve [Defendant] Ari Rubenstein" and then "successfully served" his nanny. *See* Dkt. No. 73-4. He has also asserted that "[f]or GTS . . . , [he] served the registered agent." *See* Dkt. No. 58 at 4. This is improper. A litigant may not serve process in his own case. *See* Fed. R. Civ. P 4(c)(2); *see also Thrasher*, 709 F.3d at 511–12. Second, as to GTS, Plaintiff now also seeks to pass off the recipient of his purported delivery, Mr. Brooks, as GTS's registered agent. *See also* Dkt. No. 58 at 4. Plaintiff has not and cannot provide any evidence that Mr. Brooks is or ever was GTS's registered agent, a fact that could easily have been confirmed through publicly available sources. Regardless, Mr. Brooks himself has confirmed

---

[2] As set forth in Mr. Brooks's affidavit, Dkt. No. 50-1, Plaintiff's proof of service misspells his last name, among other things.

that he has *never* been asked by anybody at or affiliated with GTS to accept service of process on GTS's behalf (as any registered agent would be asked).  *See* Dkt. No. 50-1 at 1 ¶ 6.  Plaintiff's bald, conclusory, and wrong suggestions to the contrary should be rejected.

Plaintiff's other, new efforts to establish service upon Mr. Rubenstein also fail.  After Mr. Rubenstein pointed out that efforts to serve him through his nanny, Ms. Vidal, could only be proper if Ms. Vidal resided with him at the location where service was attempted, Dkt. No. 50 at 5, Plaintiff has dialed up a conclusory assertion that Ms. Vidal actually lives with Mr. Rubenstein. *See* SAC at 3 ¶ 7 ("co-resident of suitable age").  Mr. Rubenstein's sworn statement says otherwise. Dkt. No. 50-2 at 1 ¶ 5 ("Ms. Vidal . . . does not live at my residence.").  Plaintiff has mustered nothing to the contrary, other than his belated, conclusory say-so.

Given his insufficient service attempts, Plaintiff falls back to an equally problematic theory, namely that the GTS Defendants somehow waived their service objections by participating in this case.  Not so.  Under Federal Rule of Civil Procedure 12(h), a service objection may only be waived if it is not included in a motion in certain circumstances.  But, the GTS Defendants have filed just one motion here, a motion to dismiss that raised the service objections that they continue to raise now.  *See* Dkt. No. 50 at 3–5; *see also* Dkt. No. 63 at 9–10 (urging service objection in opposition to Plaintiff's motion for leave to amend).  That is all the GTS Defendants needed to do to preserve their objections.  *Accord Rountree v. Dyson*, 892 F.3d 681, 683–84 (5th Cir. 2018) (explaining that a court may dismiss an amended pleading based upon defects that are not corrected from initial pleading); *e.g.*, *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 540 (5th Cir. 2019) (recognizing that a defendant may participate in litigation even when objecting to personal jurisdiction).  Court after court in this Circuit (and others) has similarly recognized that "participation" of the kind undertaken by the GTS Defendants here does not

effectuate a waiver under Federal Rule of Civil Procedure 12(h). *E.g.*, *Automotive Experts, LLC v. St. Charles Pontiac, Inc.*, Civ. No. 14-1941, 2015 U.S. Dist. LEXIS 22941, at *16–17 (E.D. La. Feb. 25, 2015); *Pickett v. City of Houston*, Civ. No. 08-2734, 2009 U.S. Dist. LEXIS 36125, at *7– 8 (S.D. Tex. Apr. 29, 2009); *Riche v. Ford Motor Co.*, Civ. No. 92-1125, 1992 U.S. Dist. LEXIS 13396, at *3–4 (E.D. La. Aug. 31, 1992).

## II.    Plaintiff's Claims Against the GTS Defendants Should Be Dismissed Pursuant to Rule 12(b)(6)

### A.    Plaintiff's Securities Claims Fail (Count I)

#### 1.    Plaintiff Fails to Plead Actionable Securities Conduct by the GTS Defendants

Plaintiff's securities claims fail at the outset because he fails to adequately or plausibly allege any misrepresentation or manipulation upon which a Rule 10b-5 claim may rest.

##### (a).    Plaintiff Fails to Plead Any Misrepresentation or Omission by the GTS Defendants

Plaintiff has failed to allege that he relied on any misrepresentation or omission of the GTS Defendants. *See U.S. Quest, Ltd. v. Kimmons*, 228 F.3d 399, 407 (5th Cir. 2000). Instead, he alleges that he relied upon misrepresentations of Defendants Next Bridge Hydrocarbons, Inc. ("NBH"), Brda, and McCabe. *See* SAC at 10 ¶ 26; *see also* Dkt. No. 60-1 at 3 ¶ 13 (sworn allegation).

##### (b).    Plaintiff's Allegations About the Issuer's Lack of Consent to Trading Are Unavailing

To the extent Plaintiff now alleges any securities-related conduct by the GTS Defendants, his claims fail as a matter of law. He conjures up "unauthorized trading" of MMTLP. SAC at 9– 10 ¶ 25. Here, he suggests that NBH never intended MMTLP shares to trade publicly—nevermind his own trading of MMTLP shares—and that this intent was somehow unduly thwarted by the GTS Defendants. *See id.* That purported (and unsupported) intent is irrelevant. Broker-dealers

have the authority to trade over-the-counter securities, like MMTLP, without the issuer's consent in accordance with 17 C.F.R. § 240.15c2-11. While Plaintiff previously acknowledged that the GTS Defendants undertook this kind of effort, Dkt. No. 3 at 14–15 ¶ 48 (referring to GTS's alleged "paperwork to register [MMTLP] for trading"), he is conspicuously silent about it now. *See also* Dkt. No. 32-11 at 4 of 15 (FINRA guidance stating that with respect to MMTLP, "broker-dealers relied on an exception to SEC Rule 15c2-11 that permits [them] to publish a quotation for unsolicited customer orders").[3] He makes no effort to allege, much less plausibly so (and with particularity), that the GTS Defendants failed to follow the procedure to enable MMTLP to lawfully trade under this regulation. Nor does he allege that there is any deception arising from any noncompliance, which he does not attempt to plead in the first place. *See SEC v. C. Jones & Co.*, Civ. No. 03-636, 2009 U.S. Dist. LEXIS 9832, at *11 (D. Colo. Feb. 10, 2009) (dismissing claims where marketmaker made misrepresentations in paperwork under this regulation because such misrepresentations were not material).

As such, Plaintiff's claims are on all fours with those that other MMTLP courts have rejected. In at least two prior actions, MMTLP plaintiffs have sought pre-suit discovery on the basis of claims that MMTLP never should have been traded publicly, given the issuer's alleged lack of consent to trading (and notwithstanding the plaintiffs' own trading thereof). In rejecting the discovery, these courts have specifically relied upon the plaintiff's failure to "identify why, how, or under what law the trading of MMTLP without the issuer's approval made such trades 'illegal.'" *See Steamroller, LLC v. OTC Mkts. Grp., Inc.*, Index No. 160854/2023, 2024 N.Y. Misc.

---

[3] If necessary, judicial notice of this document is appropriate. Indeed, "courts routinely take judicial notice of materials . . . promulgated by[] FINRA." *See Prodanova v. J.S. Wainwright & Co.*, Civ. No. 17-7926, 2018 U.S. Dist. LEXIS 225334, at *11 (C.D. Cal. Dec. 11, 2018). The Court may "tak[e] note" of Plaintiff's prior filing in any event. *Meadows v. City of Crowley*, 731 F. App'x 317, 318 n.1 (5th Cir. 2018) (per curiam).

LEXIS 5183, at *4–5 (N.Y. Sup. Ct. Aug. 15, 2024); *see also Khorassani*, 2023 N.Y. Misc. LEXIS 2980, at *4. Similarly, Plaintiff here undertakes no effort to show that any supposedly "unauthorized trading" was illegal, nor can he.

Plaintiff knows this theory is not actionable against the GTS Defendants, so, at most, he obliquely suggests that it gives rise to a misrepresentation claim. Thus, in Paragraph 16 of the SAC, he alludes to alleged confusion posited by a YouTube discussion of a statement by Defendant Brda that was allegedly made after the trading halt. But, even if there was something plausible to this (and there is not), it says nothing about the GTS Defendants.

### (c).    Plaintiff's "Naked Shorting" Theory Also Fails

Plaintiff's "naked short" allegations do not state actionable securities conduct. They are, in a word, implausible. They rest upon the unsupported notion that the GTS Defendants' supposed naked shorting of MMTLP caused MMTLP's price to *rise* and thus, Plaintiff paid more for his shares.[4] SAC at 6 ¶ 17. That is not how naked shorting operates. Where a market participant allegedly sells shares without satisfying locate requirements, as in a naked short scenario, the share price would be expected to decrease (as Plaintiff previously alleged), not increase as Plaintiff now seeks to have it. *See Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 424–25 (S.D.N.Y. 2010). And

---

[4] Plaintiff's hypothetical share prices—informed by an amalgam of excerpted materials (of unknown authenticity) from Twitter, Dkt. No. 73-2—are dubious. *See also* SAC at 7 ¶ 17.1 (alleging that the data "evidence[s] . . . executed orders"). The first page of Plaintiff's exhibit, Dkt. No. 73-2, titled "Spreadsheet Commision [sic] on Too Late to Cancel's [sic]" purportedly contains data concerning the status of various limit orders to sell MMTLP shares in the final months of trading. Far from being executed (and thus potentially indicative of market conditions), each of those orders was rejected, as shown by the column with "Order Rejected Date & Time Stamp" data. And there is no data for "Price Executed" for any of the orders. Similarly, the tweets on the second, fourth, fifth and sixth pages of the Exhibit plainly select data from a "Rejected" orders category.

The eighth page of the Exhibit is problematic for a different reason. It purports to be a hearsay statement of what Chat GPT says about this circumstance. *See also* Dkt. No. 63 at 3 nn.2–3 (discussing purported case law that Plaintiff appeared to source through artificial intelligence).

far from being nefarious, "short selling enhances price efficiency by helping to move the prices of overvalued securities toward their intrinsic values," which are generally lower, not higher as Plaintiff would now have it. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007). The Court need not and should not indulge Plaintiff's implausible, counterfactual theories that defy economic reason. *Accord Coates v. Heartland Wireless Commc'ns, Inc.*, 55 F. Supp. 2d 628, 643 (N.D. Tex. 1999) (dismissing Rule 10b-5 theory that was "not plausible as pleaded"); *Atl. Gypsum Co. v. Lloyds Int'l Corp.*, 753 F. Supp. 505, 514 (S.D.N.Y. 1990) ("Plaintiffs' view of the facts defies economic reason, and therefore does not yield a reasonable inference of fraudulent intent."). Indeed, in construing the securities laws, "the emphasis should be on economic reality." *See Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967); *see, e.g., In re Digital Island Sec. Litig.*, 357 F.3d 322, 331 (3d Cir. 2004) (affirming dismissal of allegations that made "little economic sense" (quotation marks omitted)).

Plaintiff's own allegations are also inconsistent with his newfound theory that the GTS Defendants inflated the price of MMTLP shares. Plaintiff's astronomical damages figures necessarily assume that the actual marketplace price was *lower* than the price that should have existed, i.e. that MMTLP's price was deflated (as Plaintiff previously alleged), not inflated (as Plaintiff alleges now). *Accord* SAC at 10 ¶ 26 (referencing supposed lost opportunity to sell at more than $100,000 per share); *id.* at 11 ¶ 26.1 (purporting to value MMTLP shares at $2,500 per share or more). That is particularly so where MMTLP stopped trading at a price that was a small fraction of those posited by Plaintiff. *See Khorassani*, 2023 N.Y. Misc. LEXIS 2980, at *4.

Even taken at face value, Plaintiff's new allegations do not and cannot state a claim as a matter of law. Just as there is nothing inherently illegal about short selling, there is nothing inherently illegal about doing so without satisfying locate requirements, as in a fails-to-deliver

scenario. *See Cohen*, 722 F. Supp. 2d at 424–25; *see also Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 708 (S.D. Tex. 2004) (holding that e-mails "showing . . . that some defendants experienced 'fails'" did not establish as a matter of pleading that market manipulation occurred). Put simply, "broad and conclusory allegations of naked short selling do not state a claim for market manipulation." *See Cohen*, 722 F. Supp. 2d at 423–24.

Plaintiff's conclusory allegations fail for the same reasons that the naked short allegations in *Cohen* failed. Plaintiff never alleges how the conduct was violative, much less with particularity. He alleges no more than unspecified short selling, at unspecified times, with a completely implausible result, which may or may not have caused him actual injury. He never alleges that any purported naked short sales by the GTS Defendants remain uncovered, let alone for an actionable reason. *See id.* at 425 (explaining that "fails to deliver can occur for a variety of legitimate reasons"); *see also Jag Media*, 387 F. Supp. 2d at 708. And Plaintiff utterly fails to allege in any way how the GTS Defendants' purported conduct left him with a "false impression of how market participants valued [MMTLP]." *See ATSI*, 493 F.3d at 101.

### 2.     Plaintiff Fails to Plead Reliance, Much Less Justifiable Reliance

Plaintiff has also failed to plead reliance in connection with his theories against the GTS Defendants. Reliance in a misrepresentation case is relatively simple in that a plaintiff must plead and prove that he reasonably relied on a misrepresentation by a defendant. But, on that front, his allegations are only directed at non-GTS defendants. SAC at 2 ¶ 1. Since Plaintiff is asserting market manipulation claims against the GTS Defendants, he must plead that he "reli[ed] on an assumption of an efficient market free of manipulation." *See ATSI*, 493 F.3d at 101. He has not done so and cannot. Further, he must also allege facts showing he "believed [MMTLP] was *not* manipulated." *See In re Initial Pub. Offering Sec. Litig*, 241 F. Supp. 2d 281, 298 (S.D.N.Y. 2003). He has not done so and cannot. Rather, his sworn statements in this case foreclose such an

allegation, insofar as he only states that he relied on alleged misrepresentations of Defendants NBH, Brda, and McCabe.  *E.g.*, SAC at 2 ¶ 1.  Full stop.

If Plaintiff were tempted to improperly revisit those sworn statements as well, others would foreclose his efforts.  That is because Plaintiff repeatedly complains of the frustration of his participation in a "short squeeze."  *E.g.*, *id.* at 10 ¶ 26.  This is even though he faults Defendant Brda for alleged "short squeeze" conduct of his own.  *See id.* at 8 ¶ 20.  A short squeeze "occurs when investors buy significant quantities of a heavily shorted stock, which drives the stock price up.  In response, short sellers . . . must buy the shares at the higher price to exit their short position.  These additional purchases can drive the stock price even higher."  *See In re January 2021 Short Squeeze Trading Litig.*, Civ. No. 21-2989, 2023 U.S. Dist. LEXIS 4306, at *21 n.2 (S.D. Fla. Jan. 9, 2023), *aff'd on other grounds*, App. No. 23-10436, 2024 U.S. App. LEXIS 25367 (11th Cir. Oct. 8, 2024) (per curiam).  As such, Plaintiff knew that MMTLP was being "heavily shorted," *id.*— because his trading strategy sought to capitalize on that circumstance to drive up the share price. By his own allegations, he knows that such short squeeze conduct is wrong.  *See* SAC at 8 ¶ 20. His efforts to capitalize nonetheless, through a short squeeze, are themselves manipulative.  *See SEC v. Falcone*, Civ. No. 12-5027, 2013 U.S. Dist. LEXIS 132300, at *3 (S.D.N.Y. Sept. 16, 2013) (entering consent judgment where defendant admitted to "engag[ing] in a market manipulation scheme, in the form of a 'short squeeze,' to constrict the supply of a security with the intention of forcing short sellers to settle at an elevated price"); *see also Bratya SPRL v. Bed Bath & Beyond Corp.*, Civ. No. 22-2541, 2024 U.S. Dist. LEXIS 175313, at *40–42 (D.D.C. Sept. 27, 2024), *app. dismissed*, App. No. 25-8002, 2025 U.S. App. LEXIS 11256 (D.C. Cir. May 8, 2025).  Plaintiff did not rely on any assumption about the market being free from manipulation.  He knew that the market was in fact being manipulated, as he was manipulating it himself.

Any potential invocation by Plaintiff of reliance on a market free of manipulation must also fail because MMTLP was traded over-the-counter—in a market that Plaintiff now (implausibly) maintains never should have existed. Plaintiff's potential, unpleaded reliance theory is unavailable based upon his own allegations, which suggest that the market here was not "active" or "efficient" for purposes of such a theory. *See Finkel v. Docutel/Olivetti Corp.*, 817 F.2d 356, 364 (5th Cir. 1987); *see also Cohen*, 722 F. Supp. 2d at 434. In other words, "the security is [not] actively traded." *See Finkel*, 817 F.3d at 364. Here, Plaintiff plainly alleges that trading of MMTLP was disjointed and sporadic, with at least tens of thousands of daily orders that allegedly went unfilled. *See* SAC at 10 ¶ 26.

Finally, to the extent Plaintiff is attempting to make something of the notion that his attempt to effectuate a short squeeze was frustrated by FINRA's trading halt, that is not actionable either. For one thing, it does not say anything about the GTS Defendants. Nor can it, where Plaintiff's sworn allegations—the ones that he does not obviously contradict now—are that the trading halt was "unilateral" on FINRA's part. Dkt. No. 3 at 4 ¶ 1(e). He cannot walk away from that statement, as it is not controverted in his Second Amended Complaint. *See Meadows*, 731 F. App'x at 318 n.1 ("[M]eadows . . . made these admissions . . . in her original complaint, and removed these statements from her amended pleading. But we are aware of no rule that forbids us from taking note of her prior filing."); *Aubrey v. Estate of Tobolowsky*, Civ No. 19-2792, 2021 U.S. Dist. LEXIS 187054, at *13–14 (N.D. Tex. Sept. 7, 2021), *adopted by* Ord. Accepting Findings, Conclusions, and Recommendations of the U.S. Mag. J. (N.D. Tex. Sept. 28, 2021), Dkt. No. 111. And, in any event, Plaintiff's lost opportunity to participate in a short squeeze or some kind of hoped-for meme stock feeding frenzy is not actionable. It is nothing more than a holder claim founded upon the notion that to the extent he relied upon anything, he did not sell his shares, but rather, continued to

hold them.  Such claims are barred by decades of precedent.  *See Merrill Lynch, Pierce, Fenner &*

*Smith Inc. v. Dabit*, 547 U.S. 71, 79–80 (2006); *Talarico v. Johnson*, App. No. 23-10176, 2024

U.S. App. LEXIS 5327, at *7 (5th Cir. Mar. 5, 2024) (per curiam) (collecting cases); *see also Krim*

*v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1443 n.7 (5th Cir. 1993) (collecting cases).

### 3.      Plaintiff Fails to Allege Scienter

Plaintiff's allegations also fall short of the statutory threshold for scienter, namely that the

pleading "with respect to each act or omission . . . , state *with particularity* facts giving rise to a

*strong inference*" of scienter.  *See* 15 U.S.C. § 78u-4(b)(2) (emphasis added).  Plaintiff must plead

something akin to "an extreme departure from the standards of ordinary care."  *See Rosenzweig v.*

*Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003) (quotation marks omitted).  A plaintiff must do

more than plead "mere motive and opportunity."  *See id.* at 867.  And he must allege something as

to "each defendant."  *See Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 364–

65 (5th Cir. 2004).  Apart from Plaintiff's insufficient, conclusory snippets (e.g., "unauthorized

trading," "naked short selling"), the SAC contains few factual allegations about the GTS

Defendants at all.  In the isolated instances where Plaintiff attempts to plead something as to the

GTS Defendants, he requires many logical leaps.  *See* SAC at 10 ¶ 26 (proffering FINRA security

list as support for existence of "unauthorized trading and naked short selling").  Courts have

previously rejected claims founded upon such allegations.  *See Cohen*, 722 F. Supp. 2d at 424 &

n.3 (similarly rejecting reliance on securities list).  Furthermore, he does not suggest that the GTS

Defendants knew or should have known about any of this, much less with particularity, as required.

*See Flaherty & Crumrine Preferred Income Fund v. TXU Corp.*, 565 F.3d 200, 208 (5th Cir. 2009)

("[O]missions and ambiguities count against inferring scienter . . . ." (quotation marks omitted)).

This falls well short of creating a "strong inference of scienter" as to the GTS Defendants.

### 4.    Plaintiff Fails to Plead His Claims with Particularity

Dismissal is independently warranted because even if Plaintiff stated a claim that meets Rule 12(b)(6)'s plausibility standards, which Plaintiff has not done, he has failed to plead his claims with particularity.  This requires that he identify the particular conduct that is alleged to be violative, identify when and where it occurred, and "explain the reason or reasons why" the conduct is fraudulent, among other things.  *See Rosenzweig*, 332 F.3d at 866.  Plaintiff, however, does none of that.  Indeed, the "lack of specificity stands in contrast to the widespread nature of the conspiracy that [he] attempt[s] to allege."  *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 180 (5th Cir. 1997).

### B.    Plaintiff's Antitrust Claims Fail (Count II)

Plaintiff's antitrust theories are similarly implausible and fail on multiple independent bases.  First, Plaintiff does not plausibly allege the existence of any agreement to support his theory, which is one of "collu[sion]."  *See* SAC at 11 ¶ 28.  His own allegations are inconsistent with the existence of any agreement between the named defendants.  *See id.* at 6 ¶ 16 (alleging disagreement between NBH on the one hand and others, including the GTS Defendants, as to whether MMTLP would even trade at all).  Elsewhere, his claims rely on nothing more than unilateral conduct, which does not evidence an agreement of any kind.  *See id.* at 12 ¶ 28.1 (referencing "[G]TS's exclusive MMTLP trading" and "Brda's misrepresentations").  And to the extent Plaintiff alleges anything relevant, it is nothing more than the very buzzwords, "labels and conclusions, and . . . formulaic recitation" of elements of an antitrust cause of action that *Twombly*, itself a Sherman Act case, specifically rejected.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Even were it not so, Plaintiff's claims would fail on independent grounds.  The defendants on this claim include a market maker, the issuer, and their executives, which are on different levels of the distribution chain.  As such, Plaintiff suggests vertical, not horizontal, conduct.  *See New*

*Orleans Ass'n of Cemetery Tour Guides & Co. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1035–36 (5th Cir. 2023). Thus, he must allege a cognizable product and geographic market and plead why the market is so defined. *See Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001) (Sotomayor, J.); *see, e.g.*, *RX Sols., Inc. v. Caremark, L.L.C.*, Civ. No. 23-100, 2025 U.S. Dist. LEXIS 17581, at *14–15 (S.D. Miss. Jan. 31, 2025) (collecting cases, and dismissing where "the Amended Complaint does not attempt to plead why the market is limited to the 'prescription medication market'"), *app. filed*, App. No. 25-60084 (5th Cir. Feb. 21, 2025); *Mary Kay, Inc. v. Dunlap*, Civ. No. 12-29, 2012 U.S. Dist. LEXIS 86499, at *21 (N.D. Tex. June 21, 2012) (dismissing where plaintiff did not include sufficient "factual allegations concerning the relevant product and geographical markets to assess whether it is plausible that Mary Kay's non-compete clause adversely affects competition"). Plaintiff makes no effort to support his "U.S. OTC energy securities market, defined as securities traded on OOTC/OTCBB platforms." *See* SAC at 11 ¶ 28. He pleads no facts to support that such a market is plausible under the antitrust laws.

Even if he plausibly alleged a product and geographic market, Plaintiff's pleading would still fail because he fails to allege that Defendants had sufficient control over that market. As such, he must plausibly allege market power, at a minimum. *E.g.*, *Am. Airlines, Inc. v. Travelport Ltd.*, Civ. No. 11-244, 2011 U.S. Dist. LEXIS 166373, at *33–34 (N.D. Tex. Nov. 21, 2011). He could do so directly, but he offers nothing in these regards. Indeed, contrary to his definition of the relevant market as "the U.S. OTC energy securities market," SAC at 12 ¶ 28.1, he does not muster anything suggesting that the Defendants operated to affect any securities other than MMTLP. He says nothing, for example, about any conduct affecting MMTLP's "peers," such as "Abraxas Petroleum," *see id.*, let alone any of the other innumerable securities within his market definition. Nor does he provide any plausible estimate of the market share that any of the defendants holds in

14

this market, let alone one meeting any threshold to survive a motion to dismiss. *Travelport*, 2011 U.S. Dist. LEXIS 166373, at *33–34 (referencing higher threshold for Section 2 claims). This is a tall order where Plaintiff alleges that two of the defendants, NBH and Brda, did not intend to participate in MMTLP at all, SAC at 6 ¶ 16, and makes no effort to allege participation of any other defendants in any securities other than MMTLP, such as Abraxas Petroleum.

Plaintiff's allegations are facially implausible in any event under applicable law. There are innumerable securities falling within his definition, whether involving biomass, coal, natural gas, nuclear, oil, solar, thermal, water, wind, and other energy forms. Plaintiff's market also is not limited geographically, as "OOTC" securities include "domestic and foreign equity securities, warrants, units, American Depositary Receipts (ADRs), and Direct Participation Programs (DPPs)."[5] And, Plaintiff's market definition, on its face, draws in market participants at every level of the market, from issuers to retail brokers, market makers, regulators, and everyone in between. At the motion to dismiss stage, courts need not and do not entertain such facially overbroad and implausible market definitions. *E.g.*, *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418 (5th Cir. 2010) (affirming dismissal where it was "impossible to imagine that Leegin could have power over" defined market of "women's accessories"); *N. Jersey Secretarial Sch., Inc. v. McKiernan*, 713 F. Supp. 577 (S.D.N.Y. 1989) ("[I]t is unclear why such a broad category, which includes, for example, such apparently unrelated institutions as cooking schools, schools for fine arts, adult education courses given at the local high school, classes by TV and even training programs of private corporations—is First Jersey's relevant market."); *see also*

---

[5] *See* Trade Data Dissemination Service 2.1, at 8-1 (TDDS 2.1MOLD/UDP 64), FINRA (rev. May 10, 2022), *available at* https://www.finra.org/sites/default/files/2022-05/TDDS-2.1-MOLD.pdf. The Court may take judicial notice of this FINRA statement. *See Prodanova*, 2018 U.S. Dist. LEXIS 225334, at *11.

*Coniglio v. Highwood Servs., Inc.*, 495 F.2d 1286, 1292 (2d Cir. 1974) ("[W]e consider the purportedly relevant product market so broadly defined as to render that concept all but meaningless as an analytic tool for assessing the anti-competitive effect requisite to a Sherman Act violation.").

### C.  Plaintiff's State Law Claims Fail

The Court need not entertain Plaintiff's state law claims. There is no independent basis for jurisdiction over them here, where he names Defendant Rubenstein on each of them. Like Plaintiff, Defendant Rubenstein resides in Florida. *See* SAC at 2–3 ¶¶ 3, 7; *see also* Dkt. No. 50-2 at 1 ¶ 3 (Defendant Rubenstein's sworn statement as to Florida residency). Accordingly, diversity jurisdiction is lacking. The Court should also decline to exercise any supplemental jurisdiction here. *See* 28 U.S.C. § 1367(c). None of Plaintiff's state law claims presents any issue that is novel or complex. None of the state claims predominates over Plaintiff's federal claims. Each of them is premised on the same alleged "fraud" or alleged securities conduct as his federal claims. And, regardless, the federal claims should be dismissed on their merits. *See, e.g.*, *Beroid v. Lafleur*, App. No. 22-30489, 2023 U.S. App. LEXIS 9644, at *12–13 (5th Cir. Apr. 21, 2023) (per curiam) (holding that trial court did not abuse its discretion in dismissing state claims where federal claims were dismissed). As set forth below, Plaintiff has failed to state a claim in any event.

### 1.  Plaintiff's Negligence Claim Must Fail (Count III)

Plaintiff has made no effort to rehabilitate his flawed negligence theory, and it must fail. At its core, he alleges that GTS and Mr. Rubenstein owed him a duty of reasonable care. As a market maker and its executive, they did not "owe investors an objective duty of care" and thus, "should not, as a general rule, be exposed to liability for negligence." *See Spicer v. Chi. Bd. Options Exch., Inc.*, Civ. No. 88-2139, 1990 U.S. Dist. LEXIS 14469, at *48–49 (N.D. Ill. Oct. 24, 1990), *aff'd on other grounds*, 977 F.2d 255 (7th Cir. 1992). Other market participants with

similarly attenuated relationships to retail investors similarly owe no duty to retail investors, like Plaintiff. *See Weatherly v. Pershing, LLC*, Civ. No. 14-366, 2015 U.S. Dist. LEXIS 197128, at *9–10 (N.D. Tex. June 23, 2015) (collecting cases).

### 2.    Plaintiff Cannot State a Claim for Aiding and Abetting Fraud (Count IV)

Plaintiff has no cause of action for aiding and abetting fraud. No such cause of action even exists. *See In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 782 (5th Cir. 2018) ("[N]o such claim exists in Texas."); *Hsi Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1097 (11th Cir. 2017) (stating that "no Florida court has explicitly recognized a cause of action for aiding and abetting fraud"); *Taylor v. Rothstein Kass & Co.*, Civ. No. 19-1594, 2020 U.S. Dist. LEXIS 17435, at *14 (N.D. Tex. Feb. 4, 2020) (collecting cases). Even if such a claim exists, it must be pleaded with particularity. *See Filler v. Hanvit Bank*, 156 F. App'x 413, 417 (2d Cir. 2005) (summary ord.). For that reason alone, Plaintiff's claims must be dismissed for the same reasons as his securities claim. *See supra* Section II(A)(4).

Plaintiff's aiding and abetting claim otherwise fails on the merits. He fails to plead "Brda's . . . fraud," i.e. the fraud that the GTS Defendants supposedly aided and abetted, with particularity, let alone identifies what the fraud supposedly was. *See* SAC at 13 ¶ 34. In any event, this kind of common law claim must fail where it merely repackages a deficient federal securities claim. *See Manela v. Gottlieb*, Civ. No. 91-5510, 1993 U.S. Dist. LEXIS 5588, at *2–3 (S.D.N.Y. Apr. 28, 1993) (dismissing common law claim where it was "no broader" than federal securities claim). Furthermore, Plaintiff's claim independently must fail because he pleads nothing to establish that any of the GTS Defendants had knowledge of any alleged fraud underlying the aiding and abetting claim. *See Hsi Chang*, 845 F.3d at 1097–98; *Kinnie Ma Individual Ret. Account v. Ascendant Capital, LLC*, Civ. No. 19-1050, 2021 U.S. Dist. LEXIS 269181, at *78 (W.D. Tex. Aug. 25, 2021).

### 3.    Plaintiff's Unjust Enrichment Claim Must Fail (Count V)

Just as the indirect, attenuated relationship, if any, between Plaintiff and the GTS Defendants precludes his negligence claim, so too does it preclude his unjust enrichment claim. *See Johnson v. Catamaran Health Solutions, LLC*, 687 F. App'x 825, 830 (11th Cir. 2017) (per curiam) (collecting cases, stating that "the benefit conferred on the defendant must be a *direct* benefit," and affirming dismissal of claims founded upon insurance underwriter's receipt of fees paid by policyholder to intermediary broker); *Energium Holding LLC v. Ascension MyHealth Urgent Care*, 2024 U.S. Dist. LEXIS 205013, at *35–36 (N.D. Tex. Nov. 12, 2024) (collecting cases applying Texas law); *Hyundai Motor Am. Corp. v. N. Am. Auto. Servs., Inc.*, Civ. No. 20-82102, 2021 U.S. Dist. LEXIS 99713, at *37–38 (S.D. Fla. May 26, 2021) (dismissing claims challenging car dealers' bonuses that were allegedly inflated by customers' challenged payments of car warranties).

Plaintiff's unjust enrichment claim must also be dismissed because Plaintiff fails to plead it with particularity under Rule 9(b). Indeed, it is predicated upon the same alleged "fraudulent MMTLP trading" as Plaintiff's securities claims, SAC at 14 ¶ 36, which must be pleaded with particularity and are not. *See supra* Section II(A)(4). As such, his unjust enrichment claim must also be pleaded with particularity and is not. *See Breckenridge Enters., Inc. v. Avio Alternatives, LLC*, Civ. No. 08-1782, 2009 U.S. Dist. LEXIS 44518, at *35 (N.D. Tex. May 27, 2009) (dismissing unjust enrichment theory on particularity grounds, and stating that "it would be nonsensical to allow what is essentially a fraud claim to evade the particularity requirements through pleading under an equitable, rather than legal, theory"); *see also, e.g.*, *MeTX, LLC v. Wal-Mart Stores Tex., LLC*, 62 F. Supp. 3d 569, 586–87 (E.D. Tex. 2014).

Further, to the extent Texas law applies, this claim should fail because the Texas Supreme Court has not recognized unjust enrichment as an independent cause of action. *See Morris v.*

*Charles Hilton Morris III LLC*, Civ. No. 22-152, 2022 U.S. Dist. LEXIS 251684, at *23 n.3 (W.D.

Tex. Nov. 2, 2022) (Griffin, J.) (noting state of the law), *rejected on other grounds by* 2023 U.S.

Dist. LEXIS 239250 (W.D. Tex. Jan. 6, 2023) (Counts, J.); *see also Breckenridge*, 2009 U.S. Dist.

LEXIS 44518, at *34.

### III.     Plaintiff Should Have No Further Opportunity to Amend

The Court should not provide Plaintiff with any further opportunity to amend.  Upon a

motion to dismiss, leave is appropriately denied to pro se litigants where they have already pleaded

their "best case," *Pitts v. Waffle House, Inc.*, App. No. 23-60436, 2024 U.S. App. LEXIS 10630, at

*6–7 (5th Cir. May 1, 2024) (per curiam) (quotation marks omitted), and have not identified any

available material that they would add to cure the deficiencies in the pleading.  *See Goldsmith v.*

*Hood Cty. Jail*, 299 F. App'x 422, 423 (5th Cir. 2008) (per curiam).  This result is warranted here.

Plaintiff has not disguised his need to fix glaring deficiencies in his pleading.  *See* SAC at 2 ¶ 2;

*see also* Dkt. No. 58 at 4, 10–11 (speaking of need to allege "plausible [complaint] that mitigates

futility concerns").  Unable to cure those deficiencies, however, he opted to plainly contradict his

prior sworn allegations and, as such, withdraw them from the case.  This was not inadvertent.  After

all, Plaintiff similarly derogated from other sworn papers in this case in a misguided attempt to

establish that the GTS Defendants were properly served.  *See supra* Section I.  Plaintiff's new,

implausible claims fail as well.  *See supra* Section II.  Given these futility issues and Plaintiff's

gamesmanship, Plaintiff should not be given any further opportunity to plead his claims.  *See*

*Vaughn v. Harris Cty. Hosp. Dist.*, Civ. No. 17-2749, 2021 U.S. Dist. LEXIS 257008, at *13–14

(S.D. Tex. Dec. 16, 2021) (collecting cases), *adopted by* 2022 U.S. Dist. LEXIS 72247 (S.D. Tex.

Apr. 20, 2022), *aff'd*, App. No. 22-20659, 2023 U.S. App. LEXIS 33124 (5th Cir. Dec. 14, 2023).

Not only has he pleaded his "best case" already, *Pitts*, 2024 U.S. App. LEXIS 10630, at *6–7, he has pleaded every case imaginable.

## **CONCLUSION**

For the foregoing reasons, the GTS Defendants respectfully request the entry of an Order dismissing the Second Amended Complaint with prejudice and providing the GTS Defendants with any further relief that the Court deems just and proper.

June 26, 2025                                           Respectfully submitted,

**MURPHY BALL STRATTON LLP**

 */s/ Land Murphy*
Garland "Land" Murphy (TXBN 24058010)
1001 Fannin Street, Suite 720
Houston, Texas 77002
Telephone: (281) 658-9060
lmurphy@mbssmartlaw.com

**WILLIAMS BARBER & MOREL LTD.**

Christopher Barber (ILBN 6192190)
Stephen Fraser (ILBN 6327928)
233 South Wacker Drive, Suite 6800
Chicago, Illinois 60606
Telephone: (312) 443-3200
cjb@williamsbarbermorel.com
saf@williamsbarbermorel.com

**COUNSEL FOR DEFENDANTS GTS
SECURITIES LLC AND ARI
RUBENSTEIN**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 26, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

**Contique Willcot**
6940 SW 10th Court
Pembroke Pines, Florida 33023
contiq9@yahoo.com
*Pro Se Plaintiff*

**Melinda Hardy**
**Eric Aaron Reicher**
U.S. SECURITIES & EXCHANGE COMMISSION
100 F Street, NE
Washington, D.C. 20549
hardym@sec.gov
reichere@sec.gov

**Jason J. Rose**
U.S. SECURITIES & EXCHANGE COMMISSION
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
rosej@sec.gov

*Attorneys for Defendant U.S. Securities & Exchange Commission*

**Judson Paul Manning**
FIELD MANNING STONE AYCOCK P.C.
2112 Indiana Ave.
Lubbock, Texas 79410
jpmanning@lubbocklawfirm.com
*Attorneys for Defendant Next Bridge Hydrocarbons, Inc.*

**Jason M. Hopkins**
**Jason S. Lewis**
**Ryan D. Lantry**
DLA PIPER LLP US
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
jason.hopkins@us.dlpiper.com
jason.lewis@us.dlapiper.com
ryan.lantry@us.dlapiper.com
*Attorneys for Defendants John Brda and Gregory McCabe*

                                        /s/ Land Murphy
                                        Land Murphy