# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| CONTIQUE WILLCOT, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | |
| | § | Case No. 7:24-CV-317-DC-RCG |
| SECURITIES & EXCHANGE | § | |
| COMMISSION, GTS SECURITIES LLC, | § | |
| ARI RUBINSTEIN, NEXT BRIDGE | § | |
| HYDROCARBONS, INC., JOHN BRDA, | § | |
| GREGORY MCCABE, FINANCIAL | § | |
| INDUSTRY REGULATORY AUTHORITY, | § | |
| | § | |
| *Defendants*. | § | |

## MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

RELEVANT FACTS AND ALLEGATIONS ............................................................... 2

LEGAL STANDARDS ................................................................................................. 4

I.     Rule 12(b)(6) Standard ....................................................................................... 4

II.    Rule 9(b) Standard .............................................................................................. 4

III.   The PSLRA Standard .......................................................................................... 5

ARGUMENTS & AUTHORITIES ............................................................................... 5

I.     Plaintiff Lacks Statutory Standing. .................................................................... 6

II.    Plaintiff Fails to State A Section 10(b) or Rule 10b-5 Claim (Count I). ........... 7

      A.    Plaintiff Fails to Allege That He Purchased or Sold MMTLP Shares. ................... 7

      B.    Plaintiff Fails to Allege Scienter as to Brda or McCabe. ........................ 8

      C.    Plaintiff Does Not Adequately Allege Loss Causation. ......................... 9

III.   Plaintiff's Derivative And Secondary Claims Fail. ......................................... 10

      A.    Plaintiff Fails to State A Claim for the Sherman Act or Clayton Act (Count II). 10

      B.    Plaintiff Fails to State a Claim For Negligence (Count III). ................... 14

      C.    Plaintiff Fails to state a Claim for Unjust Enrichment (Count V). ....... 15

CONCLUSION ............................................................................................................ 16

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Abrams v. Baker Hughes, Inc.*,
  292 F.3d 424 (5th Cir. 2002) ...................................................................14

*Alaska Elec. Pension Fund v. Flotek Indus., Inc.*,
  915 F.3d 975 (5th Cir. 2019) ....................................................................8

*Amorosa v. AOL Time Warner Inc.*,
  409 F. App'x 412 (2d Cir. 2011) ...............................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................4, 11

*Breckenridge Enters., Inc. v. Avio Alternatives, LLC*,
  2009 WL 1469808 (N.D. Tex. May 27, 2009) .........................................15

*Camp v. Qualcomm Inc.*,
  2020 WL 1157192 (S.D. Cal. Mar. 10, 2020) .........................................10

*Coniglio v. Highwood Servs., Inc.*,
  495 F.2d 1286 (2d Cir. 1974)...................................................................13

*Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc.*,
  159 F.3d 129 (3d Cir.1998)......................................................................12

*Dawes v. Imperial Sugar Co.*,
  975 F. Supp. 2d 666 (S.D. Tex. 2013) ......................................................9

*Denicus v. Bosacker*,
  2021 WL 2715978 (W.D. Tex. Jan. 26, 2021) .........................................15

*Dorsey v. Portfolio Equities, Inc.*,
  540 F.3d 333 (5th Cir. 2008) ....................................................................4

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)..............................................................................9, 10

*Egervary v. Young*,
  366 F.3d 238 (3d Cir. 2004)....................................................................10

*In re Enron Corp. Secs., Deriv. & ERISA Litig.*,
 284 F.Supp.2d 511 (S.D. Tex. 2003) ...................................................................14

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
 238 F. Supp. 3d 799 (S.D. Tex. 2017) ...................................................................6

*Ernst & Ernst v. Hochfelder*,
 425 U.S. 185 (1976) ...............................................................................................14

*FDIC v. Ernst & Young*,
 967 F.2d 166 (5th Cir.1992) ...................................................................................15

*Glover v. DeLuca*,
 2006 WL 2850448 (W.D. Pa. Sept. 29, 2006) .......................................................8

*Griffin v. GK Intelligent Sys., Inc.*,
 87 F.Supp.2d 684 (S.D. Tex. 1999) ........................................................................15

*Hancock v. Chicago Title Ins. Co.*,
 635 F. Supp. 2d 539 (N.D. Tex. 2009) ...................................................................15

*Hoffman v. AmericaHomeKey, Inc.*,
 23 F. Supp. 3d 734 (N.D. Tex. 2014) ......................................................................4

*Krim v. BancTexas Grp., Inc.*,
 989 F.2d 1435 (5th Cir. 1993) .................................................................................6

*Louisiana by and through Landry v. Bank of America, N.A.*
 2021 WL 1202062 (M.D. La. Mar. 30, 2021) .......................................................13

*Lucas v. Texas Industries, Inc.*,
 696 S.W.2d 372 (Tex. 1984).....................................................................................15

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
 751 F.3d 368 (5th Cir. 2014) ..................................................................................14

*Mary Kay, Inc. v. Dunlap*,
 2012 WL 2358082 (N.D. Tex. June 21, 2012) ......................................................11

*MeTX, LLC v. WalMart Stores Tex., LLC*,
 62 F. Supp. 3d 569 (E.D. Tex. 2014).......................................................................15

*N. Jersey Secretarial Sch., Inc. v. McKiernan*,
 713 F. Supp. 577 (S.D.N.Y. 1989) .........................................................................13

*Nathenson v. Zonagen Inc.*,
 267 F.3d 400 (5th Cir. 2001) .............................................................................5, 8

*New Orleans Ass'n of Cemetery Tour Guides & Co. v. New Orleans Archdiocesan Cemeteries*,
  56 F.4th 1026 (5th Cir. 2023) ...............................................................................................11

*Norris v. Hearst Trust*,
  500 F.3d 454 (5th Cir. 2007) ...................................................................................................2

*Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.*,
  369 F.3d 27 (2d Cir. 2004)........................................................................................................6

*Owens v. Jastrow*,
  789 F.3d 529 (5th Cir. 2015) ....................................................................................................9

*PepsiCo, Inc. v. Coca–Cola Co.*,
  315 F.3d 101 (2d Cir. 2002).....................................................................................................12

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*,
  9 F.4th 247 (5th Cir. 2021) .......................................................................................................2

*Praesel v. Johnson*,
  967 S.W.2d 391 (Tex. 1998).....................................................................................................15

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
  615 F.3d 412 (5th Cir. 2010) .............................................................................................12, 13

*R2 Investments LDC v. Phillips*,
  401 F.3d 638 (5th Cir. 2005) ....................................................................................................5

*Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*,
  786 F.Supp.2d 1190 (S.D. Tex. 2009) ....................................................................................12

*RX Sols., Inc. v. Caremark, L.L.C.*,
  2025 WL 360656 (S.D. Miss. Jan. 31, 2025), *app. filed*, App. No. 25-60084
  (5th Cir. Feb. 21, 2025)............................................................................................................11

*SEC v. Brda, et al.*,
  No. 4:24-cv-1048-SDJ, Doc. 61 (E.D. Tex. Mar. 19, 2025)....................................................1

*SEC v. Digital Licensing Inc.*,
  2024 WL 1157832 (D. Utah Mar. 18, 2024) .............................................................................1

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
  365 F.3d 353 (5th Cir. 2004) .................................................................................................5, 7

*Targgart v. Next Bridge Hydrocarbons, Inc.*,
  ---- F.Supp.3d ----, 2025 WL 1831590 (N.D. Tex. July 3, 2025).............................................6

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001)............................................................................................11

*Traudt v. Rubenstein*,
   2025 WL 1795825 (D. Vt. June 30, 2025) ...................................................................8

*Williams v. WMX Techs., Inc.*,
   112 F.3d 175 (5th Cir. 1997) .........................................................................................7

## Statutes & Other Authorities

15 U.S.C. § 78.................................................................................................... *passim*

Fed. R. Civ. P. 9(b) ........................................................................................... *passim*

Tex. R. Civ. P. 12(b)(6) ............................................................................................4

Defendants John Brda and Gregory McCabe file this Motion to Dismiss the Second Amended Complaint of Plaintiff Contique Willcott (Doc. 73 ("SAC")) for failure to state claims upon which relief can be granted, and they respectfully state as follows:

## INTRODUCTION

Mr. Brda and Mr. McCabe share Plaintiff's frustration with the unprecedented U3 trading halt implemented by FINRA without any legal authority to stop legitimate trading of preferred shares of Meta Materials, Inc. (*i.e.*, MMTLP). They agree with Plaintiff that "FINRA's opaque U3 halt, citing 'settlement uncertainty' without transparent justification, . . . lock[ed] Plaintiff and 65,000 investors [such as Messrs. Brda and McCabe] out of a short squeeze." SAC ¶ 17. And, despite Brda's repeated disclosures of the non-tradable intent of MMTLP, "FINRA made it possible and provided a vehicle for GTS's illegal MMTLP trading by approving outdated 2012 TRCH data without verifying its non-tradable intent, constituting bad faith and non-regulatory conduct unprotected by immunity." *Id.* ¶¶ 16–17. But neither Brda nor McCabe had any role at FINRA (or GTS), and neither of them is responsible for FINRA or GTS's inexplicable conduct.

Plaintiff has had three attempts at pleading a claim against Brda and McCabe. His current complaint is only 18 pages and contains less than 40 paragraphs of allegations (mostly about FINRA), but it includes virtually no substantive allegations as to Brda and McCabe, fails to plead facts sufficient to invoke the federal securities laws, and fails to state any cognizable claim.[1] The Court should put an end to Plaintiff's witch hunt against Brda and McCabe.

---

[1] The Second Amended Complaint attaches over a dozen exhibits, spanning 200 pages. The only exhibit with reference to Brda or McCabe is a 2024 SEC complaint against Brda and another co-defendant in that action. But the SEC's complaint is just unproven allegations and proof of nothing. *See SEC v. Digital Licensing Inc.*, 2024 WL 1157832, at *21 (D. Utah Mar. 18, 2024) ("That the Commission files a complaint does not conclusively prove, nor serve as evidence of, fraud or anything else. The contents of a complaint ordinarily are nothing more than unproven allegations."). Moreover, the SEC's position in its case is that it "solely alleges securities law violations that occurred before the June 28, 2021 Torchlight-Meta I merger." *See SEC v. Brda, et al.*, No. 4:24-cv-1048-SDJ, Doc. 61 at 14 (E.D. Tex. Mar. 19, 2025). Further, Plaintiff

## RELEVANT FACTS AND ALLEGATIONS

In June 2021, Torchlight Energy Resources, Inc. ("TRCH") merged with Metamaterial, Inc. resulting in Meta Materials, Inc. ("MMAT") and creating Series A Preferred shares ("MMTLP Shares"). SAC ¶ 15. Brda was TRCH's CEO up to its merger. *Id.* ¶ 9. In TRCH's public filings leading up to the merger, including TRCH's Definitive Proxy Statement, TRCH repeatedly disclosed that MMTLP Shares would not be registered, could not be listed or traded on any exchange, and would not be freely transferable; TRCH further explained that "[n]o market is expected to develop for the [Dividend] in the foreseeable future and holders of the [Dividend] may not be able to find a buyer and sell their shares if they desired to do so"; and TRCH even warned that "[f]urther dilution may occur . . . in connection with the [merger]." SAC ¶ 16 ("MMTLP, a Series A Preferred Share, was intended as a non-tradable placeholder for NBH's private shares, as confirmed by Brda's January 20, 2023, statement.").[2]

For reasons known only to FINRA and the SEC, the MMTLP Shares began trading on the OTC market on October 7, 2021 under the ticker MMLTP. SAC ¶ 17. GTS Securities LLC ("GTS") is alleged to be "the sole market maker" of MMTLP Shares and created synthetic shares

---

does not reference the exhibit with any level of specificity to give notice as to what Plaintiff is alleging. *See, e.g.*, ¶¶ 25–26, 31.

[2] TRCH, Definitive Proxy Statement (DEFM14A), at 48, 168 (May 7, 2021), *available at* https://www.sec.gov/Archives/edgar/data/1431959/000119312521154788/d117540ddefm14a.htm; *see also* TRCH, Agreement with Meta I (Form 8-K, Ex. 2.1) (Dec. 14, 2020) at 49 & D-5, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/1431959/000119983520000329/form-8k.htm; TRCH, Preliminary Proxy Statement (PREM14A) (Feb. 4, 2021), at 48, *available at* https://www.sec.gov/Archives/edgar/data/1431959/000119312521027524/d117540dprem14a.htm; TRCH, Preliminary Proxy Statement (PRER14A), at 50 (Mar. 23, 2021), *available at* https://www.sec.gov/Archives/edgar/data/1431959/000119312521090024/d117540dprer14a.htm; TRCH, Preliminary Proxy Statement (PRER14A), at 50 (Apr. 21, 2021), *available at* https://www.sec.gov/Archives/edgar/data/1431959/000119312521124753/d117540dprer14a.htm. The Court may judicially notice publicly-filed documents, including press releases and SEC filings. *See, e.g., Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (judicial notice of matters of public record); *see also Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 255 (5th Cir. 2021) (judicial notice of SEC filings).

that enabled naked short selling of MMTLP Shares. *Id.* Plaintiff alleges this "inflate[ed] prices during Plaintiff's purchases." *Id.* "Plaintiff held 26,100 MMTLP shares by December 2022." *Id.* ¶ 14; *see also id.* ¶ 1 ("holding 26,100 MMTLP shares").

Next Bridge Hydrocarbons, Inc. ("NBH") spun off from MMAT, resulting in NBH becoming a private company that is not publicly traded. *Id.* ¶¶ 8, 15. McCabe is now the CEO of NBH, but was not at the time of the exchange. *Id.* ¶ 10. The holders of MMTLP Shares were to receive a 1-for-1 share exchange of shares of NBH common shares on December 14, 2022. *Id.* ¶ 21. But on December 9, 2022, FINRA halted trading of MMTLP Shares, citing an "extraordinary event" code U3. *Id.* ¶¶ 17, 17.1. The abrupt trading halt and regulatory cancellation of MMTLP Shares without prior notice led to significant investor frustration. *Id.*

Many shareholders were unable to sell their positions before FINRA's unilateral halt and have since been unable to trade their MMTLP Shares. This included Plaintiff, who alleges that he "invested in TRCH and MMTLP, holding 26,100 MMTLP shares potentially valued at $65,250,000-$130,500,000, only to suffer catastrophic losses." *Id.* ¶ 1. But he fails to allege: (i) who, if anyone, he relied on to purchase or sell MMTLP Shares; (ii) what, if any, specific representations he personally relied on to purchase or sell MMTLP Shares; and (iii) when, if ever, that representation was communicated to him.

Without any level of specificity, Plaintiff alleges "[t]hese acts caused Plaintiff's losses of $65,250,000–$130,500,000, robbing him of the short squeeze opportunity." *Id.* ¶ 26. Bizarrely, Plaintiff is complaining that he lost the opportunity to participate in a so-called short squeeze—the very kind of manipulative trading conduct that he accuses a defendant of engaging in. *See id.* ¶ 20.

## LEGAL STANDARDS

### I.    RULE 12(B)(6) STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts must identify and disregard any conclusory factual allegations, which are not entitled to a presumption of truth.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A claim is plausible only if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  If the alleged facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679.

### II.    RULE 9(B) STANDARD

The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).  "Put simply, Rule 9(b) requires the complaint to set forth 'the who, what, when, where, and how' of the events at issue." *Id.* (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).  "In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." *Hoffman v.*

*AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 745 (N.D. Tex. 2014) (quoting *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006)).

## III.    THE PSLRA STANDARD

The PSLRA enhances the "particularity" requirement for pleading securities fraud under Rule 9(b) by requiring that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1); *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 364 (5th Cir. 2004) (discussing "PSLRA's specific requirement that the untrue statements or omissions be set forth with particularity as to 'the defendant'").   "The effect of the PSLRA in this respect is to, *at a minimum*, incorporate the standard for pleading fraud under FED. R. CIV. P. 9(b)."  *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 412 (5th Cir. 2001) (emphasis in original).

The PSLRA also requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with" scienter.  *See* 15 U.S.C. § 78u-4(b)(2)(A).  Scienter is "an intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it."  *R2 Investments LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005).

## ARGUMENTS & AUTHORITIES

Even with all doubts resolved in favor of a *pro se* plaintiff, the federal securities claims against Brda and McCabe should be dismissed for two reasons.  *First*, Plaintiff fails to establish statutory standing for his securities claims.  *Second*, Plaintiff fails to plead cognizable securities

claims under the heightened standards of Rule 9(b) and the PSLRA.  Plaintiff's tagalong state-law claims also fail to meet basic pleading standards and should be dismissed.

## I.    PLAINTIFF LACKS STATUTORY STANDING.

Plaintiff lacks standing to assert securities law claims because Plaintiff did not transact in any securities.  "It is well established that mere retention of securities in reliance on material misrepresentations or omissions does not form the basis for a § 10(b) or Rule 10b–5 claim."  *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1443 n.7 (5th Cir. 1993); *see also Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.*, 369 F.3d 27, 34 (2d Cir. 2004); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 238 F. Supp. 3d 799, 901 (S.D. Tex. 2017) ("the Supreme Court rejected recognition of holder claims under the federal securities laws because they are speculative and difficult to prove").

Plaintiff pleads himself headlong into these authorities by speculatively alleging that he is "holding 26,100 MMTLP shares potentially valued at $65,250,000-$130,500,000."  SAC ¶ 1; *see also* ¶ 14 ("Plaintiff held . . ..").[3]  Because Plaintiff fails to allege the purchase or sale of MMTLP Shares as a result of any alleged conduct on the part of Brda or McCabe, he fails to establish the predicate for statutory standing.  *See Targgart v. Next Bridge Hydrocarbons, Inc.*, --- F.Supp.3d ----, 2025 WL 1831590, at *4 (N.D. Tex. July 3, 2025) ("receiving shares in a distribution does not confer standing"; dismissing Securities Act of 1933 claims against Brda and McCabe with prejudice for allegations that "Defendants made false or misleading statements leading up to the

---

[3] Plaintiff notes there were potential sale orders cancelled without execution as a result of FINRA's halt. *See id.* ¶ 26 (Plaintiff describing "potential sales at $100,000-$200,000 per share, as shown by E*Trade sell orders and market offers").  But an intent to execute trades does not meet the threshold of a purchase or a sale. *See Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 417 (2d Cir. 2011) (holding "mere holders of securities that did not purchase or sell stock resulting from the defendants' conduct failed to satisfy the standing requirement for Section 10(b) suits").

spinoff of Next Bridge from Meta Materials, Inc."). The Court should dismiss Plaintiff's securities claims.

## II.    PLAINTIFF FAILS TO STATE A SECTION 10(B) OR RULE 10B-5 CLAIM (COUNT I).

Plaintiff's securities law claims should also be dismissed because he fails to allege facts to support them. "To state a securities-fraud claim under section 10(b), and Rule 10b–5, plaintiffs must plead (1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which the plaintiffs relied; and (5) that proximately caused the plaintiffs' injuries." *Southland*, 365 F.3d at 362. Importantly, securities law claims apply only "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b) (Exchange Act §10(b)). The SAC fails to meet that standard because it alleges no (i) materially misleading statements or omissions by Brda and McCabe in connection with Plaintiff's purchase or sale of MMTLP Shares; (ii) facts sufficient to support a finding of scienter as to Brda and McCabe; and (iii) loss causation.

### A.    *Plaintiff Fails to Allege That He Purchased or Sold MMTLP Shares.*

Plaintiff's securities claims fail because he alleges no purchase or sale of securities, much less any false statement or omission made by Brda or McCabe in connection with any such purchase or sale. Plaintiff's generalized complaints of "misrepresentations" by Brda or McCabe are not tied to any purchase or sale of any security. He makes the legal conclusion that "Brda, and McCabe's misrepresentations regarding TRCH's asset valuations and MMTLP's purpose, induc[ed] investor reliance." SAC ¶ 26.1.[4] But Plaintiff fails to allege any connection between

---

[4] *See also id.* at ¶ 28.1 ("Brda's misrepresentations in the 2020-2021 ATM Offering. . ..").  Even if these broad and conclusory allegations were tied to the purchase or sale of securities—and they are not—they are insufficient under Fifth Circuit law because the paraphrased "excerpts, standing alone, cannot satisfy the 'who, what, when, where, and how' required by Rule 9(b)," especially where "the excerpts do not quote a defendant" or when they "paraphrase previous statements." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179–80 (5th Cir. 1997) ("This lack of specificity stands in contrast to the widespread nature of the conspiracy that [plaintiffs] attempt to allege.").

his purchase or sales of MMTLP Shares and his reliance on those portrayals. Whether because he fails to plead statutory standing or because he fails to invoke the federal securities laws, Plaintiff's failure to plead any connection to the purchase or sale of securities is fatal to his claims.

        B.     *Plaintiff Fails to Allege Scienter as to Brda or McCabe.*

Plaintiff seeks to assert fraud claims, but he fails to plead the requisite fraudulent intent. Plaintiff's claims require particularized facts demonstrating that Brda and McCabe acted with "a mental state embracing intent to deceive, manipulate, or defraud." *Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 981 (5th Cir. 2019). "To withstand a motion to dismiss, an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 982.

Apart from Plaintiff's insufficient, conclusory snippets (*e.g.*, "misrepresentations" and "scheme to manipulate"), the Second Amended Complaint contains few factual allegations about Brda or McCabe at all. In the isolated instances where Plaintiff attempts to plead something as to them, he does not identify any level of specificity. *See* SAC ¶ 26 ("NBH, Brda, and McCabe's misrepresentations regarding TRCH's asset valuations and MMTLP's purpose, inducing investor reliance"). But "a plaintiff alleging a section 10(b)/Rule 10b–5 claim must now plead specific facts giving rise to a strong inference of scienter." *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 407 (5th Cir.2001). And to the extent that Plaintiff is relying on the SEC complaint that he attached as an exhibit, but did not attempt to tie to his allegations, courts routinely "decline[] to accept as evidence of scienter an allegation made in a separate lawsuit in another forum." *Glover v. DeLuca*, 2006 WL 2850448, at *23 (W.D. Pa. Sept. 29, 2006); *Traudt v. Rubenstein*, 2025 WL 1795825, at *7 n.5 (D. Vt. June 30, 2025) (rejecting reference to "separate lawsuit"). This falls well short of creating a "strong inference of scienter" as to Brda and McCabe.

Moreover, the Fifth Circuit does not permit group pleading in securities fraud suits. *See Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015) (citing *Southland*, 365 F.3d at 365 ("[T]he PSLRA requires the plaintiffs to distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud . . . [W]e do not construe allegations contained in the [second amended complaint] against 'defendants' as a group as properly imputable to any particular defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded.")); *see also Shaw Grp., Inc.*, 537 F.3d at 538–39 (noting that "general allegations and conclusory statements," including statements such as "defendants knew adverse material do not contribute to a strong inference of scienter.").

Finally, the conduct that Plaintiff complains of is wholly independent of Brda and McCabe: (i) "GTS and Rubenstein's unauthorized trading and naked short selling," *id.* ¶ 25; (ii) "FINRA's approval of outdated 2012 TRCH data as a vehicle for fraud," *id.*; and (iii) "FINRA's opaque U3 trading halt." *Id.* ¶ 1. In short, Plaintiff alleges that "FINRA made it possible and provided a vehicle for GTS's illegal MMTLP trading by approving outdated 2012 TRCH data without verifying its non-tradable intent." *Id.* ¶ 17.

Absent an allegation of scienter on the part of Brda and McCabe, backed by particularized facts that satisfy Rule 9(b), Plaintiff's securities fraud claim against them cannot stand as pled. *See Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666, 700 (S.D. Tex. 2013) (dismissing securities fraud claim for failure to allege scienter).

C.    *Plaintiff Does Not Adequately Allege Loss Causation.*

Plaintiff's claims should be dismissed because he fails to plead loss causation, or "a causal connection between the material misrepresentation and the loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005); 15 U.S.C. § 78u–4(b)(4). *Dura* made clear there must be sufficient

allegations that the misrepresentations *caused* the plaintiff's loss; it is insufficient to simply allege the misrepresentation "touches upon a later economic loss."  544 U.S. at 343.

Plaintiff alleges he is "holding 26,100 MMTLP shares potentially valued at $65,250,000-$130,500,000, only to suffer catastrophic losses" and that "as evidenced by E*Trade sell orders and market offers at $100,000-$200,000 per share [], represent a $65,250,000-$130,500,000 loss due to a manipulated market and U3 halt."  SAC ¶¶ 1, 14.  But Plaintiff fails to connect these alleged losses (which aren't losses at all, but rather unrealized gains) to Brda's and McCabe's alleged misrepresentations.  That connection does not exist:  it was FINRA's halt, not any statement from Brda or McCabe, that resulted in the cancellation of Plaintiff's sell orders.  *See* SAC ¶ 17.1 ("The significant market value of MMTLP shares, blocked by FINRA's U3 halt on December 9, 2022, is evidenced by executed orders marked 'Too Late to Cancel' at extraordinarily high prices").  This "intervening act of [FINRA], which actively operates to produce harm after the [other defendants' alleged] wrongful act . . . , is a superseding cause which prevents the [non-FINRA defendants] from being liable."  *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004); *see also Camp v. Qualcomm Inc.*, 2020 WL 1157192, at *7 (S.D. Cal. Mar. 10, 2020) (granting motion to dismiss claims based upon stock drop that was "connected to the President's order rather than a misrepresentation by Qualcomm").

For any or all of the foregoing reasons, Plaintiff's securities claims should be dismissed.

## III.    PLAINTIFF'S DERIVATIVE AND SECONDARY CLAIMS FAIL.

### A.    *Plaintiff Fails to State A Claim for the Sherman Act or Clayton Act (Count II).*

Plaintiff appears to allege violations of the Sherman Act §§ 1–2 and the Clayton Act §§ 4, 7.  *See* SAC ¶¶ 27–28.1.  Plaintiff's antitrust theories are similarly implausible and fail on multiple independent bases.  Plaintiff does not plausibly allege the existence of any agreement to support his theory:  "collu[sion]."  SAC ¶ 28.  His own allegations are inconsistent with the existence of

any agreement between the named defendants. *See id.* ¶ 16 (alleging disagreement between NBH and Brda on the one hand and FINRA and GTS on the other, as to whether MMTLP would even trade at all). Elsewhere, his claims rely on nothing more than unilateral conduct, which does not evidence an agreement of any kind. *See id.* ¶ 28.1 (referencing "[G]TS's exclusive MMTLP trading"); ¶ 17 ("FINRA made it possible"). And to the extent Plaintiff alleges anything relevant, it is nothing more than the very buzzwords, "labels and conclusions, and . . . formulaic recitation" of elements of an antitrust cause of action that *Twombly*, itself a Sherman Act case, specifically rejected. *See Twombly*, 550 U.S. at 555.

Beyond its contradictory allegations, Plaintiff's claims would fail on numerous independent grounds.

*First*, the named defendants for this claim include a market maker, the issuer, and their executives, which are all on different levels of the distribution chain. As such, Plaintiff seemingly is relying on vertical, not horizontal, conduct. *See New Orleans Ass'n of Cemetery Tour Guides & Co. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1035–36 (5th Cir. 2023). Thus, Plaintiff must allege a cognizable product and geographic market and plead why the market is so defined. *See Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001); *see, e.g.*, *RX Sols., Inc. v. Caremark, L.L.C.*, 2025 WL 360656, at *5 (S.D. Miss. Jan. 31, 2025) (collecting cases; dismissing where "the Amended Complaint does not attempt to plead why the market is limited to the 'prescription medication market'"), *app. filed*, App. No. 25-60084 (5th Cir. Feb. 21, 2025); *Mary Kay, Inc. v. Dunlap*, 2012 WL 2358082, at *6 (N.D. Tex. June 21, 2012) (dismissing where plaintiff did not include sufficient "factual allegations concerning the relevant product and geographical markets to assess whether it is plausible that Mary Kay's non-compete clause adversely affects competition"). Plaintiff makes no effort to support his "U.S. OTC energy

securities market, defined as securities traded on OOTC/OTCBB platforms." *See* SAC ¶ 28.  He
pleads no facts to support that such a market is plausible under the antitrust laws.

*Second*, Plaintiff's pleading would still fail because he fails to allege that Defendants had
sufficient control over that market.  As such, he must plausibly allege market power, at a minimum.
*See PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418–19 (5th Cir. 2010).  He
could attempt to do so directly, but he alleges nothing in these regards.  Indeed, contrary to his
definition of the relevant market as "the U.S. OTC energy securities market," SAC ¶ 28.1, Plaintiff
does not muster anything suggesting that the Defendants operated to affect any securities other
than MMTLP.  He says nothing, for example, about any conduct affecting MMTLP's "peers,"
such as "Abraxas Petroleum," *see id.*, let alone any of the other innumerable securities within his
market definition.  Nor does he provide any plausible estimate of the market share that any of the
defendants holds in this market, let alone one meeting any threshold to survive a motion to dismiss.
*See, e.g., Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 786 F.Supp.2d 1190,
1197 (S.D. Tex. 2009) ("Without understanding the duration of Defendants' market power or its
dominance of HSC natural gas sales as opposed to ICE natural gas sales, it is unclear whether
Plaintiff has provided sufficient evidence to suggest that Defendants had monopoly power in the
relevant market over the class period. Without more, Plaintiff has failed to state a claim.");
*Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc.*, 159 F.3d 129, 141 (3d
Cir.1998) (holding that the plaintiff had failed to state a claim when it failed to allege facts such
as the defendant's market share in the relevant market and the barriers to the plaintiff's entry into
the market); *see also PepsiCo, Inc. v. Coca–Cola Co.*, 315 F.3d 101, 107 (2d Cir. 2002) (holding
that the plaintiff had failed to provide sufficient evidence of market power where the defendant
had only a 64 percent market share);.  This is a tall order where Plaintiff alleges that two of the

defendants, NBH and Brda, did not intend to participate in MMTLP at all, SAC ¶ 16, and makes no effort to allege participation of any other defendants in any securities other than MMTLP, such as Abraxas Petroleum. *See id.* ¶ 28.1.

*Third*, Plaintiff's allegations are facially implausible in any event under applicable law. There are innumerable securities falling within his definition, whether involving biomass, coal, natural gas, nuclear, oil, solar, thermal, water, wind, and other energy forms. Plaintiff's market also is not limited geographically, as "OOTC" securities include "domestic and foreign equity securities, warrants, units, American Depositary Receipts (ADRs), and Direct Participation Programs (DPPs)."[5] And, Plaintiff's market definition, on its face, draws in market participants at every level of the market, from issuers to retail brokers, market makers, regulators, and everyone in between. At the motion to dismiss stage, courts need not and do not entertain such facially overbroad and implausible market definitions. *E.g.*, *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418 (5th Cir. 2010) (affirming dismissal where it was "impossible to imagine that Leegin could have power over" defined market of "women's accessories"); *N. Jersey Secretarial Sch., Inc. v. McKiernan*, 713 F. Supp. 577 (S.D.N.Y. 1989) ("[I]t is unclear why such a broad category, which includes, for example, such apparently unrelated institutions as cooking schools, schools for fine arts, adult education courses given at the local high school, classes by TV and even training programs of private corporations—is First Jersey's relevant market."); *see also Coniglio v. Highwood Servs., Inc.*, 495 F.2d 1286, 1292 (2d Cir. 1974) ("[W]e consider the purportedly relevant product market so broadly defined as to render that concept all but

---

[5] *See* Trade Data Dissemination Service 2.1, at 8-1 (TDDS 2.1MOLD/UDP 64), FINRA (rev. May 10, 2022), *available at* https://www.finra.org/sites/default/files/2022-05/TDDS-2.1-MOLD.pdf. The Court may take judicial notice of FINRA's public statement. *See Louisiana by and through Landry v. Bank of America*, N.A., 2021 WL 1202062, at *9 n.120 & n.122 (M.D. La. Mar. 30, 2021) (collecting cases).

meaningless as an analytic tool for assessing the anti-competitive effect requisite to a Sherman Act violation.").

For any of the above reasons, Plaintiff's anti-trust claim is not cognizable and must be dismissed. *See Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n,* 751 F.3d 368 (5th Cir. 2014) (affirming dismissal of Sherman Act claim on motion to dismiss; affirming district court's denial of leave to amend).

        B.       *Plaintiff Fails to State a Claim For Negligence (Count III).*

Plaintiff broadly and in conclusory fashion alleges that Brda and McCabe "owed Plaintiff a duty to . . . act with reasonable care in securities transactions," that Brda and McCabe breached these duties by "misrepresent[ing] TRCH and NBH's asset valuations," which "proximately caused Plaintiff's losses of $65,250,000-$130,500,000." SAC ¶¶ 30–32. This is the same underlying allegation of Plaintiff's Section 10(b) claim. *See* SAC ¶ 26. "In other words, if it looks like a securities fraud claim, sounds like a securities fraud claim and acts like a securities fraud claim, it is a securities fraud claim, no matter how you dress it up." *In re Enron Corp. Secs., Deriv. & ERISA Litig.*, 284 F.Supp.2d 511, 642–43 (S.D. Tex. 2003). Thus, dismissal is warranted for the reasons set forth above. *See supra* Sections I, II.

Likewise, the Supreme Court has long foreclosed any negligence-based theory for a Section 10(b) claim. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 214 (1976). The Court should reject Plaintiff's negligence-based claims because negligent acts cannot be the basis of Section 10(b) violations. *See Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 433 (5th Cir. 2002) (stating that the nature of accounting problems that lead to restatement could "easily arise from negligence, oversight or simple mismanagement, none of which rise to the standard necessary to support a securities fraud action").

In addition, under Texas law, the essential elements of a negligence claim are: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) damages proximately caused by the breach. *FDIC v. Ernst & Young*, 967 F.2d 166, 170 (5th Cir.1992); *Lucas v. Texas Industries, Inc.*, 696 S.W.2d 372, 376 (Tex. 1984). In order to prevail on a claim for negligence, a plaintiff must demonstrate the defendant owed her a duty of care. *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998). Dismissal is warranted where, as here, "Plaintiff[] do[es] not allege that Defendants owed [him] a specific legal duty under Texas law." *Griffin v. GK Intelligent Sys., Inc.*, 87 F.Supp.2d 684, 690 (S.D. Tex. 1999).

> C.    *Plaintiff Fails to state a Claim for Unjust Enrichment (Count V).*

Plaintiff's claim for unjust enrichment is predicated upon alleged "fraudulent MMTLP trading" as Plaintiff's securities claims. SAC ¶ 36. Dismissal is warranted because Plaintiff's lack of statutory standing and failure to meet the heightened pleading standards under FRCP 9(b) and the PSLRA for the reasons set forth above. In addition, Plaintiff improperly lumps all Defendants together. *See id.* As such, his unjust enrichment claim must also be pleaded with particularity and is not. *See Breckenridge Enters., Inc. v. Avio Alternatives, LLC*, 2009 WL 1469808, at *10 (N.D. Tex. May 27, 2009) (dismissing unjust enrichment theory on particularity grounds, and stating that "it would be nonsensical to allow what is essentially a fraud claim to evade the particularity requirements through pleading under an equitable, rather than legal, theory"); *see also MeTX, LLC v. WalMart Stores Tex., LLC*, 62 F. Supp. 3d 569, 586–87 (E.D. Tex. 2014).

Further, dismissal is independently warranted because Texas does not specifically recognize unjust enrichment as an independent cause of action, and should therefore be dismissed. *See Denicus v. Bosacker*, 2021 WL 2715978, at *8 (W.D. Tex. Jan. 26, 2021); *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 561 (N.D. Tex. 2009).

## <u>CONCLUSION</u>

Defendants Brda and McCabe respectfully request that this Court dismiss Plaintiff's Second Amended Complaint with prejudice for failure to state a claim for which relief can be granted, as well as grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Jason S. Lewis*

Jason S. Lewis
  Texas Bar No. 24007551
  jason.lewis@us.dlapiper.com
Jason M. Hopkins
  Texas Bar No. 24059969
  jason.hopkins@us.dlapiper.com
Ryan D. Lantry
  Texas Bar No. 24125130
  ryan.lantry@us.dlapiper.com
**DLA PIPER LLP**
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone:  214.743.4546
Facsimile:  214.743.4545

**ATTORNEYS FOR DEFENDANTS JOHN BRDA & GREGORY MCCABE**

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served the foregoing document on all counsel of record via the Court's CM/ECF system on July 14, 2025.

*/s/ Jason S. Lewis*
Jason S. Lewis