Case No. 7:24-cv-00317-DC-RCG   TEXAS MIDLAND/ODESSA DIVISION

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| CONTIQUE WILLCOT,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>SECURITIES AND EXCHANGE COMMISSION, ET AL.,<br><br>　　　　Defendant | Case No. 7:24-cv-00317-DC-RCG<br><br>**EXHIBIT A: PROPOSED SUPPLEMENTAL OPPOSITION TO DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

## I.   INTRODUCTION

Plaintiff Contique Willcot supplements his Opposition to FINRA's Motion to Dismiss (ECF 98) with newly discovered evidence from the SEC's filing in Rolo v. SEC (Case 3:24-cv-02053-VDO, ECF 71, July 28, 2025, excerpts attached as Exhibit C to Motion), exposing a contradiction between the SEC and FINRA on the MMTLP U3 halt's authority under Rule 6440 and potential need for a Rule 19b-4 filing.

## II.   SEC's Admissions of Communications and Awareness

The SEC acknowledges post-halt emails (Dec. 19-23, 2022) showing discussions with FINRA about the halt's harms (SEC Opp. pp. 2-3, footnotes 1-2), a draft response to Congress on investor complaints (p. 3), and a July 2021 whistleblower tip on TRCH/MMTLP fraud that was ignored (p. 3; ties to Plaintiff's SAC Exs. G, H, I on 2019 Davies tip and 246 complaints). This confirms SEC/FINRA awareness of harms from

EXHIBIT A: PROPOSED SUPPLEMENTAL OPPOSITION TO DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 1

Case No. 7:24-cv-00317-DC-RCG   TEXAS MIDLAND/ODESSA DIVISION

unauthorized trading, supporting Plaintiff's negligence claim (SAC ¶¶ 19-20) and ultra vires argument (opposition pp. 7, 17; ignored duties under 15 U.S.C. § 78o-3(b)(6)).

### III. SEC's Emphasis on Discretion

The SEC stresses its oversight is discretionary (§ 78s(c): "may" act if "necessary or appropriate"; pp. 5-8, footnotes 5-7), barring claims via sovereign immunity (Molchatsky v. U.S., 713 F.3d 159 (2d Cir. 2013)). This highlights FINRA's unchecked actions, exposing oversight failures and bolstering Plaintiff's declaratory relief (SAC ¶¶ 37-39) on halt's non-regulatory nature.

### IV. The SEC's Newly Discovered Statement Contradicts FINRA's Position, Proving Ultra Vires Conduct Either Way

The SEC's opposition in Rolo hypothetically concedes that FINRA may have lacked authority for the MMTLP halt under Rule 6440 without a Rule 19b-4 filing, stating: "Even if Plaintiff were correct that FINRA lacked authority to issue a trading suspension or that a Rule 19b-4 filing were necessary... it would be irrelevant to the Commission's sovereign immunity defense" (SEC Opp. p. 8). This directly contradicts FINRA's MTD claim that the halt was a "quintessential regulatory function" under existing Rule 6440, requiring no further filings and entitled to absolute immunity (FINRA MTD pp. 13-15).

- The SEC says, "Even if FINRA didn't follow the rules, it doesn't affect our immunity."

EXHIBIT A: PROPOSED SUPPLEMENTAL OPPOSITION TO DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 2

- FINRA says, "We followed the rules exactly, so we're immune too."

They can't both be right—either FINRA did go beyond their authority, or the SEC's claim that it doesn't matter undermines FINRA's defense.

This contradiction proves FINRA's guilt in one of two ways.

### Frame 1: Halt as "Rule Change" (SEC's Hypothetical Concession)

The SEC's exact words in their opposition create this frame by conceding the possibility that "FINRA lacked authority to issue a trading suspension or that a Rule 19b-4 filing were necessary prior to institution of the trading halt" (SEC Opp. p. 8). This contradicts FINRA's assertion that the halt was fully authorized under Rule 6440 as a routine regulatory action with no need for additional filings or approvals (FINRA MTD pp. 13-15, where FINRA describes the halt as "quintessential regulatory" and protected by absolute immunity without mentioning any potential for a 19b-4 requirement). Under this frame, if the halt altered Rule 6440's application to non-tradable MMTLP (creating "settlement uncertainty" from FINRA's errors), it required 19b-4 filing for SEC approval (17 C.F.R. § 240.19b-4). FINRA proceeded unilaterally, exceeding authority. This is ultra vires because FINRA is not empowered to change rules without filing; bad faith if ignored issuer intent ("not going to be traded," SAC ¶16, Ex. A). This pierces immunity (not regulatory if unauthorized). Supporting evidence and cases include: SEC Opp. p. 8; 17 C.F.R. § 240.19b-4 (requires filings for SRO rule changes); Sparta Surgical Corp. v. NASD, 159 F.3d 1209 (9th Cir. 1998) (affirming immunity for de-listing but noting no bad faith alleged; here, bad faith via ignored duties pierces it, as in D'Alessio).

EXHIBIT A: PROPOSED SUPPLEMENTAL OPPOSITION TO DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 3

The following 3 circumstances demonstrate where Frame 1 is not hypothetical, i.e., the halt was not quintessential but extraordinary, involved bad faith against the issuer's will, and used outdated data capriciously in violation of up-to-date standards:

1. Extraordinary Application to Non-Tradable Security: The halt was not a quintessential regulatory action but an extraordinary deviation because FINRA applied Rule 6440 to MMTLP, a security explicitly designated as non-tradable by the issuer (SAC ¶16, Ex. A: "The proxy clearly indicated [MMTLP] was not going to be traded"). This effectively altered the rule's scope without a 19b-4 filing, making Frame 1 actual—FINRA lacked authority for this unprecedented use, as it created "settlement uncertainty" from its own errors in approving trading (SAC Exs. B, C), violating the routine "extraordinary event" trigger and requiring SEC approval as a de facto rule change (17 C.F.R. § 240.19b-4).

2. Bad Faith Trading Against Issuer's Will: FINRA acted in bad faith by enabling trading of MMTLP against the issuer's explicit intent, using outdated 2012 TRCH data despite knowledge of its non-tradable status (SAC ¶17; opposition Ex. 9, D'Alessio v. NYSE: bad faith pierces immunity). This capricious disregard for issuer will transformed the halt into a non-routine cover-up of synthetic shares and FTDs (SAC Exs. S, U), necessitating a 19b-4 filing as it effectively changed Rule 6440's application—proving Frame 1 is not hypothetical but a real ultra vires overreach without proper authorization.

EXHIBIT A: PROPOSED SUPPLEMENTAL OPPOSITION TO DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 4

3. Capricious Use of Outdated Data Violating Up-to-Date Standards: FINRA's reliance on outdated data was capricious, as standard regulatory practice requires current information under SEC Rule 15c2-11 and FINRA Rule 6490 (opposition Exs. 11, full text emphasizing verification). By ignoring this "rule of using up-to-date information," the halt became an extraordinary, bad-faith action to cement harms from unauthorized trading (SAC ¶17.1, Ex. D: high-price orders blocked), requiring a 19b-4 filing as a rule alteration—thus confirming Frame 1 as actual, not hypothetical, and stripping immunity (Sparta Surgical Corp. v. NASD, 159 F.3d 1209: no immunity for capricious acts).

**Frame 2: Halt Under Existing Rule (FINRA's Claim)**

FINRA's exact words in their MTD create this frame by insisting the halt was authorized under existing Rule 6440 without any need for a 19b-4 filing, describing it as "regulatory in nature and protected from liability" (FINRA MTD pp. 13-15). This contradicts the SEC's hypothetical acknowledgment that such a filing might have been required if the halt lacked proper authority (SEC Opp. p. 8). Under this frame, if no 19b-4 needed (halt for "extraordinary event" under Rule 6440), FINRA still bypassed procedures like Rule 6490 (verify issuer intent, deficiency notices/appeals) and SEC Rules 10b-17/15c2-11 (timely notices/current info). This is ultra vires because it ignored mandatory safeguards under 15 U.S.C. § 78o-3(b)(6) (prevent fraud, protect investors); bad faith in falsifying FTDs (SAC Exs. S, U) and ignoring 2019 Davies tip (SAC ¶19, Ex. H; parallels Rolo's 2021 tip, SEC Opp. p. 3). Supporting evidence and cases include: FINRA Rule 6440 full

EXHIBIT A: PROPOSED SUPPLEMENTAL OPPOSITION TO DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 5

text (allows halts for "extraordinary event," but no event here—manipulated data); D'Alessio v. NYSE (immunity denied for bad-faith/non-regulatory acts); opposition Ex. 13 (Meta bankruptcy doc on manipulation).

### V.  CONCLUSION

In conclusion, both frames simplify the core contradictions: The SEC admits the halt might have required a 19b-4 filing if unauthorized, while FINRA insists it was fully covered under existing rules with no such need—either way, FINRA's actions bypassed safeguards, proving ultra vires overreach and bad faith that forfeits immunity. In the Rolo v. SEC case, under section II.B.2, the SEC posits a hypothetical concession: "Even if Plaintiff were correct that FINRA lacked authority to issue a trading suspension or that a Rule 19b-4 filing were necessary prior to institution of the trading halt, it would be irrelevant to the Commission's sovereign immunity defense." Although the SEC primarily seeks to bolster its own immunity defense, it inadvertently advances a secondary implication: that any rule violations by FINRA are solely attributable to FINRA and unrelated to the SEC. By doing so, the SEC implies potential wrongdoing on FINRA's part without offering any defense for them, effectively distancing itself from FINRA's actions. This is pertinent to the instant case, as Plaintiff contends that FINRA acted ultra vires in numerous respects and failed to consult with the SEC. Notably, FINRA does not contest this lack of consultation; instead, they reinforce their position by relying on Rule 6440.

EXHIBIT A: PROPOSED SUPPLEMENTAL OPPOSITION TO DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 6

Case No. 7:24-cv-00317-DC-RCG   TEXAS MIDLAND/ODESSA DIVISION

There are two potential scenarios, but each one demonstrates that FINRA engaged in misconduct. In the first scenario, the SEC indicates that FINRA may have needed to submit a Rule 19b-4 filing to obtain approval for the trading halt, which FINRA did not do, resulting in FINRA exceeding its authorized powers without proper permission. In the second scenario, FINRA maintains that no such filing was required because the halt fell under its existing Rule 6440, but even so, FINRA violated other critical regulatory procedures and investor protections. In either case, FINRA's conduct was ultra vires, carried out in bad faith, and therefore disqualifies it from immunity.

### VI.     Relief Requested

Deny FINRA's MTD; order jurisdictional discovery on FINRA's Texas ties (opposition p. 6); lift PSLRA stay for Blue Sheets (SAC ¶ 23); Any such other relief as the Court may deem just, equitable, and proper to ensure accountability for Defendants' misconduct and restore trust in U.S. financial markets..

DATED: July 30, 2025

/s/ Contique Willcot

Contique Willcot, Pro Se

6940 SW 10th Ct

Pembroke Pines, FL 33023

(954) 274-5173

contiq9@yahoo.com

EXHIBIT A: PROPOSED SUPPLEMENTAL OPPOSITION TO DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 7

Certificate of Service

I certify that on July 30, 2025, a true copy was served via CM/ECF to all counsel of record.

/s/ Contique Willcot

Contique Willcot

EXHIBIT A: PROPOSED SUPPLEMENTAL OPPOSITION TO DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 8