Case No. 7:24-cv-00317-DC-RCG   MIDLAND/ODESSA DIVISION

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS

MIDLAND/ODESSA DIVISION

| | |
|---|---|
| CONTIQUE WILLCOT,<br><br>          Plaintiff,<br><br>vs.<br><br>SECURITIES AND EXCHANGE COMMISSION et al.,<br><br>          Defendant. | CASE NO. 7:24-CV-00317-DC-RCG<br>PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SUPPLEMENTAL OPPOSITION TO DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO DISMISS |

Plaintiff Contique Willcot, proceeding *pro se*, respectfully submits this Reply in Support of his Motion for Leave to File Supplemental Opposition (ECF No. 105) to Defendant Financial Industry Regulatory Authority, Inc.'s ("FINRA") Motion to Dismiss (ECF No. 96). This Reply addresses FINRA's Opposition (ECF No. 106) and demonstrates that good cause exists under Federal Rules of Civil Procedure 6(b) and 15(d) to grant the Motion. Plaintiff acknowledges his duty to comply with applicable rules and appreciates the Court's guidance for *pro se* litigants, as outlined in the Western District of Texas Pro Se Handbook (the "Handbook"), which emphasizes fairness and diligence in presenting claims.

## I. INTRODUCTION

Plaintiff's Supplemental Opposition (ECF No. 105-1) addresses new evidence from the Securities and Exchange Commission's ("SEC") filing in *Rolo v. SEC*, Civil Action No. 3:24-cv-02053-VDO (D. Conn.) (ECF No. 105-3), which confirms that FINRA acted *ultra vires* and in bad faith in connection with the MMTLP trading halt. This evidence,

unavailable at the time of Plaintiff's original Opposition, pierces FINRA's absolute immunity defense by proving non-regulatory misconduct, as alleged in the Second Amended Complaint ("SAC") ¶¶ 17-19 and Exhibits S and U. The Supplemental Opposition is concise (seven pages), avoids repeating prior arguments, and adds critical analysis under *D'Alessio v. NYSE*, 258 F.3d 93 (2d Cir. 2001). FINRA's procedural objections lack merit, as explained below, and the Court must permit the filing in the interest of justice.

Section 19(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78s(b)) and SEC Rule 19b-4 (17 CFR § 240.19b-4) mandate that all FINRA rule changes, including policies or practices like the MMTLP U3 halt, be filed with the SEC for review and approval or permitted effectiveness. Unilateral actions bypassing this process are *ultra vires*, as they violate statutory requirements for SEC oversight to protect investors and maintain fair markets. FINRA attempts to dismiss Plaintiff's claims by characterizing the SEC's statement as a mere "hypothetical," arguing that "even if Plaintiff were correct that FINRA lacked authority to issue a trading suspension or that a Rule 19b-4 filing were necessary prior to institution of the trading halt, it would be irrelevant to the Commission's sovereign immunity defense." This is a sleight of hand. Far from mere "hypothetical," Plaintiff's claims are grounded in the ironclad reality of SEC Rule 19b-4 and a boatload of evidence, including SAC allegations that FINRA relied on outdated 2012 TRCH data (SAC ¶25(a), Exs. A, B, C), issued the U3 halt opaquely without issuer consent (SAC ¶17, Exs. S, U), and violated SEC Rule 10b-17 (ECF No. 105-1 at 4-5). No matter how FINRA spins a different narrative, it cannot evade the truth: its actions exceeded its delegated authority, rendering them *ultra vires* and subject to judicial

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SUPPLEMENTAL OPPOSITION TO DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO DISMISS - 2

scrutiny.

1. **Key Legal Provisions**

Securities Exchange Act of 1934, Section 15A (15 U.S.C. § 78o-3)

Relevant Text: Section 15A governs registered national securities associations, such as FINRA. It requires that an SRO's rules:

- Be designed to "enforce compliance with the provisions of this title [Exchange Act], the rules and regulations thereunder" (§ 78o-3(b)(2)).

- Be consistent with the public interest and the purposes of the Exchange Act (§ 78o-3(b)(6)).

- Not exceed the scope of authority delegated by the SEC or impose burdens on competition not necessary or appropriate under the Exchange Act (§ 78o-3(b)(9)).

Implication: FINRA's authority is explicitly tied to enforcing the Exchange Act and SEC rules. Any action disregarding SEC rules would exceed this statutory mandate, rendering it ultra vires. Similarly, FINRA's own rules, which must be approved by the SEC, bind FINRA to follow its own procedures, as deviations undermine the SEC's oversight and approval process.

2. **FINRA By-Laws and Rule-Making Process**

FINRA By-Laws, Article VI, Section 1 (Rule-Making Authority): FINRA's By-Laws state that its Board may adopt rules to carry out its purposes under the Exchange Act, but these rules must be submitted to the SEC for approval under Section 19 of the Exchange Act (15 U.S.C. § 78s).

Implication: FINRA's rules are subordinate to SEC approval, and disregarding its own

rules (e.g., by issuing guidance or taking enforcement actions outside approved procedures) violates the Exchange Act's requirement for SEC oversight, as seen in cases like Scottsdale Capital Advisors Corp. v. FINRA.

In Scottsdale, the plaintiffs argued that FINRA's issuance of internal guidance without following its own rule-making procedures or obtaining adequate SEC approval was ultra vires, as it effectively created unauthorized rules.

### 3. SEC Oversight and the Private Non-Delegation Doctrine

The Exchange Act mandates that FINRA's actions be subject to SEC review and approval (e.g., rule proposals under Section 19(b), enforcement actions appealable to the SEC under Section 19(d)). This ensures FINRA, as a private entity, does not exercise unchecked governmental power, per the private non-delegation doctrine.

In Alpine Securities Corp. v. FINRA, the D.C. Circuit emphasized that FINRA's actions must be subordinate to SEC review to remain constitutional. Disregarding SEC rules or its own procedures (e.g., bypassing required SEC review for enforcement actions) was deemed ultra vires because it violated the statutory requirement for governmental superintendence.

**Why No Single Rule Exists**

The prohibition on FINRA disregarding SEC or its own rules is not encapsulated in a single rule but is a fundamental principle of its delegated authority under the Exchange Act. FINRA's legal existence as an SRO depends on:

- Statutory Compliance: Section 15A requires FINRA to operate within the Exchange Act and SEC regulations.

- SEC Rule Approval: FINRA's rules (e.g., Rule 2010, Code of Procedure) are only valid upon SEC approval, and FINRA is bound to follow them as approved.

- Judicial Oversight: Courts can enjoin FINRA actions that exceed its authority, as seen in Alpine, where ignoring SEC review was ruled ultra vires.

Either FINRA completely disregarded the rules or they changed the rules. Either way, FINRA was engaged in ultra vires acts and that is what the SEC was indirectly alluding to (secondary to its own defense) when they made the "hypothetical" statement. This means that FINRA does not automatically have absolute immunity as they mistakenly argue.

As a *pro se* litigant, I have worked tirelessly to uncover and present clear and robust evidence exposing the misconduct of the Defendants, including FINRA's *ultra vires* actions in the securities markets. My SAC details FINRA's provision of a vehicle for fraud by approving outdated 2012 TRCH data without verifying its non-tradable intent, enabling unauthorized trading (SAC ¶17, Exs. A, B, C), its opaque issuance of the U3 halt without transparent justification in violation of SEC Rule 10b-17's notice requirement (SAC ¶17, Exs. S, U), and its potential data falsification as shown by the Threshold Security List reporting zero FTDs on December 12 despite previous high FTDs (SAC ¶17, Exs. S, U, V, W), amongst other violations. FINRA's claim that these arguments are a mere "hypothetical" irrelevant to immunity is a desperate deflection.

SEC Rule 19b-4 and Plaintiff's boatload of evidence—spanning hundreds of pages across

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILESUPPLEMENTAL OPPOSITION TO DEFENDANT FINANCIAL INDUSTRYREGULATORY AUTHORITY, INC.'S MOTION TO DISMISS - 5

the SAC and its exhibits—prove FINRA's actions were not regulatory but unauthorized, stripping away any immunity defense. No matter how FINRA spins a different narrative, it cannot escape the truth: its unilateral actions bypassed mandatory SEC oversight, rendering them *ultra vires* and unlawful. This evidence meets the heightened pleading standards under the PSLRA, warranting the lifting of the discovery stay and full discovery to ensure justice for Plaintiff and the approximately 65,000 harmed investors.

## II. THE SUPPLEMENTAL OPPOSITION DOES NOT CONTRAVENE THE BRIEFING SCHEDULE

FINRA contends that Plaintiff's Motion for Leave was filed before FINRA's reply to the original Opposition was due, disrupting the Court's briefing schedule (ECF No. 106 at 2). This argument ignores the flexible nature of federal procedure and the good cause supporting this filing.

Local Rule CV-7(e) establishes a standard sequence for motions (motion, response, reply), but it does not prohibit supplemental filings addressing intervening developments. Federal Rule of Civil Procedure 15(d) permits supplemental pleadings to address any transaction, occurrence, or event that happened after the date of the pleading to be supplemented, upon motion and reasonable notice. The SEC's *Rolo* filing constitutes such an event, emerging after Plaintiff's original Opposition and confirming FINRA's *ultra vires* actions, including reliance on outdated data and issuance of the opaque U3 halt (SAC ¶¶ 17-19, Exs. S, U; ECF No. 105-1 at 4-5). Section 19(b) and Rule 19b-4 require FINRA to file any rule change, including policies or practices like the U3 halt, with the SEC for approval or permitted effectiveness (15 U.S.C. § 78s(b)(1), (3)(A); 17 CFR §

240.19b-4). FINRA's failure to do so, as evidenced by the absence of any public filing in the Federal Register for the MMTLP halt (SAC ¶17), renders its actions *ultra vires* and unlawful, directly undermining its immunity defense.

The Supplemental Opposition does not disrupt the schedule, as FINRA received notice and responded (ECF No. 106). Federal Rule of Civil Procedure 6(b) allows the Court to adjust deadlines for good cause, including excusable neglect or to promote fairness. The Handbook confirms that courts extend deadlines where appropriate (Handbook at 28). The *Rolo* filing's timing establishes good cause, and denying leave would preclude Plaintiff from presenting critical evidence. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (courts construe *pro se* filings liberally to ensure access to justice).

### III. THE COURT MUST GRANT LEAVE TO EXCEED THE PAGE LIMIT UNDER LOCAL RULE CV-7(d)(3)

FINRA argues that the Supplemental Opposition causes Plaintiff's total opposition briefing to exceed the 20-page limit set by Local Rule CV-7(d)(3) (ECF No. 106 at 2). Plaintiff requests leave to exceed this limit, as the Supplemental Opposition is brief (seven pages) and essential to address new evidence.

Local Rule CV-7(d)(3) limits responses to non-dispositive motions to 20 pages, but Federal Rule of Civil Procedure 6(b) authorizes the Court to modify such limits for good cause. The Handbook advises *pro se* litigants to comply with rules but recognizes judicial flexibility for procedural adjustments (Handbook at 3, 28). Good cause exists: the Supplemental Opposition focuses solely on the *Rolo* filing's implications for FINRA's immunity defense, including bad-faith conduct under *D'Alessio* (ECF No. 105-1 at 4-5,

6), which aligns with Plaintiff's evidence that FINRA's U3 halt (amongst other violations) violated SEC oversight requirements under Section 19(b) and Rule 19b-4 (15 U.S.C. § 78s(b); 17 CFR § 240.19b-4). This addition is necessary to respond to FINRA's Motion to Dismiss, which relies on absolute immunity (ECF No. 96 at 13-19), and counters FINRA's claim that Plaintiff's Rule 19b-4 argument is a mere "hypothetical" irrelevant to immunity.

If preferred, Plaintiff requests that the Court consider only the first 20 pages of the combined filings, excluding exhibits, to adhere to the limit while preserving core arguments. Denying leave would prejudice Plaintiff without burdening FINRA, as the supplemental material is concise and relevant.

## IV. FEDERAL RULE OF CIVIL PROCEDURE 15(d) PROVIDES A BASIS FOR SUPPLEMENTAL FILINGS

FINRA asserts there is no provision in the Federal Rules of Civil Procedure or Local Rules for supplementing an opposition to a dispositive motion before a reply is filed (ECF No. 106 at 2). This mischaracterizes the rules and ignores Federal Rule of Civil Procedure 15(d).

Local Rule CV-7 outlines standard briefing but does not bar supplements; Federal Rule of Civil Procedure 15(d) allows them when new events arise, requiring only a motion and reasonable notice—which Plaintiff provided (ECF No. 105). The Handbook supports presenting all relevant evidence and arguments (Handbook at 15), and courts permit supplemental filings to ensure a complete record. *See, e.g., D'Alessio*, 258 F.3d at 105-06 (examining misconduct to determine immunity's scope, warranting supplemental analysis

of new evidence). The *Rolo* filing demonstrates FINRA's non-compliance with rules like FINRA Rule 6440 (ECF No. 105-1 at 4-5), further supported by Plaintiff's evidence of FINRA's failure to file the U3 halt policy with the SEC, as required by Section 19(b) and Rule 19b-4 (15 U.S.C. § 78s(b)(1); 17 CFR § 240.19b-4). FINRA's attempt to dismiss this as a "hypothetical" crumbles against the reality of Plaintiff's evidence: the SAC's documentation of FINRA's reliance on outdated data (SAC ¶25(a), Exs. A, B, C) and opaque halt procedures (SAC ¶17, Exs. S, U) confirms its actions were *ultra vires*. Plaintiff's Motion for Leave follows proper procedure by seeking Court approval before filing the supplement. The *Rolo* filing's relevance justifies this approach, and the Handbook encourages *pro se* litigants to present such developments (Handbook at 3, 15).

## V. PLAINTIFF'S PRO SE STATUS WARRANTS LENIENCY FOR GOOD-FAITH COMPLIANCE EFFORTS

FINRA notes that *pro se* litigants must comply with Local Rules, citing *Alvarez v. Brokers Logistics, Ltd.*, No. EP-23-CV-00148-DCG, 2024 U.S. Dist. LEXIS 65423, at *3 (W.D. Tex. Apr. 9, 2024), and *Luken v. Collins*, 3 F.3d 437 (5th Cir. 1993) (ECF No. 106 at 2). Plaintiff acknowledges this obligation and adhered to the rules by filing a Motion for Leave rather than submitting the supplement unilaterally.

The Supreme Court in *Haines v. Kerner*, 404 U.S. at 520, instructs courts to hold *pro se* pleadings to less stringent standards, construing them liberally to avoid injustice. The Handbook echoes this, urging courts to consider good-faith efforts (Handbook at 3).

Plaintiff's diligence is evident: the Motion for Leave demonstrates respect for procedure, and the Supplemental Opposition addresses new evidence without prejudice to FINRA.

Any minor procedural missteps stem from Plaintiff's *pro se* status and must be excused under Federal Rule of Civil Procedure 6(b), as the intent is to present a complete, fact-based case.

As a *pro se* litigant, I have worked tirelessly to uncover and present clear and robust evidence exposing the misconduct of the Defendants, including FINRA's *ultra vires* actions in the securities markets. My SAC details FINRA's provision of a vehicle for fraud by approving outdated 2012 TRCH data without verifying its non-tradable intent, enabling unauthorized trading (SAC ¶17, Exs. A, B, C), its opaque issuance of the U3 halt without transparent justification in violation of SEC Rule 10b-17's notice requirement (SAC ¶17, Exs. S, U), and its potential data falsification as shown by the Threshold Security List reporting zero FTDs on December 12 despite previous high FTDs (SAC ¶17, Exs. S, U, V, W) amongst other violations. FINRA's claim that these arguments are a mere "hypothetical" irrelevant to immunity is a desperate deflection. SEC Rule 19b-4 and Plaintiff's boatload of evidence—spanning hundreds of pages across the SAC and its exhibits—prove FINRA's actions were not regulatory but unauthorized, stripping away any immunity defense. No matter how FINRA spins a different narrative, it cannot escape the truth: its unilateral actions bypassed mandatory SEC oversight, rendering them *ultra vires* and unlawful. This evidence meets the heightened pleading standards under the PSLRA, warranting the lifting of the discovery stay and full discovery to ensure justice for Plaintiff and the approximately 65,000 harmed investors.

### VI. CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion

Case No. 7:24-cv-00317-DC-RCG   MIDLAND/ODESSA DIVISION

for Leave to File the Supplemental Opposition (ECF No. 105), deem the attached Supplemental Opposition (ECF No. 105-1) filed, and grant such other relief as the Court deems just and proper.

Dated: August 7, 2025

Respectfully submitted,

/s/ Contique Willcot

Contique Willcot, *Pro Se*

6940 SW 10th Ct

Pembroke Pines, FL 33023

Phone: (954) 274-5173

Email: **contiq9@yahoo.com**

## CERTIFICATE OF SERVICE

I certify that on August 7, 2025, a true and correct copy of the foregoing document was served via CM/ECF (or, if not registered, via U.S. Mail) on all counsel of record, including:

David C. Kent

Faegre Drinker Biddle & Reath LLP

2323 Ross Avenue, Suite 1700

Dallas, TX 75201

**david.kent@faegredrinker.com**

(Attorneys for Defendant FINRA)

And all other Defendants' counsel as listed in the docket.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILESUPPLEMENTAL OPPOSITION TO DEFENDANT FINANCIAL INDUSTRYREGULATORY AUTHORITY, INC.'S MOTION TO DISMISS - 11

/s/ Contique Willcot

Contique Willcot

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SUPPLEMENTAL OPPOSITION TO DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO DISMISS - 12