# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# MIDLAND/ODESSA DIVISION

| | |
|---|---|
| CONTIQUE WILLCOT,<br><br>                      Plaintiff,<br><br>  v.<br><br>SECURITIES & EXCHANGE COMMISSION, GTS SECURITIES LLC, ARI RUBINSTEIN, NEXT BRIDGE HYDROCARBONS, INC., JOHN BRDA, GREGORY MCCABE, and FINANCIAL INDUSTRY REGULATORY AUTHORITY,<br><br>                    Defendants. | Case No.: 7:24-CV-317-RCG-DC |

**DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

I.  **INTRODUCTION**[1]

Willcot opposes FINRA's MTD [ECF 96] by misstating legal doctrine and incorporating convoluted "evidence" and purported facts that do not overcome FINRA's straightforward and dispositive defenses. *See* Willcot's Opposition to FINRA's Motion to Dismiss the Second Amended Complaint [ECF 98] (the "Opposition" or "Opp."). First, this Court lacks personal jurisdiction over FINRA. The SAC [ECF 73] fails to allege any FINRA conduct specifically directed at the forum giving rise to Willcot's claims. Second, Willcot's immunity argument is specious, based on a misconception that absolute immunity for regulatory action can be overcome simply by alleging FINRA, in taking regulatory action, violated some rule or law that may be characterized as "*ultra vires*." Instead, the immunity applied to FINRA's regulatory acts is absolute - <u>there is no *ultra vires* or bad faith exception</u>. At bottom, where the underlying allegations relate to performance of a regulatory function—which Willcot's allegations do here—the inquiry ends, absolute immunity applies, and the claims are barred.

The remainder of Willcot's arguments are cursory, confusing, and conclude with Willcot's request that the Court allow him a Third Amended Complaint (which was not submitted with his Opposition). Any proposed pleading amendment would be futile for the same reasons stated above. Willcot has already amended his complaint once, and his purported claims fail as a matter of law. Accordingly, the Court should grant FINRA's MTD with prejudice and without leave to amend.

II.  **ARGUMENT**

   A.  **Willcot Fails to Establish Specific Personal Jurisdiction**

In a convoluted attempt to argue in favor of personal jurisdiction, Willcot, who is not a Texas resident, argues that because FINRA regulates broker dealers generally, and because one of those

---

[1] This Reply uses defined terms and acronyms that were defined in FINRA's Motion to Dismiss [ECF 96] (the "MTD")

1

broker dealers (Charles Schwab) allegedly "executed" 13 million MMTLP shares on December 8, 2022, FINRA is subject to personal jurisdiction because that alleged conduct "constitutes purposeful availment and tortious conduct in Texas." Opp. p. 5 & SAC ¶ 22. However, Willcot does not identify a single specific action that FINRA directed toward the forum. Instead, Willcot contends, via conclusory statements, that FINRA "directly caused economic injury in this District, as FINRA's halt blocked sales and inflicted losses." Opp. p. 6 (citing *Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of Cal.,* 1 F.4th 346, 351 (5th Cir. 2021)).

Willcot's reliance on *Bulkley* is misplaced, as that case focused on a California defendant sending an enforcement letter to a Texas resident—a specific action by the out-of-state defendant directed to the Texas-based plaintiff, unlike this case. *Id.* at 348. In fact, under Texas law, "[f]or a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the nonresident defendant's contacts with the forum state must be purposeful; and (2) the cause of action must arise from or relate to those contacts." *See Moncrief Oil Intern. Inc. v. OAO Gazprom*, 332 S.W.3d 1, 9 (Tex. App. 2010); *see also Asahi Metal Ind. Co., v. Sup. Court of Cal.*, 480 U.S. 102, 112 (1987) (requiring actions "purposefully directed toward the forum State" for jurisdiction). Willcot does not allege conduct purposefully directed to Texas—instead he alleges only that FINRA regulates broker dealers (such as Charles Schwab) that engaged in Texas transactions (which apparently have nothing to do with Willcot). He does not even allege that he is or has ever been a Charles Schwab customer.

Willcot's reliance on *Choice Healthcare v. Kaiser Found. Health Plan*, 615 F.3d 364, 369 (5th Cir. 2010), is equally untenable inasmuch as that case actually supports the lack of personal jurisdiction over FINRA that exists here. Opp. p. 6 (citing *Choice Healthcare* for the proposition that "jurisdiction [is] proper where defendant's contact's caused harm in the forum"). The *Choice Healthcare* court analyzed numerous cases rejecting specific personal jurisdiction, *id.* at 369-371

2

(collecting cases), and concluded that membership in a nationwide plan, which then contracted with the Texas-based plaintiff, was insufficient to establish the defendant "purposefully availed itself of the benefits and privileges of the forum state," *id.* at 372. Likewise, here, FINRA's regulation of national broker dealers, and the trading halt that allegedly had "impact on local transactions," Opp. p. 6, are insufficient to establish FINRA purposefully directed conduct toward Texas—or toward Willcot, a Florida resident.

### B. Willcot Misstates the Application of Absolute Regulatory Immunity

Willcot argues that "[i]mmunity applies only to actions within FINRA's delegated regulatory authority—not to *ultra vires* conduct exceeding that authority, such as approving MMTLP trading despite the issuer's explicit non-tradable intent or imposing an opaque halt without required notices." Opp. p. 7 (citing *D'Alessio v. NYSE*, 258 F.3d 93, 105 (2d Cir. 2001), for the proposition that "immunity denied for bad-faith, non-regulatory acts"). However, *D'Alessio* does not support Willcot's position and, in fact, directly contradicts it.

In *D'Alessio*, among other allegations, the plaintiff:

(i)  asserted claims "predicated on the NYSE's improper performance of its interpretive, enforcement and referral functions[;]"

(ii) "allege[d] that the NYSE incorrectly interpreted and applied section 11(a) of the Exchange Act and regulations and rules thereto (interpretive function)" and "failed to monitor D'Alessio's compliance with the Exchange Act and various rules of the NYSE…[;]" and

(iii) claimed "that the NYSE provided false information when it cooperated with and assisted the United States Attorney's Office and the SEC in their investigations into alleged violations of section 11(a) by D'Alessio and other floor brokers (referral function)."

258 F.3d at 106. Willcot makes the same form of allegations here. *See, e.g.*, Opp. p. 7 (claiming FINRA "violated its own rules…and SEC regulations"). In such a case, absolute immunity bars plaintiff's claims. *D'Alessio*, 258 F.3d at 106 (upholding district court's conclusion that the alleged "actions fell 'well within the perimeter of the [NYSE's] quasi-governmental duties'") (citation omitted).

3

Further, "any malfeasance on the part of the [SRO] in failing to monitor…compliance with" the Exchange Act "plainly falls within the scope of the quasi-governmental duties delegated to the [SRO] under the Exchange Act." *Id.* This is the entire purpose of absolute immunity: "when acting in its capacity as an SRO, [the SRO] is entitled to immunity from suit when it engages in conduct consistent with the quasi-governmental powers delegated to it pursuant to the Exchange Act and the regulations and rules promulgated thereunder." *Id.* (citing *Barbara v. NYSE*, 99 F.3d 49, 59 (2d Cir.1996), *P'ship Exch. Sec. Co. v. NASD*, 169 F.3d 606, 608 (9th Cir.1999), and *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1214 (9th Cir. 1998)). As noted in the *D'Alessio* court's decision, which was affirmed on appeal, absolute immunity is "a matter not simply of logic but of intense practicality, since, in the absence of such immunity, the [SRO's] exercise of its quasi-governmental functions would be unduly hampered by disruptive and recriminatory lawsuits." *D'Alessio v. NYSE*, 125 F. Supp. 2d 656, 658 (S.D.N.Y. 2000), *aff'd*, 258 F.3d 93 (2d Cir. 2001).

There is no "*D'Alessio*[] exception for non-regulatory acts," Opp. p. 10, to support Willcot's contention that he can unilaterally proclaim that regulatory activity violates a rule or law, and then declare the activity *ultra vires* to overcome absolute immunity. Willcot's reliance on *Sparta Surgical*, 159 F.3d at 1215, is also misplaced because, contrary to Willcot's contention, the court did <u>not</u> find "capricious acts unprotected." Opp. p. 11. Rather, the *Sparta* Surgical court expressly rejected a "bad faith" exception to absolute immunity, finding that immunity applies even if "defendants acted in a capricious, even tartuffian manner which caused [plaintiff] enormous damage." 159 F.3d at 1215. Again, this is the exact opposite of Willcot's description of the *Sparta* court's holding.

The remaining cases on which Willcot relies also contradict his position. There is no exception to immunity for "*ultra vires* deviations from delegated duties." Opp. p. 9 (citing, in addition to *D'Alessio*, *Alpine Sec. Corp. v. FINRA*, 2023 WL 9002556 (S.D.N.Y. Dec. 28, 2023) (a non-existent citation); *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023) (which does not address an immunity

4

defense at all); and *Weissman v. NASD, Inc.*, 500 F.3d 1293, 1297 (11th Cir. 2007) (where the court held immunity applies when an SRO is performing "regulatory, adjudicatory, or prosecutorial functions that would otherwise be performed by a government agency" and would not apply only "when they perform non-governmental functions")). Willcot also cites *Austin Mun. Secs., Inc. v. NASD*, 757 F.2d 676, 688 (5th Cir. 1985), claiming it "limits immunity to scope." Opp. p. 11. However, Willcot ignores the court's ultimate ruling in *Austin Municipal*, which noted the need to "weed out meritless claims" and protect, via immunity, actions that "fall within the outer perimeter of an official's conduct…." *Austin Mun.*, 757 F.2d at 687.

Willcot proffers that FINRA improperly exercised its delegated duties via "*ultra vires* deviation"—alleging FINRA failed to adhere to SEC rule requirements, failed to follow FINRA rules, and violated other rules relating to the regulation of the markets. Opp. pp. 8-9. But these are precisely the types of claims to which absolute immunity applies, and simply labeling the challenged regulatory conduct as "*ultra vires*" cannot circumvent absolute immunity. *Empire Fin. Grp. v. FINRA*, No. 08-80534-CIV, 2009 U.S. Dist. LEXIS 133643, at *17 (S.D. Fla. Jan. 15, 2009) (rejecting an *ultra vires* argument and applying immunity to bar claims where the "putative claims against FINRA arise exclusively from FINRA's exercise of its regulatory functions"); *see also* FINRA Opposition to Willcot Motion to Supplement, pp. 4-5 [ECF 106].

All of the FINRA conduct Willcot challenges is within the powers delegated to FINRA under the Exchange Act. The purported additional "evidence" supporting Willcot's claims, such as the hearsay complaint filed by another MMTLP investor with the SEC, simply contains the same deficient assertions. *See, e.g.*, ECF 98-1.[2] In a recent decision in a similar case filed by another

---

[2] Willcot's SAC and Opposition each cite numerous unauthenticated documents and alleged "evidence" in a confusing fashion. Willcot also sought to supplement his Opposition with additional superfluous, confusing, and irrelevant information, and FINRA opposed. *See* ECF 105; ECF 106.

MMTLP shareholder, the court recognized that claims related to "FINRA's decision to halt MMTLP trading and alleged facilitation of misconduct by market makers and brokers" are precluded by immunity as they are "incident to FINRA's power to regulate the securities markets." *Traudt v. Rubenstein et al.*, No. 2:24-cv-782, 2025 U.S. Dist. LEXIS 123280, at *14 (D. Vt. June 30, 2025) (noting also "the immunity depends only on whether specific acts and forbearances were incident to the exercise of regulatory power, and not on the propriety of those actions or inactions") (citations and internal quotation marks omitted). Accordingly, all of Willcot's claims are barred because he cannot overcome FINRA's immunity defense.

### C. Willcot Has No Private Right of Action

The case law Willcot cites does not support his argument that he can maintain a private right of action against FINRA. Willcot appears to conflate his unsupported assertion with his contention that regulatory immunity should not be applied. For example, contrary to Willcot's assertion, *Desiderio v. NASD*, 191 F.3d 198, 208 (2d Cir. 1999), did not find a private right of action "for failures outside regulatory duties." Opp. pp. 11-12. Quite the opposite: the court found the plaintiff had no private right of action "to challenge an exchange's failure to follow its own rules" (much like Willcot alleges here). While Willcot further mistakenly relies upon the case to argue that FINRA's acts were *ultra vires*, his argument fails for all of the reasons cited above with respect to regulatory immunity, and because the *Desiderio* Court held that there is no private right of action for state law claims against NASD even if bad faith is alleged. *Desiderio*, 191 F.3d at 208. Moreover, Willcot's

---

The Court need not accept Willcot's inferences and speculative conclusions as true. *Jack v. Evonik Corp.,* 79 F.4th 547, 561 (5th Cir. 2023) ("conclusory allegations, unwarranted factual inferences, or legal conclusions" are not accepted as true). However, even if the Court accepts as true Willcot's conclusions that FINRA improperly processed corporate actions, allowed MMTLP to trade in the first place, and halted trading of MMTLP shares, such conduct is all regulatory in nature and absolute immunity precludes Willcot's claims. *See* FINRA MTD pp. 13-16 (collecting cases).

6

citation to *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex 2013), is perplexing, as that case does not address a party's private right of action under the Exchange Act or any other grounds.

Then, again conflating his lack of a private right of action with regulatory immunity, Willcot goes on to criticize FINRA's reliance on *Cent. Registration Depository v. FINRA*, Case No. SACV09-01395, 2010 U.S. Dist. LEXIS 151805 (C.D. Cal. Apr. 14, 2010), claiming that the court "dismissed claims within authority" which were "unlike these *ultra vires* acts." Opp. p. 12. However, like the weight of the relevant authorities cited in FINRA's MTD, that case also dismissed all of plaintiff's claims against FINRA and did not contain any finding of a private right of action against it.

At bottom, Willcot fails to cite a single authority or advance any argument that supports the existence of any private right of action to bring his claims in the SAC, under state law, the Exchange Act, or otherwise. And he cannot. Based upon the myriad authorities cited in FINRA's MTD, Willcot has no private right of action here, and the SAC must be dismissed.

### D.     Willcot Does Not Meaningfully Address His Failures to State a Claim

The Opposition only briefly addresses each of FINRA's arguments as to why the SAC otherwise fails to state a claim. For example, the Opposition does not establish each of the elements of a securities fraud claim. *Compare* Opp. pp. 12-13 *with* MTD pp. 19-21. Willcot's argument on negligence ignores the lack of duty and focuses on allegations that purportedly "*ultra vires* acts [are] causing harm." *Compare* Opp. p. 13 *with* MTD pp. 21-22. Such arguments do not overcome Willcot's failure to state a claim for negligence. Willcot also concludes, without any legal or factual support, that his declaratory judgment claim is viable as a standalone cause of action. *Compare* Opp. p. 13 *with* MTD pp. 22-23. In addition, Willcot concludes without explanation that his antitrust claim should survive because "*ultra vires* acts are incompatible with securities laws." *Compare* Opp. pp. 13-14 *with* MTD pp. 19-21. These unsupported and conclusory arguments do not warrant further discussion. The SAC must therefore be dismissed for failure to state a claim.

### E. Leave For Further Amendment Should Be Denied As Futile

The remainder of Willcot's Opposition appears to refer to a proposed Third Amended Complaint ("TAC") that he did not attach. *See* Opp. pp. 14-18. Based on Willcot's description of the claims included in the TAC, any amendment would be futile because it still challenges FINRA's exercise of regulatory functions. Specifically, Willcot alleges violations of:

1. FINRA Rule 6490 (Processing of Company-Related Actions). Opp. p. 16 (it is unclear how this could be outside the scope of FINRA's regulatory duties).

2. SEC Rule 10b-5 (17 C.F.R. 240.10b-5). Opp. p. 16 (alleged violations based on "approvals" of trading,[3] "symbol assignment," and "reporting").

3. SEC Rule 10b-7 (17 C.F.R. 240.10b-7). Opp. p. 17 (alleged violations based on purported failure to timely announce stock trading information).

4. SEC Rule 15c2-11 (17 C.F.R. 240.15c2-11). Opp. p. 17 (alleged violations based on FINRA's purported failure to properly oversee and ensure broker/dealer and issuer compliance with alleged security quotation requirements).

5. 15 U.S.C. 78o-3(b)(6). Opp. p. 17 (alleged violations based on FINRA's purported failure to take enforcement action in response to a purported whistleblower complaint,[4] improper authorization of trading, and imposition of a trading halt).

6. Sherman Act §1 (15 U.S.C. 1). Opp. p. 18 (alleged violations based on the MMTLP trading halt and conduct with regard to OTC trading).

Willcot's descriptions confirm that the proposed TAC would not assert any new or different causes of action nor cure the fundamental flaws in the SAC. These proposed claims continue to fail to: (i) assert any allegations supporting personal jurisdiction over FINRA in this case, (ii) overcome FINRA's absolute immunity, or (iii) establish that Willcot has a private right of action.

---

[3] Willcot continues to propagate a theory that because the issuer of the MMTLP shares claims it never intended the stock to be traded, FINRA or the entities that started trading the security violated the law. This theory finds no support in the facts or the law.

[4] Willcot references an "Ex. H" for a whistleblower complaint that FINRA allegedly ignored, but he failed to attach this document to the Opposition and FINRA cannot locate it. Whatever the document is or says, Willcot's complaint still involves a criticism of the manner in which FINRA acted—or failed to act—in its capacity as regulator of the securities markets.

District courts may deny leave when amendment would be futile. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (noting the factors to consider on a motion for leave to amend, including "futility of the amendment") (citations omitted); *Sigaran v. U.S. Bank Nat'l Ass'n,* 560 Fed. Appx. 410, 416 (5th Cir. 2014) (affirming denial of amendment as futile where plaintiff "never explained—either before this Court or the district court—how they could amend their complaint to avoid these problems"). Even when a *pro se* plaintiff is involved, the futility of an amendment supports denying a motion for leave to amend. *See, e.g., Bruning v. Attmore*, No. 19-CV-00060-DC, 2020 U.S. Dist. LEXIS 256667, at *17-*26 (W.D. Tex. Feb. 2, 2020) (granting dismissal and denying leave to amend because the various claims in plaintiff's proposed amendment would be subject to dismissal if leave to amend were granted); *Stone v. FINRA*, 694 F. Supp. 3d 774 (E.D. Tex. 2023) (denying *pro se* plaintiff's motion for leave based on finding that "amendment would be futile"); *Williams v. Sheffield*, No. 4:22-CV-736, 2023 U.S. Dist. LEXIS 17473, at *5 (N.D. Tex. Jan. 4, 2023) (acknowledging that *pro se* pleadings "are entitled to more lenient scrutiny than pleadings drafted by lawyers" but concluding that "Plaintiff has had more than one opportunity to file a complaint that is not frivolous and states a claim upon which relief can be granted" and amendment would be futile).

Leave to amend should also be denied where the plaintiff has already pled his "best case" and allowing amendment would serve no useful purpose. *See Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) (denial may even be appropriate where the plaintiff had not amended even once, if their "best case" was already pled); *Goldsmith v. Hood County Jail*, 299 Fed. Appx. 422 (5th Cir. 2008) (denying leave to amend where plaintiff failed to explain how the amendment would overcome the legal deficiencies in his "fairly thorough" complaint); *English v. United States*, No. 4:24-CV-00282, 2024 U.S. Dist. LEXIS 132174, at *10 (S.D. Tex. July 26, 2024) (denying leave to amend

9

and noting"[p]laintiff has had the opportunity to allege his best case, and…further amendments would not change the outcome") (subsequent history omitted).[5]

Here, Willcot has already amended his complaint once and his proposed TAC would not change the legal deficiencies of his purported claims. Willcot fails to explain how his allegations overcome FINRA's absolute immunity from suit for what remains "quintessentially regulatory" activity, or the fact that Willcot lacks a private right of action. In such a case where a *pro se* plaintiff has already pled his best case, such that "no further amendment can overcome [defendants' immunity defenses,]" leave is not required because "granting additional leave to amend would be futile and only cause needless delay." *Patterson v. Off. of Att'y Gen. Child Support Div.*, No. MO:23-CV-209-DC-RCG, 2024 U.S. Dist. LEXIS 111639, at *11 (W.D. Tex. June 25, 2024), *report and recommendation adopted*, No. MO:23-CV-00209-DC, 2024 U.S. Dist. LEXIS 125707 (W.D. Tex. July 17, 2024); *see also Daniels v. Saucedo*, No. MO:21-CV-101-DC, 2021 U.S. Dist. LEXIS 250629, at *3 (W.D. Tex. Nov. 17, 2021), *aff'd*, No. 21-51193, 2022 U.S. App. LEXIS 28441, at *8-*9 (5th Cir. Oct. 12, 2022) ("The court may deny leave to amend, however, if the defects are incurable or the plaintiff has already alleged their best case").

In sum, FINRA's Motion to Dismiss should be granted, with prejudice and without leave to amend.

---

[5] *Cf. Pitts v. Waffle House, Inc.,* No. 23-60436, 2024 U.S. App. LEXIS 10630, at *4-*5 (5th Cir. May 1, 2024) ("It is not an abuse of discretion to deny a *pro se* party leave to amend…where the plaintiff has already pleaded his 'best case.'") (citations omitted); *Jackson v. Pierre*, 810 F. App'x 276, 281 n.4 (5th Cir. 2020) (affirming denial of leave to amend where "[w]e agree that [plaintiff] has failed to point to any amendments to her complaint that could change the outcome"); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (finding no error where the Western District of Texas court found *pro se* plaintiff had already pled his best case); *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (affirming denial of *pro se* plaintiff's leave to amend because leave is not required "if the plaintiff has already pleaded his 'best case'"); *Bernegger v. Dep't of Revenue*, No. 3:17CV993-HSO-LRA, 2019 U.S. Dist. LEXIS 181668, at *11 (S.D. Miss. Jan. 16, 2019), *aff'd*, 785 F. App'x 209 (5th Cir. 2019) (denying *pro se* plaintiff's motion for leave to amend where "Plaintiff's proposed amendment would not change the outcome and would therefore be futile").

Respectfully submitted,

_____
David C. Kent
State Bar No. 11316400
david.kent@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
2323 Ross Avenue, Suite 1700
Dallas, Texas 75201
(469) 357-2500
(469) 327-0860 (fax)
*Attorneys for Defendant*
*Financial Industry Regulatory Authority, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served on all *pro se* parties and counsel of record through the CM/ECF system on August 22, 2025.

_____
David C. Kent