IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| CONTIQUE WILLCOT,<br>    *Plaintiff*,<br><br>v.<br><br>SECURITIES & EXCHANGE COMMISSION; FINANCIAL INDUSTRY REGULATORY AUTHORITY; GTS SECURITIES LLC; NEXT BRIDGE HYDROCARBONS, INC.; JOHN BRDA; GREGORY MCCABE; and ARI RUBENSTEIN;<br>    *Defendants*. | MO:24-CV-00317-DC-RCG |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendant Financial Industry Regulatory Authority's Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 96).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the relevant case law, the Court **RECOMMENDS** the Financial Industry Regulatory Authority's Motion to Dismiss be **GRANTED**. (Doc. 96).

### I. Background

Plaintiff Contique Willcot ("Plaintiff"), proceeding *pro se*, filed his Original Complaint in this Court on December 6, 2024. (Doc. 1). Plaintiff amended his Complaint once as a matter of right and a second time with leave of Court. (Docs. 3, 73). Plaintiff's Second Amended Complaint bring claims against seven Defendants—Securities and Exchange Commission ("the Commission"); Financial Industry Regulatory Authority ("FINRA"); GTS Securities, LLC

---

1. All citations are to CM/ECF generated pagination unless otherwise noted.

("GTS"); Ari Rubenstein ("Rubenstein"); Next Bridge Hydrocarbons, Inc. ("NBH"); John Brda ("Brda"); and Gregory McCabe ("McCabe").

The relevant factual allegations in Plaintiff's Complaint are as follows. In June 2021, Metamaterials, Inc. and Torchlight Energy Resources, Inc. ("Torchlight") merged to form Meta Materials, Inc. ("MMAT shares"), creating Series A Preferred shares ("MMTLP shares"). *Id*. at 5–6. In the merger, Torchlight shareholders received ½ MMAT share and 1 MMTLP share for each Torchlight share—Plaintiff ended up with 591 MMAT shares and 1,182 MMTLP shares. *Id*. at 6. Plaintiff alleges MMTLP shares were not intended to be tradeable. *Id*.

Beginning in October 2021, MMTLP shares were traded on the over-the-counter market. *Id*. at 6. During this time, Plaintiff alleges GTS traded MMTLP on the over-the-counter market, creating synthetic shares and enabling naked short selling and inflating prices during Plaintiff's purchases. *Id*. Plaintiff asserts NBH, Brda, and McCabe's misrepresentations regarding Torchlight's asset valuations induced investor reliance. *Id*. at 10. And by December 2022, Plaintiff alleges he held 26,100 MMTLP shares. *Id*. at 5.

On December 9, 2022, FINRA halted trading of MMTLP shares, citing "settlement uncertainty." *Id*. at 7. FINRA is a private, not-for-profit self-regulatory organization ("SRO") that is authorized by Congress to conduct daily regulation of the national securities markets, including the over-the-counter market, with oversight from the Commission. FINRA is a registered national securities association under the Securities Exchange Act. As Plaintiff alleges, FINRA's U3 trading halt was abrupt and done without proper notice to investors, meaning shareholders were unable to sell their positions prior to the halt. *Id*. Plaintiff alleges the halt locked "Plaintiff and 65,000 investors out of a short squeeze with potential sales at $100,000–$200,000 per share, causing $65,250,000–$130,500,000 in losses." *Id*. Then, on December 13,

2022, MMTLP shares were exchanged on a one-to-one basis for shares of NBH, which is not publicly traded. *Id*. at 8. Accordingly, many shareholders have been unable to trade their NBH shares.

Plaintiff brings three causes of action against FINRA: (1) violation of the Securities Exchange Act § 10(b) and Rule 10b-5, (2) negligence, and (3) a declaratory judgment.[2] (Doc. 73 at 9–14). On July 15, 2025, FINRA filed a Rule 12(b)(2) and 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 96). Plaintiff and FINRA filed their respective Response and Reply. (Docs. 98, 114). Accordingly, this matter is ripe for disposition.

## II.  LEGAL STANDARD

### A. Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action when a court lacks personal jurisdiction over the defendant. In resolving a Rule 12(b)(2) motion, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 496 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). To carry that burden the plaintiff must plead a prima facie showing of personal jurisdiction. *Palmer v. Idalia Llorens Collection Agency, Inc.*, 434 F. Supp. 3d 462, 467 (E.D. Tex. 2020)

---

2. In his Complaint, Plaintiff does not state he is bringing any antitrust claims against FINRA, but he does refer to FINRA under his antitrust cause of action section. (Doc. 73). While FINRA's Motion does make an argument as to why Plaintiff failed to state any antitrust violations against FINRA (Doc. 96 at 27 n.16), the Court does not find Plaintiff brings claims for a violation of the Sherman or Clayton Act against FINRA. Plaintiff's Response confirms as much as he provides his *proposed* amended complaint contains an antitrust claim against FINRA. (Doc. 98 at 13). Accordingly, the Court will not discuss these claims.

Additionally, Plaintiff's Response to FINRA's Motion to Dismiss provides FINRA committed violations of FINRA Rule 6490, SEC Rule 10b-17, SEC Rule 15c2-11, and 15 U.S.C. § 78o-3(b)(6). *Id*. at 16–18). To the extent Plaintiff is attempting to bring new causes of action in his Response, the Court refuses to address these.

(citing *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)). Additionally, "allegations in the plaintiff's complaint are taken as true, except to the extent that they are contradicted by the defendant" and "[a]ny material and genuine, conflicting facts are resolved in favor of the plaintiff for the purpose of determining whether a prima facie case exists." *Id*.

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery.") (internal quotation marks and citations omitted).

In a court's review of a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions."). "Although dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017).

### C. Rule 9(b)

Securities Exchange Act § 10(b) and Rule 10b-5 provides a remedy only for those victimized by securities fraud. "Fraud claims are subject to the heightened pleading standard of Rule 9(b), under which 'a party must state with particularity the circumstances constituting fraud.'" *Poe v. Bock*, No. CV-17-00232, 2018 WL 4677901, at *2 (W.D. Tex. June 11, 2018) (quoting FED. R. CIV. P. 9(b)), *R. & R. adopted*, 2018 WL 4275839 (W.D. Tex. Sept. 7, 2018). The Fifth Circuit has interpreted this to mean a plaintiff "must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Stated differently, "[a] claim of fraud must allege the 'who, what, when, and

where.'" *Big Thirst, Inc. v. Donoho*, 657 F. Supp. 3d 914, 924 (W.D. Tex. 2023) (quoting *Williams*, 112 F.3d at 178). Further, in securities fraud suits, the Private Securities Litigation Reform Act ("PSLRA") "reinforces the particularity requirements of Rule 9(b), requiring the plaintiffs to state not only the time, place, the identity of the speaker, and the content of the alleged misrepresentation, but also to explain why the challenged statement or omission is false or misleading. The PSLRA *also* requires that the complaint 'with respect to *each* act or omission alleged' to be false or misleading 'state with *particularity facts* giving rise to a *strong* inference that *the defendant* acted with the required state of mind.'" *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362–63 (5th Cir. 2004) (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

### III. DISCUSSION

#### A. Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

FINRA argues it is not subject to personal jurisdiction in this Court, so Plaintiff's Complaint should be dismissed under Rule 12(b)(2). (Doc. 96 at 17). In Texas, there are two requirements for a court to exercise personal jurisdiction over a non-resident defendant: "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). "Because Texas' long-arm statute has been held to extend to the limits of due process, only the second jurisdictional precondition must be examined." *Allstate Inc. v. Interline Brands, Inc.*, 997 F. Supp. 2d 501, 506 (N.D. Tex. 2014) (citing *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992)).

For personal jurisdiction to comport with due process, the plaintiff must show: (1) "the defendant purposefully availed itself of the benefits and protections of the forum state by

establishing 'minimum contacts' with that state such that it would reasonably anticipate being haled into court there"; and (2) "exercising jurisdiction over the defendant would not offend traditional notions of fair play and substantial justice." *Id*. (citing *Jones*, 954 F.2d at 1068). "The 'minimum contacts' prong of the due process analysis can be met through contacts giving rise to either specific or general jurisdiction." *Id*. (citing *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996)). To exercise general personal jurisdiction, a defendant's contacts with the forum state must be so "continuous and systematic as to render them essentially at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotations omitted). When the defendant is a corporation, it is considered at home in the "corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). And, in an "exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State." *Id*. (internal quotations omitted). In contrast, specific jurisdiction "is established through the defendant's contacts with the forum state arising from, or related to, the cause of action." *Allstate Inc.*, 997 F. Supp. 2d at 506 (citations and quotation marks omitted).

Here, Plaintiff is unable to establish general or specific jurisdiction. FINRA cannot be considered "at home" in Texas—FINRA is incorporated in Delaware and its principal place of business is in Washington, D.C., which Plaintiff does not dispute. (Doc. 96 at 20). As it related to specific jurisdiction, in his Complaint, Plaintiff alleges only that FINRA is connected to Texas because it regulates Texas broker-dealers, such as Charles Schwab, which executed MMTLP trades. (Doc. 73 at 3–4, 9). Plaintiff's Response argues "FINRA purposefully avails itself of Texas by regulating Texas-based broker-dealers executing MMTLP trades" and FINRA "enabled

harmful trades in Texas, as evidenced by Schwab's operations and the halt's impact on local transactions." (Doc. 98 at 6). But as FINRA points out, Plaintiff is not a Texas citizen, he has not alleged he is or ever has been a Charles Schwab customer, and he makes no attempt to connect FINRA's Texas-based conduct to FINRA's conduct as it relates to Plaintiff. Thus, Plaintiff failed to establish FINRA's "minimum contacts" with Texas under either the general or specific personal jurisdiction theories.

Finally, to the extent Plaintiff requests jurisdictional discovery, that request should be denied. *Id*. Jurisdictional discovery is only available if a party first makes "a preliminary showing of jurisdiction," which requires "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Salaiz v. Oscar Mgmt. Corp.*, No. 22-CV-114, 2025 WL 1794447, at *7 (W.D. Tex. June 25, 2025) (quoting *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)). Plaintiff has not done so here.

Accordingly, the Court **RECOMMENDS** FINRA's Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction be **GRANTED** (Doc. 96) and the claims be **DISMISSED WITH PREJUDICE**. Further, the Court **RECOMMENDS** Plaintiff's request for jurisdictional discovery be **DENIED**. (Doc. 98).

### B. FINRA's Absolute Regulatory Immunity

In addition to the Court lacking personal jurisdiction over FINRA, FINRA also argues, as an SRO, its regulatory immunity is absolute and bars all Plaintiff's claims against it. (Doc. 96 at 21). The Court agrees. It is well settled that "[a]s an SRO, FINRA and its officers are entitled to absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities." *Xu v. Fin. Indus. Regul. Auth. Inc.*, 503 F. App'x 7, 8 (2d. Cir. 2012); *Austin Min. Secs., Inc. v. Nat'l Assoc. of Secs. Dealers, Inc.*, 757 F.2d 676, 679 (5th Cir.

1985) ("[NASD, now FINRA] and its disciplinary officers have absolute immunity from further prosecution for personal liability on claims arising within the scope of their official duties."). In rebuttal, Plaintiff makes two main arguments: (1) FINRA is not entitled to immunity because it exceeded its delegated authority under the Exchange Act by "approving MMTLP trading despite the issuer's explicit non-tradable intent or imposing an opaque halt without required notices" and (2) even if FINRA was within its regulatory authority, its bad faith motivation usurped its immunity. (Doc. 98 at 7–11).

But this "misconduct alleged by [Plaintiff] falls squarely within FINRA's regulatory responsibilities." *Xu*, 503 F. App'x at 8. "FINRA's decision to halt MMTLP trading and alleged facilitation of misconduct by market makers and brokers [] are incident to FINRA's power to regulate the securities market." *Traudt v. Rubenstein*, No. 24-CV-782, 2025 WL 1795825, at *7 (D. Vt. June 30, 2025) (collecting cases where courts "have held that FINRA was immune from claims based on allegations very similar to those in this case") (citing *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 454 (S.D.N.Y. 2013) ("The capacity to suspend trading, irrespective of the identity of the decision-maker or the presence of an official SEC rule, is a quintessentially regulatory function.")). As to Plaintiff's second argument, "allegations of bad faith, malice, and even fraud—all of which may be relevant to a *qualified* immunity analysis—cannot, except in the most unusual of circumstances, overcome *absolute* immunity." *Xu*, 503 F. App'x at 8 ("Thus, it behooves the Court not to carve out a bad faith exception to the absolute immunity of an SRO as a matter not simply of logic but of intense practicality since otherwise the SRO's exercise of its quasi-governmental functions would be unduly hampered by disruptive and recriminatory lawsuits."); *Sparta Surgical Corp. v. Nat'l Assoc. of Secs. Dealers, Inc.*, 159 F.3d 1209, 1215 (9th Cir. 1998) (holding there is no bad faith

exception to the absolute immunity doctrine and providing that "when Congress elected 'cooperative regulation' as the primary means of regulating the over-the-counter market, the consequence was that self-regulatory organizations had to enjoy freedom from civil liability when they acted in their regulatory capacity"). Thus, FINRA enjoys absolute immunity for its conduct in this case and all Plaintiff's claims against FINRA are barred.[3]

Accordingly, the Court **RECOMMENDS** FINRA's Motion to Dismiss as to its regulatory immunity be **GRANTED**. (Doc. 96). Because FINRA's regulatory immunity bars Plaintiff's claims, the claims should be **DISMISSED WITH PREJUDICE**.

### C. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Even if the Court had personal jurisdiction and FINRA's regulatory immunity did not bar his claims, FINRA argues Plaintiff has failed to state a claim for which relief can be granted. The Court will discuss each claim in turn.

#### i. Securities Exchange Act § 10(b) and Rule 10b-5

"Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the SEC may prescribe." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260 (2024) (internal quotations omitted). "Rule 10b–5 implements this prohibition and makes it unlawful for issuers of registered securities to 'make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances

---

3. FINRA raises another argument in the alternative, asserting Plaintiff has no private cause of action against FINRA. (Doc. 96 at 24). As the Court has already found FINRA is entitled to absolute immunity and Plaintiff's claims against FINRA are barred, the Court need not discuss this alternative argument. *Park v. Fin. Indus. Regul. Auth. Inc.*, No. 23-CV-69, 2023 WL 11795601, at *3 n.2 (N.D. Ga. Sept. 25, 2023) ("FINRA further argues that, even if the challenged actions are not protected by absolute immunity, the Amended Complaint nonetheless fails to state a claim because . . . (ii) no statute provides a private right of action against SROs for 'acts or omissions in connection with its duties as a securities regulator.' As discussed below, the Court finds FINRA's absolute immunity argument dispositive. Therefore, the Court need not consider FINRA's remaining arguments.").

under which they were made, not misleading.'" *Id*. (quoting 17 C.F.R. § 240.10b–5(b) (2022)). The Supreme Court has interpreted Section 10(b) to provide a right of action to purchasers or sellers of securities injured by its violation. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318 (2007). "But the statutes make these latter actions available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

"To state a claim under § 10(b) of the Securities Exchange Act and SEC Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter (a 'wrongful state of mind'); (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a 'causal connection between the material misrepresentation and the loss.'" *Mun. Employees' Ret. Syst. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019) (quoting *Dura Pharm.*, 544 U.S. at 341–42). In pleading scienter, Plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id*. (citing 15 U.S.C. § 78u-4(b)(2)(a)).

The Court finds Plaintiff failed to allege factual allegations to meet any of the elements, let alone all of them. Plaintiff pleads only that FINRA approved outdated 2012 Torchlight data, there was *potential* data falsification involving FINRA, and FINRA executed the trading halt without proper notice. (Doc. 73 at 6–7, 10). Plaintiff is unable to, and seemingly does not attempt to, provide sufficient factual allegations for this Court to find FINRA made a material misrepresentation or omission. Further, Plaintiff does not establish a strong inference that FINRA intended to "deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319 ("To establish liability under § 10(b) and Rule 10b–5, a private plaintiff must prove that the defendant acted

11

with scienter, a mental state embracing intent to deceive, manipulate, or defraud."). And Plaintiff does not allege he bought or sold any securities in reliance on FINRA's conduct. Finally, again, Plaintiff has not provided any facts to connect a misrepresentation FINRA made to his economic losses. This would not suffice a normal pleading standard, let alone the heightened pleading that is required here.

Accordingly, the Court **RECOMMENDS** FINRA's Motion to Dismiss as to Plaintiff's claim for violation of the Securities Exchange Act § 10(b) and Rule 10b-5 be **GRANTED** (Doc. 96) for failure to state a claim, and this claim should be **DISMISSED WITH PREJUDICE**.

    **ii.   Negligence**

In his Complaint, Plaintiff alleges FINRA owed Plaintiff a duty to maintain market integrity, FINRA breached that duty by failing to act on known fraud, which caused economic harm. (Doc. 73 at 13). FINRA pushes back, arguing it does not owe a duty of care to individual investors. (Doc. 96 at 29–30). The Court agrees with FINRA. The Securities Exchange Act "does not establish any sort of trust relationship that benefits investors." *Grady v. United States*, No. 13-15C, 2013 WL 4957344, at *3 (Fed. Cl. July 31, 2013), *aff'd*, 565 F. App'x 870 (Fed. Cir. 2014). Further, Plaintiff provides no support for his argument that FINRA owed a duty of care to Plaintiff. *Hill v. Pepper Hamilton LLP*, No. 17-CV-021, 2017 WL 10841216, at *6 (W.D. Tex. May 31, 2017) ("[The plaintiff] fails to allege that [the defendant] owed him any legal duty, nor does he allege any facts from which the Court could infer that [the defendant] owed [the plaintiff] a legal duty.").

Accordingly, the Court **RECOMMENDS** FINRA's Motion to Dismiss as to Plaintiff's claim for negligence be **GRANTED** (Doc. 96) for failure to state a claim, and this claim should be **DISMISSED WITH PREJUDICE**.

### iii.  Declaratory Judgment

Plaintiff seeks a declaration that "FINRA's U3 halt violated transparency duties under the Securities Exchange Act of 1934 due to its non-regulatory nature and bad faith." (Doc. 73 at 14). Plaintiff claims these declarations are necessary to remedy harm to Plaintiff and 65,000 other investors. *Id*. at 15.

However, the Declaratory Judgment Act provides no independent cause of action. *Texas v. Ysleta del Sur Pueblo*, 367 F. Supp. 3d 596, 602 (W.D. Tex. 2019); *Carson v. Fed. Nat'l Mortgage Assoc.*, No. 11-CA-925, 2012 WL 13029757, at *2 (W.D. Tex. Jan. 26, 2012). Rather, "[i]n a declaratory judgment action, the parties litigate the underlying claim, and the declaratory judgment is merely a form of relief that the court may grant." *Val-Com Acquisitions Tr. v. CitiMortgage, Inc.*, 421 F. App'x 398, 400–01 (5th Cir. 2011). Because the Court has found Plaintiff's only substantive claims fail to state a cause of action, Plaintiff has no underlying claim to tether his claim under the Declaratory Judgment Act to. *Id*. at 401 ("After the district court dismissed the TILA and RESPA claims for failure to state a claim under Rule 12(b)(6), there was no underlying claim for the court to adjudicate and the court could not declare a violation of TILA or RESPA."). Additionally, as the Court has already discussed, FINRA was within its regulatory duties to impose the trading halt, which Plaintiff seeks to have declared.

Accordingly, the Court **RECOMMENDS** FINRA's Motion to Dismiss as to Plaintiff's claim a declaratory judgment be **GRANTED** (Doc. 96) for failure to state a claim, and this claim be **DISMISSED WITH PREJUDICE**.

### D. Plaintiff's Request for Leave to Amend

In his Response, Plaintiff requests the Court grant him leave to amend his Second Amended Complaint. (Doc. 96 at 27). Federal Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Rule 15(a) "favors granting leave to amend unless a substantial reason exists, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *Smith v. McDonough*, SA-22-CV-01383, 2023 WL 5918322, at *9 (W.D. Tex. Sept. 8, 2023) (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)); *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) ("While it is true that the court should freely give a party leave to amend its pleadings when justice so requires, such leave is not required where, as here, the movant contends that his pleadings sufficed to state a . . . claim throughout his briefing in opposition to the Rule 12[(b)(6)] motion and fails to apprise the district court of the facts that he would plead in an amended complaint, if necessary, to cure any deficiencies.") (internal citations, quotations and alterations omitted). Based on this rationale, courts typically provide plaintiffs with the opportunity to amend a complaint before dismissal; however, dismissal "is appropriate when the plaintiff was previously provided ample opportunity to cure the deficiencies." *Id*. (citing *Foman v. Davis*, 371 U.S. 182, 182 (1962); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).

In this case, Plaintiff has amended his Complaint once as of right and once more with leave of Court, following a round of dispositive motions. (Docs. 3, 73). Further, Plaintiff makes only a cursory mention of his request to amend, does not state the substance of his proposed amendment, nor does he attach an amended complaint for the Court. (Doc. 98). Plaintiff also

asserts the Second Amended Complaint "cures all purported deficiencies from prior pleadings, pleads with meticulous particularity violations of federal securities laws, antitrust statutes, and state common law, and unequivocally establishes this Court's jurisdiction over FINRA." (Doc. 98 at 2). Accordingly, the Court finds Plaintiff has been given ample opportunity to cure deficiencies in his pleadings and that further amendment would be futile. *See Smith*, 2023 WL 5918322, at *9. Thus, the Court **RECOMMENDS** Plaintiff's request to amend his complaint be **DENIED**.

## IV.   RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** FINRA's Motions to Dismiss Plaintiff's Second Amended Complaint under Rule 12(b)(2) and, alternatively 12(b)(6), be **GRANTED**. (Doc. 96). Further, the Court **RECOMMENDS** Plaintiff's claims as to FINRA for a violation of the Securities Exchange Act § 10(b) and Rule 10b-5, negligence, and declaratory judgment be **DISMISSED WITH PREJUDICE**. Finally, the Court **RECOMMENDS** Plaintiff's request for jurisdictional discovery and leave to amend be **DENIED**. (Doc. 98).

SIGNED this 19th day of December, 2025.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).