**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **CONTIQUE WILLCOT,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **MO:24-CV-00317-DC-RCG** |
| | § | |
| **SECURITIES & EXCHANGE** | § | |
| **COMMISSION; FINANCIAL** | § | |
| **INDUSTRY REGULATORY** | § | |
| **AUTHORITY; GTS SECURITIES** | § | |
| **LLC; NEXT BRIDGE** | § | |
| **HYDROCARBONS, INC.; JOHN** | § | |
| **BRDA; GREGORY MCCABE; and** | § | |
| **ARI RUBENSTEIN;** | § | |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendants GTS Securities, LLC and Ari Rubenstein's Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 81).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the relevant case law, the Court **RECOMMENDS** GTS Securities, LLC and Ari Rubenstein's Motion to Dismiss be **GRANTED**. (Doc. 81).

### I. BACKGROUND

Plaintiff Contique Willcot ("Plaintiff"), proceeding *pro se*, filed his Original Complaint in this Court on December 6, 2024. (Doc. 1). Plaintiff amended his Complaint once as a matter of right and a second time with leave of Court. (Docs. 3, 73). Plaintiff's Second Amended Complaint brings claims against seven Defendants—Securities and Exchange Commission ("the Commission"); Financial Industry Regulatory Authority ("FINRA"); GTS Securities, LLC

---

1. All citations are to CM/ECF generated pagination unless otherwise noted.

("GTS"); Ari Rubenstein ("Rubenstein"); Next Bridge Hydrocarbons, Inc. ("NBH"); John Brda ("Brda"); and Gregory McCabe ("McCabe").

The relevant factual allegations in Plaintiff's Complaint are as follows. In June 2021, Metamaterials, Inc. and Torchlight Energy Resources, Inc. ("Torchlight") merged to form Meta Materials, Inc. ("MMAT shares"), creating Series A Preferred shares ("MMTLP shares"). *Id.* at 5–6. In the merger, Torchlight shareholders received ½ MMAT share and 1 MMTLP share for each Torchlight share—Plaintiff ended up with 591 MMAT shares and 1,182 MMTLP shares. *Id.* at 6. Plaintiff alleges MMTLP shares were not intended to be tradeable. *Id.*

Beginning in October 2021, MMTLP shares were traded on the over-the-counter market. *Id.* at 6. During this time, Plaintiff alleges GTS, operating as a market maker, traded MMTLP on the over-the-counter market, creating synthetic shares and enabling naked short selling and inflating prices during Plaintiff's purchases. *Id.* Plaintiff asserts Rubenstein, GTS's CEO, personally directed these MMTLP trading strategies. *Id.* at 13. By December 2022, Plaintiff alleges he held 26,100 MMTLP shares. *Id.* at 5.

On December 9, 2022, FINRA halted trading of MMTLP shares, citing "settlement uncertainty." *Id.* at 7. FINRA's U3 trading halt was abrupt and done without proper notice to investors, meaning shareholders were unable to sell their positions prior to the halt. *Id.* Plaintiff alleges the halt locked "Plaintiff and 65,000 investors out of a short squeeze with potential sales at $100,000–$200,000 per share, causing $65,250,000–$130,500,000 in losses." *Id.* Then, on December 13, 2022, MMTLP shares were exchanged on a one-to-one basis for shares of NBH, which is not publicly traded. *Id.* at 8. Accordingly, many shareholders have been unable to trade their NBH shares.

Plaintiff brings five causes of action against GTS and Rubenstein: (1) violation of the Securities Exchange Act § 10(b) and Rule 10b-5; (2) violations of the Sherman Act §§ 1–2 and Clayton Act §§ 4, 7; (3) negligence, (4) aiding and abetting fraud, and (5) unjust enrichment. (Doc. 73 at 9–14). On June 26, 2025, GTS and Rubenstein filed a joint Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 81). The Parties filed their respective Response and Reply. (Docs. 82, 89). Accordingly, this matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.   Rule 12(b)(5)

A motion to dismiss pursuant to Rule 12(b)(5) turns on the legal sufficiency of the service of process. *Quinn v. Miller*, 470 F. App'x 321, 323 (5th Cir. 2012). The serving party carries the burden of showing service was proper if challenged. *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981). Federal district courts lack personal jurisdiction over a defendant unless they have been served with process in accordance with Rule 4 of the Federal Rules of Civil Procedure. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Rule 4(c) of the Federal Rules of Civil Procedure provides in pertinent part: "The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." FED. R. CIV. P. 4(c)(1). *Pro se* litigants are not exempt from compliance with the rules of service. *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981).

### B.   Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery.") (internal quotation marks and citations omitted).

In a court's review of a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain

to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions."). "Although dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017).

### A. Rule 9(b)

Securities Exchange Act § 10(b) and Rule 10b-5 provides a remedy only for those victimized by securities fraud. "Fraud claims are subject to the heightened pleading standard of Rule 9(b), under which 'a party must state with particularity the circumstances constituting fraud.'" *Poe v. Bock*, No. CV-17-00232, 2018 WL 4677901, at *2 (W.D. Tex. June 11, 2018) (quoting FED. R. CIV. P. 9(b)), *R. & R. adopted*, 2018 WL 4275839 (W.D. Tex. Sept. 7, 2018). The Fifth Circuit has interpreted this to mean a plaintiff "must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Stated differently, "[a] claim of fraud must allege the 'who, what, when, and where.'" *Big Thirst, Inc. v. Donoho*, 657 F. Supp. 3d 914, 924 (W.D. Tex. 2023) (quoting *Williams*, 112 F.3d at 178). Further, in securities fraud suits, the Private Securities Litigation Reform Act ("PSLRA") "reinforces the particularity requirements of Rule 9(b), requiring the plaintiffs to state not only the time, place, the identity of the speaker, and the content of the alleged misrepresentation, but also to explain why the challenged statement or omission is false or misleading. The PSLRA *also* requires that the complaint 'with respect to *each* act or omission alleged' to be false or misleading 'state with *particularity facts* giving rise to a *strong* inference that *the defendant* acted with the required state of mind.'" *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362–63 (5th Cir. 2004) (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

5

### III.    DISCUSSION

#### A.    Rule 12(b)(5) Improper Service

GTS and Rubenstein first move to dismiss Plaintiff's claims pursuant to Rule 12(b)(5) for improper service of process. (Doc. 81 at 3). GTS and Rubenstein list several shortcomings as it relates to Plaintiff's service: (1) Plaintiff himself personally served both GTS and Rubenstein; (2) Plaintiff served Rubenstein's nanny, who was at his residence but does not reside there; and (3) Plaintiff claims he served GTS's registered agent, Robert Broomer[2] ("Robert"), but he is not in fact GTS's registered agent. (Doc. 81 at 3–5). GTS and Rubenstein also refute Plaintiff's claim that their participation in this litigation waives their service objections. *Id*. at 5.

In opposition, Plaintiff contends he made a mistake in his affidavits by saying that *he* served GTS and Rubenstein when, in fact, a professional process server served these defendants. (Doc. 82 at 2). Given Plaintiff's *pro se* status, the Court will overlook his mistaken affidavits as he did file proof of service, signed by process servers, as to both GTS and Rubenstein. (Docs. 23, 26). However, the issue of who was served remains.

Federal Rule of Civil Procedure 4(e)(1) allows for serving an individual, like Rubenstein, within a judicial district of the United States by, relevant here, "(B) leaving a copy of [the summons and of the complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion *who resides there* or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." FED. R. CIV. P. 4(e)(2)(B)–(C) (emphasis added). Plaintiff's proof of service form shows the summons was "served on Mari Vidal, who is designated by law to accept service of process on behalf of Ari Rubenstein at 112 Palm Ave, Miami Beach, FL 33139." (Doc. 26). Rubenstein disputes this, stating in an affidavit that Mari Vidal provides services as a nanny to his family, she does not

---

2. In its Motion to Dismiss, GTS notes that the individual's name is actually Robert Brooks. (Doc. 81 at 4 n.2).

live at his residence, and he has not authorized her to accept service on his behalf. (Doc. 50-2). "[O]nce the validity of service of process has been contested, the plaintiff bears the burden of establishing its validity." *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992). Plaintiff responds to Rubenstein's improper service arguments by pointing to the proof of service form in which the process server stated, "I delivered the documents, Summons; Amended Complaint, to Mari Vidal who identified themselves as the person authorized to accept with identity confirmed by subject stating their name." (Docs. 26, 82-4). However, an individual holding themselves out as another's agent is not sufficient to show proper service. *Arellano v. ADA Logistics, Corp.*, No. 20-CV-00795, 2021 WL 3631140, at *1 (N.D. Tex. June 17, 2021) ("[The plaintiff] has provided only the return of service in which Ivory represented herself as an agent of Defendants. Because an individual's representations alone are not sufficient to establish that the individual is an authorized agent, the Court determines that [the plaintiff] did not effect proper service under the federal standards."). Accordingly, Plaintiff has failed to meet his burden of establishing service of Rubenstein was proper.

The same issue exists for the service of GTS. When serving a corporation, the Federal Rules allow it to be served, relevantly, "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." FED. R. CIV. P. 4(h)(1)(B). Plaintiff's proof of service shows the summons was served to Robert and states Robert identified himself as the one in charge of accepting documents and he was authorized to accept them on behalf of GTS. (Doc. 23). To the contrary, GTS provided an affidavit from Robert stating he did receive the documents from the process server but denied making any statements about being authorized to accept them. (Doc. 50-1). Further, Robert states no one at GTS has ever authorized him to accept

formal service of legal papers or court documents. *Id*. In response, Plaintiff again points to the fact that the form states Robert confirmed his authority to accept service on behalf of GTS. (Doc. 82 at 3). However, just as with an individual, when serving a corporation through a registered agent, "the individual sought to be served must have actually authorized another to accept service of process on the would-be principal's behalf." *Lisson v. ING GROEP N.V.*, 262 F. App'x 567, 569 (5th Cir. 2007). Thus, "delivery to a purported agent does not constitute service on the would-be principal, even if the 'agent' represents himself to be so authorized or accepts service." *Id*. at 570. Accordingly, Plaintiff has failed to meet his burden of establishing service of GTS was proper.

Plaintiff's remaining argument is without merit. Although GTS and Rubenstein received notice of the suit as evidenced by their participation, "actual notice is not sufficient service of process." *Ellibee v. Leonard*, 226 F. App'x 351, 357 (5th Cir. 2007). Thus, under Rule 4(m), when a plaintiff fails to properly serve a defendant, the Court has two choices—either dismiss the action without prejudice or direct that service be effected within a specified time. *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996). "The next portion of the rule qualifies the district court's choices, making an extension of time mandatory when the plaintiff shows good cause." *Id.* "If good cause does not exist, the court *may*, in its discretion, decide whether to dismiss the case without prejudice or extend time for service." *Id*. Good cause under Rule 4(m) requires at least a showing of excusable neglect, in "which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice. . . ." *Lambert v. United States*, 44 F.3d 296, 299 (5th Cir. 1995); *see also Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988) (finding that a plaintiff's *pro se* status and ignorance of the law does not constitute good cause for failure to effect service in compliance with the rules).

Here, the Court does not find Plaintiff established good cause for improper service. Plaintiff's only attempt at demonstrating good cause is that the process server made five attempts before serving Rubenstein's nanny and that Rubenstein's "evasiveness," due to a gate in front of his house, frustrated service. (Doc. 82 at 4). And Plaintiff makes no mention of GTS as it relates to good cause. Thus, good cause does not mandate an extension of time to serve, and the Court finds no reason to exercise its discretion to do so.

Accordingly, the Court **RECOMMENDS** GTS and Rubenstein's Rule 12(b)(5) Motion to Dismiss be **GRANTED**. (Doc. 81). Because dismissal under Rule 12(b)(5) is without prejudice, GTS and Rubenstein's Rule 12(b)(6) arguments for dismissal will also be considered. *See, e.g.*, *Starrett v. City of Richardson*, No. 18-CV-0191, 2018 WL 4627133, at *4 (N.D. Tex. July 27, 2018); *Coleman v. Bank of N.Y. Mellon*, 969 F. Supp. 2d 736, 746 (N.D. Tex. 2013).

### B.    Securities Exchange Act § 10(b) and Rule 10b-5

"Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the SEC may prescribe." *Macquarie Infrastructure Corp. v. Moab Partners, LP*, 601 U.S. 257, 260 (2024) (internal quotations omitted). "Rule 10b–5 implements this prohibition and makes it unlawful for issuers of registered securities to 'make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *Id*. (quoting 17 C.F.R. § 240.10b–5(b) (2022)). The Supreme Court has interpreted Section 10(b) to provide a right of action to purchasers or sellers of securities injured by its violation. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318 (2007). "But the statutes make these latter actions available, not to provide investors

with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005). Specifically, "[t]o state a claim under § 10(b) of the Securities Exchange Act and SEC Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter (a 'wrongful state of mind'); (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a 'causal connection between the material misrepresentation and the loss.'" *Mun. Employees' Ret. Syst. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019) (quoting *Dura Pharm.*, 544 U.S. at 341–42). "Section 10(b), in proscribing the use of a 'manipulative or deceptive device or contrivance,' prohibits not only material misstatements but also manipulative acts." *ASTI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d. 2007) (citing *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994)).

As it relates to GTS and Rubenstein, Plaintiff fails to assert factual allegations to meet any of the elements. While the Court appreciates GTS and Rubenstein's thoroughness in their Motion, discussing each possible theory Plaintiff *may* have tried to use to plead this claim, the Court finds it unnecessary to do so. Plaintiff fails to meet even a normal pleading standard, let alone the heightened pleading that is required here. In the Complaint, as it relates to GTS and Rubenstein, Plaintiff simply alleges GTS and Rubenstein engaged in manipulative and deceptive practices through "unauthorized trading and naked short selling, creating synthetic shares that inflated MMTLP prices, as evidenced by over 10,000 daily [fails to deliver] on FINRA's Threshold Security List from October to December 12, 2022, peaking at 215,238 shares." (Doc. 73 at 9–10).

In a typical short sale, "a person borrows stock from a broker, sells it to a buyer on the open market, and later purchases the same number of shares to return to the broker." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 377 (2016). "[S]hort selling—even in high volumes—is not, by itself, manipulative." *ATSI Comms., Inc.*, 493 F.3d at 101. "In a 'naked' short sale, by contrast, the seller has not borrowed (or otherwise obtained) the stock he puts on the market, and so never delivers the promised shares to the buyer." *Merrill Lynch*, 578 U.S. at 377. Still, "short selling, even some naked short selling, is legal." *Harrington Glob. Opportunity Fund, Ltd v. CIBC World Mkt. Corp.*, 585 F. Supp. 3d 405, 422 (S.D.N.Y. 2022)

Recently, in a similar case, a court found that a complaint making only conclusory allegations that "the short selling defendants failed to deliver stock without pointing to any specific examples" is not pleaded with enough particularity to allege a manipulative act. *Id*. This Court holds the same: "Without any specific factual allegation that [GTS or Rubenstein] failed to deliver shares following a short sale, the Complaint fails to allege that abusive naked short selling took place. Instead, it merely alleges that short selling took place at high volumes, and that naked short selling may have taken place, neither of which is, by itself, manipulative."[3] *Id*.

Further, Plaintiff wholly fails to allege scienter and reliance. In pleading scienter, Plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Mun. Employees' Ret. Sys.*, 935 F.3d at 429 (citing 15 U.S.C. § 78u-4(b)(2)(a)). In his Response, Plaintiff argues he did so by alleging GTS and Rubenstein acted "knowingly or recklessly." (Docs. 73 at 9; 82 at 7). As Plaintiff fails to allege

3. In an effort to re-write his Complaint, Plaintiff's Response argues violations of five new securities claims—Section 5, Section 9(a), Section 15(c)(1), Regulation SHO, and FINRA Rules 2010 and 3110. (Doc. 82 at 6). The Court refuses to address these new claims as they were not alleged in Plaintiff's Second Amended Complaint. (*See* Doc. 73).

any facts to support this, let alone with particularity, he did not sufficiently plead the element of scienter.

In an attempt to show he pleaded reliance, Plaintiff's Response invoked the "fraud-on-the-market" theory. (Doc. 82 at 7). "To satisfy the reliance element in § 10(b) and Rule 10b–5 securities violation action, where a plaintiff investor who may not have read or heard the purported misrepresentations, a plaintiff may employ the 'fraud-on-the-market' doctrine." *In Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 574 (S.D. Tex. 2002). "The fraud-on-the-market theory is particularly relevant where a § 10(b) and Rule 10b–5 case alleges market manipulation." *Id*. Even so, Plaintiff's Complaint discusses reliance only as it relates to non-GTS Defendants, explaining that he relied on their misrepresentations, and does not even so much as say he relied on an assumption of an efficient market free of manipulation. *ATSI Comms., Inc.*, 493 F.3d at 101 (stating that in a market manipulation case, a plaintiff must plead he "reli[ed] on an assumption of an efficient market free of manipulation").

Accordingly, the Court **RECOMMENDS** GTS and Rubenstein's Rule 12(b)(6) Motion to Dismiss as to Plaintiff's claim for violation of the Securities Exchange Act § 10(b) and Rule 10b-5 be **GRANTED** (Doc. 81) for failure to state a claim, and this claim should be **DISMISSED WITH PREJUDICE**.

## C.     Violation of Sherman Act §§ 1–2 and Clayton Act §§ 4, 7

In his Complaint, Plaintiff brings a cause of action for violations of the Sherman Act §§ 1–2 and the Clayton Act §§ 4, 7 against GTS and Rubenstein, along with NBH; NBH's CEO, McCabe; and Brda. (Doc. 73 at 11). Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C.

§ 1. To establish liability under § 1, Plaintiff must show GTS and Rubenstein "(1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 843 (5th Cir. 2015). "Unlike a contract or other combination in restraint of trade, a conspiracy violates the Sherman Act even without proof of injury because of the surreptitious, pernicious effect a conspiracy ultimately can have upon a free market. Violation of the Sherman Act is therefore not dependent on damage, although no damages can be recovered unless proved." *Multiflex, Inc. v. Samuel Moore & Co.*, 709 F.2d 980, 986 (5th Cir. 1983). "Even though a conspiracy in unreasonable restraint of trade may be proved, to justify a private suit the plaintiff must additionally demonstrate injury under the standard of section 4 of the Clayton Act, 15 U.S.C. § 15." *Id*. at 987.

In Plaintiff's Complaint, he alleges Defendants GTS, Rubenstein, NBH, Brda, and McCabe "colluded to restrain trade and monopolize the U.S. OTC energy securities market, defined as securities traded on OOTC/OTCBB platforms." (Doc. 73 at 11). Further, he provides that "GTS's unauthorized MMTLP trading, enabled by FINRA's provision of outdated 2012 [Torchlight] data coordinated with NBH, Brda, and McCabe's fraudulent misrepresentations, created synthetic shares and inflated prices by over 200% in June 2021." *Id*. at 11–12 (internal citations omitted). Plaintiff's allegations fail to state a claim for relief under § 1 of the Sherman Act. While Plaintiff does state what he believes the relevant market to be, he provides no facts to allow the Court to determine whether this may plausibly be considered a relevant geographic or cognizable product market for antitrust purposes. *Wampler v. Sw. Bell. Telephone Co.*, 597 F.3d 741, 744 (5th Cir. 2010) ("The first step in this analysis [of § 1 of the Sherman Act] is determining the relevant market, which itself is a function of the relevant product market and the relevant geographic market."); *RX Sols., Inc. v. Caremark, LLC*, No. 23-CV-100, 2025 WL

360656, at *5 (S.D. Miss. Jan. 31, 2025) ("The Amended Complaint refers to Defendants' alleged unfair monopolization of the 'prescription medication market.' But this conclusory description of the relevant market that Defendants purportedly seek to monopolize is insufficient because it does not define Plaintiff's proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, which is necessary to plead a legally sufficient product market."). As to the conspiracy element, Plaintiff simply uses the words "colluded" and "coordinated," but provides no factual allegations as to any agreement between these Defendants, including GTS and Rubenstein. (Doc. 73 at 11). And even so, "[t]he primary purpose of section 1 is to prevent the diminution of competition in the marketing of goods and services, the sale of stock of a single company within the context of a takeover battle for that one company does not fall within this definition." *Kalmanovitz v. G. Heileman Brewing Co., Inc.*, 769 F.2d 152, 156 (3d Cir. 1985).

Section 2 of the Sherman Act makes it unlawful for any person or firm to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. A conspiracy to monopolize requires Plaintiff to establish four elements: "(1) the existence of specific intent to monopolize; (2) the existence of a combination or conspiracy to achieve that end; (3) overt acts in furtherance of the combination or conspiracy; and (4) an effect upon a substantial amount of interstate commerce." *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.*, 200 F.3d 307, 316 (5th Cir. 2000). "A private sector suit for such damages is subject to the requirements set forth in section 4 of the Clayton Act, 15 U.S.C. § 15, just as is a section 1 claim." *Multiflex, Inc.*, 709 F.2d at 990. Plaintiff's Sherman Act § 2 claims fail, just as his § 1 claim. Plaintiff provides nothing more than what the Court discussed above, which falls

14

far short of the allegations needed to sustain a § 2 claim. Further, Plaintiff's Response does not discuss § 2 at all, so the Court has no basis to allow this claim to proceed.

"Section 7 of the Clayton Act prohibits a corporation from acquiring the stock or assets of another corporation 'in any line of commerce' in which the effect 'may be substantially to lessen competition, or to tend to create a monopoly.'" *Assoc. of Taxicab Operators, USA v. Yellow Checker Cab Co. of Dall./Fort Worth, Inc.*, 910 F. Supp. 2d 971, 976 (N.D. Tex. Nov. 28, 2012) (quoting 15 U.S.C. § 18). "Section 7 of the Act proscribes mergers whose effect may be substantially to lessen competition, or to tend to create a monopoly." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 485 (1977) (internal quotations omitted). "Section 4, in contrast, . . . provides treble damages to '(a)ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws.'" *Id.* (quoting 15 U.S.C. § 15(a)). Again, Plaintiff's Complaint makes a conclusory statement that these Defendants colluded to monopolize the U.S. OTC energy securities market, but without more, Plaintiff does not come close to alleging a § 7 violation. (Doc. 73 at 11). And without sufficiently pleading an antitrust claim, Plaintiff also cannot recover damages under § 4 of the Clayton Act.

Finally, Plaintiff is unable to make a claim for an antitrust suit because he does not plead an antitrust injury. As the Supreme Court has explained, "Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Brunswick*, 429 U.S. at 489. Plaintiff alleges the market manipulation, consisting in part of "GTS's unauthorized MMTLP trading" caused Plaintiff's economic losses, which constitutes an antitrust injury. (Doc. 73 at 12). However, based on the facts he pleaded, Plaintiff's injury is not

"attributable to an anti-competitive aspect of the practice under scrutiny." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990).

Accordingly, the Court **RECOMMENDS** GTS and Rubenstein's Rule 12(b)(6) Motion to Dismiss as to Plaintiff's claims for a violation of Sherman Act §§ 1–2 and Clayton Act §§ 4, 7 be **GRANTED** (Doc. 81) and these claims should be **DISMISSED WITH PREJUDICE**.

### D.    Negligence

In his Complaint, Plaintiff alleges GTS and Rubenstein owed Plaintiff a duty to act with reasonable care in securities transactions, GTS and Rubenstein breached that duty by engaging in fraudulent trading and creating synthetic shares, which caused economic harm. (Doc. 73 at 13). However, as GTS and Rubenstein pointed out, market makers and their executives do not owe investors a duty of care. *Spicer v. Chi. Bd. Options Exch., Inc.*, No. 88-C-2139, 1990 WL 172712, at *16 (N.D. Ill. Oct. 30, 1990) ("But although they are subject to suit, exchanges and clearinghouses, and members and market makers, should not, as a general rule, be exposed to liability for negligence or simple errors of judgment."); *Weatherly v. Pershing, LLC*, No. 14-CV-0366, 2015 WL 13742270, at *3 (N.D. Tex. June 23, 2015) (citing both Texas and Florida case law). Plaintiff cites no authority in rebuttal. And even if GTS and Rubenstein did owe Plaintiff a duty of care, the Complaint still fails to allege sufficient facts that they breached that duty and the breach caused Plaintiff's damages.

Accordingly, the Court **RECOMMENDS** GTS and Rubenstein's Rule 12(b)(6) Motion to Dismiss as to Plaintiff's claim for negligence be **GRANTED** (Doc. 81), and this claim should be **DISMISSED WITH PREJUDICE**.

### E.    Aiding and Abetting Fraud

16

Plaintiff brings a cause of action for aiding and abetting fraud against only GTS and Rubenstein. (Doc. 73 at 13). But, as GTS and Rubenstein argue, under Texas law, this is not a recognized claim. *In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 781 (5th Cir. 2018); *Taya Agric. Feed Mill Co. v. Byishimo*, No. 21-3088, 2022 WL 103557, at *4 (S.D. Tex. Jan. 11, 2022). In opposition, Plaintiff simply argues the Court should be applying Florida law to Rubenstein. (Doc. 82 at 10). Even if the Court applied Florida law, the outcome would be the same. Florida courts "presume[] that a tort claim for aiding and abetting fraud has three elements: (1) the existence of an underlying fraud; (2) that the defendant had knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the commission of the fraud." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1097–98 (11th Cir. 2017). However, Plaintiff makes no mention in his Complaint or Response what the underlying fraud is supposed to be for this claim or how Rubenstein had any knowledge of it. Thus, under both Texas and Florida law, Plaintiff fails to state claim for aiding and abetting fraud.

Accordingly, the Court **RECOMMENDS** GTS and Rubenstein's Rule 12(b)(6) Motion to Dismiss as to Plaintiff's aiding and abetting fraud claim be **GRANTED** (Doc. 81), and this claim should be **DISMISSED WITH PREJUDICE**.

### F.    Unjust Enrichment

Finally, Plaintiff seeks to bring an unjust enrichment claim against GTS and Rubenstein for unjustly profiting from engaging in fraudulent trading. (Doc. 73 at 14). But, under Texas law, unjust enrichment is not an independent cause of action; it is merely a theory of recovery. *In re Primera Energy, LLC*, 579 B.R. 75, 183 (Bankr. W.D. Tex. 2017); *Llort v. BMW of N. Am., LLC*, No. 20-CV-94, 2020 WL 2928472, at *10 (W.D. Tex. June 2, 2020). Because the Court has found Plaintiff's only substantive claims fail to state a cause of action, Plaintiff has no

underlying claim to tether his unjust enrichment claim to. Even if the Court were to look to Florida law, which recognizes an unjust enrichment claim, Plaintiff has failed to plead any facts to establish such a claim. *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017) ("To bring an unjust enrichment claim, a plaintiff must allege that: (1) plaintiff conferred a benefit on the defendant; (2) defendant voluntarily accepted and retained the benefit; and (3) it would be inequitable for defendant to retain the benefit without paying the value of the benefit to plaintiff.").

Accordingly, the Court **RECOMMENDS** GTS and Rubenstein's Rule 12(b)(6) Motion to Dismiss as to Plaintiff's unjust enrichment claim be **GRANTED** (Doc. 81), and this claim should be **DISMISSED WITH PREJUDICE**.

## IV.    RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** GTS and Rubenstein's Rule 12(b)(5) and Rule 12(b)(6) Motions to Dismiss Plaintiff's Second Amended Complaint be **GRANTED**. (Doc. 81). Because Plaintiff failed to state a claim for relief, the Court **RECOMMENDS** Plaintiff's claims as to GTS and Rubenstein for a violation of the Securities Exchange Act § 10(b) and Rule 10b-5; a violation of Sherman Act §§ 1–2 and Clayton Act §§ 4, 7; negligence; aiding and abetting fraud; and unjust enrichment be **DISMISSED WITH PREJUDICE**.

SIGNED this 19th day of December, 2025.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).