IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| CONTIQUE WILLCOT,<br>　　*Plaintiff*, | §<br>§<br>§ |
| v. | § § § MO:24-CV-00317-DC-RCG |
| SECURITIES & EXCHANGE COMMISSION; FINANCIAL INDUSTRY REGULATORY AUTHORITY; GTS SECURITIES LLC; NEXT BRIDGE HYDROCARBONS, INC.; JOHN BRDA; GREGORY MCCABE; and ARI RUBENSTEIN;<br>　　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendant Next Bridge Hydrocarbons Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 83).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the relevant case law, the Court **RECOMMENDS** Next Bridge Hydrocarbons Inc.'s Motion to Dismiss be **GRANTED**. (Doc. 83).

### I.   BACKGROUND

Plaintiff Contique Willcot ("Plaintiff"), proceeding *pro se*, filed his Original Complaint in this Court on December 6, 2024. (Doc. 1). Plaintiff amended his Complaint once as a matter of right and a second time with leave of Court. (Docs. 3, 73). Plaintiff's Second Amended Complaint bring claims against seven Defendants—Securities and Exchange Commission ("the Commission"); Financial Industry Regulatory Authority ("FINRA"); GTS Securities, LLC

---

1. All citations are to CM/ECF generated pagination unless otherwise noted.

("GTS"); Ari Rubenstein ("Rubenstein"); Next Bridge Hydrocarbons, Inc. ("NBH"); John Brda ("Brda"); and Gregory McCabe ("McCabe").

The relevant factual allegations in Plaintiff's Complaint are as follows. In June 2021, Metamaterials, Inc. and Torchlight Energy Resources, Inc. ("Torchlight") merged to form Meta Materials, Inc. ("MMAT shares"), creating Series A Preferred shares ("MMTLP shares"). *Id*. at 5–6. In the merger, Torchlight shareholders received ½ MMAT share and 1 MMTLP share for each Torchlight share—Plaintiff ended up with 591 MMAT shares and 1,182 MMTLP shares. *Id*. at 6. Plaintiff alleges MMTLP shares were not intended to be tradeable. *Id*.

Beginning in October 2021, MMTLP shares were traded on the over-the-counter market. *Id*. at 6. During this time, Plaintiff alleges GTS traded MMTLP on the over-the-counter market, creating synthetic shares and enabling naked short selling and inflating prices during Plaintiff's purchases. *Id*. Plaintiff asserts NBH, Brda, and McCabe's misrepresentations regarding Torchlight's asset valuations induced investor reliance. *Id*. at 10. And by December 2022, Plaintiff alleges he held 26,100 MMTLP shares. *Id*. at 5.

On December 9, 2022, FINRA halted trading of MMTLP shares, citing "settlement uncertainty." *Id*. at 7. FINRA's U3 trading halt was abrupt and done without proper notice to investors, meaning shareholders were unable to sell their positions prior to the halt. *Id*. Plaintiff alleges the halt locked "Plaintiff and 65,000 investors out of a short squeeze with potential sales at $100,000–$200,000 per share, causing $65,250,000–$130,500,000 in losses." *Id*. Then, on December 13, 2022, MMTLP shares were exchanged on a one-to-one basis for shares of NBH, which is not publicly traded. *Id*. at 8. Accordingly, many shareholders have been unable to trade their NBH shares.

Plaintiff brings four causes of action against NBH: (1) violation of the Securities Exchange Act § 10(b) and Rule 10b-5; (2) violations of the Sherman Act §§ 1–2 and Clayton Act §§ 4, 7; (3) negligence, and (4) unjust enrichment. (Doc. 73 at 9–14). On July 1, 2025, NBH filed a Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 83). Plaintiff and NBH filed their respective Response and Reply. (Docs. 87, 91). Accordingly, this matter is ripe for disposition.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn

3

inferences to support every material point necessary to sustain recovery.") (internal quotation marks and citations omitted).

In a court's review of a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions."). "Although dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017).

### B. Rule 9(b)

Securities Exchange Act § 10(b) and Rule 10b-5 provides a remedy only for those victimized by securities fraud. "Fraud claims are subject to the heightened pleading standard of Rule 9(b), under which 'a party must state with particularity the circumstances constituting fraud.'" *Poe v. Bock*, No. EP-CV-17-00232, 2018 WL 4677901, at *2 (W.D. Tex. June 11, 2018) (quoting FED. R. CIV. P. 9(b)), *R. & R. adopted*, 2018 WL 4275839 (W.D. Tex. Sept. 7, 2018). The Fifth Circuit has interpreted this to mean a plaintiff "must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and

4

explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Stated differently, "[a] claim of fraud must allege the 'who, what, when, and where.'" *Big Thirst, Inc. v. Donoho*, 657 F. Supp. 3d 914, 924 (W.D. Tex. 2023) (quoting *Williams*, 112 F.3d at 178). Further, in securities fraud suits, the Private Securities Litigation Reform Act "reinforces the particularity requirements of Rule 9(b), requiring the plaintiffs to state not only the time, place, the identity of the speaker, and the content of the alleged misrepresentation, but also to explain why the challenged statement or omission is false or misleading. The PSLRA *also* requires that the complaint 'with respect to *each* act or omission alleged' to be false or misleading 'state with *particularity facts* giving rise to a *strong* inference that *the defendant* acted with the required state of mind.'" *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362–63 (5th Cir. 2004) (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

### III. DISCUSSION

#### A. Securities Exchange Act § 10(b) and Rule 10b-5

"Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the SEC may prescribe." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260 (2024) (internal quotations omitted). "Rule 10b–5 implements this prohibition and makes it unlawful for issuers of registered securities to 'make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *Id.* (quoting 17 C.F.R. § 240.10b-5(b) (2022)). The Supreme Court has interpreted Section 10(b) to provide a right of action to purchasers or sellers of securities injured by its violation. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

308, 318 (2007). "But the statutes make these latter actions available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

### i. Standing

In its Motion to Dismiss, NBH first argues Plaintiff failed to establish statutory standing for his § 10(b) and Rule 10b-5 claim. (Doc. 83 at 11). NBH argues Plaintiff is a mere holder of MMTLP securities and has not purchased or sold his shares as it relates to NBH's conduct, which negates his standing to bring this claim. *Id*. at 11–12. In contrast, Plaintiff argues his Complaint alleges he purchased 26,100 MMTLP shares between January and September 2022, which satisfies the purchaser-seller requirement to have standing. (Doc. 87 at 4). However, NBH points out in its Reply that the only "misrepresentations" made by NBH that Plaintiff says he relied on were made after September 2022, so there can be no connection between the NBH statements and Plaintiff purchasing or selling his shares. (Doc. 91 at 3).

The Court must address a relevant discrepancy in the facts here. As mentioned above, Plaintiff's Response provides he "purchased 26,100 MMTLP shares between January and September 2022, documented by Fidelity and TD Ameritrade statements." (Doc. 87 at 4). But Plaintiff's Complaint alleges:

> Plaintiff held 26,100 MMTLP shares by December 2022, including 25,413 shares via Fidelity (1,182 from [Torchlight] merger, 22,920 purchased Jan-Mar 2022, 1,314 sold Mar 2022, *2,625 purchased Apr-Dec 2022*) and 687 shares via TD Ameritrade (21 purchased Apr 2022, 666 purchased Sep 2022), documented by brokerage statements (ECF No. 32, Exs. V, W, Ex. AE[2]).

---

2. The Court notes it cannot locate an Exhibit AE on the docket sheet.

(Doc. 73 at 5) (emphasis added). Then, looking at Exhibit V[3] that Plaintiff cites to, it appears Plaintiff's last purchase or sale of shares related to Meta Materials occurred in October 2022. (Doc. 32-25 at 11). While the Court is required to take the factual allegations in the Complaint as true, Plaintiff's own exhibit directly contradicts it. *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (stating that when exhibits are included in the pleadings, they should only be adopted over the factual allegations in the Complaint if they "blatantly contradict" those allegations"). Accordingly, the Court will use October 31, 2022, as the date of Plaintiff's last purchase or sale of a security relevant to this action. *Id*.

The Supreme Court has held that a plaintiff may only bring a private damage action under § 10(b) and Rule 10b-5 as an actual purchaser or seller of securities, as opposed to a mere holder. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730 (1975); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 79 (2006) (explaining the Court treats this as a statutory standing requirement). One justification for this is that "a putative plaintiff, who neither purchases nor sells securities but sues instead for intangible economic injury such as loss of a noncontractual opportunity to buy or sell, is more likely to be seeking a largely conjectural and speculative recovery in which the number of shares involved will depend on the plaintiff's subjective hypothesis." *Blue Chip Stamps*, 421 U.S. at 734. The Court further reasoned that a

---

3. "When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). This includes "documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)). Here, the Court finds considering Exhibit V (Doc. 32-25) is proper in deciding the Motion to Dismiss as Plaintiff has filed it within this case previously and Plaintiff cites to and references it in both his Complaint and Response. (Docs. 73 at 5; 87 at 4).

7

contract to purchase or sell a security can be voidable under § 10(b) at the option of the deceived party, but this principle is absent if there is no actual purchase or sale of securities. *Id*. at 735.

Here, Plaintiff does not plead that he purchased or sold his shares in any way that relates to conduct by NBH. Plaintiff argues he satisfies the purchaser-seller requirement because he executed actual purchases. (Doc. 87 at 4–5) (citing Ex. V). Plaintiff goes on to state his Complaint ties these purchases to NBH's misrepresentations about Torchlight's asset valuations and MMTLP's purpose, which induced his reliance. *Id*. at 5. Plaintiff appears to say NBH's misrepresentations which Plaintiff relied on can be found within four documents—NBH's Form 8-K (filed March 21, 2025), MMAT Form 8-K (filed July 20, 2023), NBH press release (filed December 20, 2022), and NBH Prospectus (filed November 9, 2022). *Id*. The problem with this argument is Plaintiff's last purchase of shares was in October 2022, and these documents did not exist at that time.[4] Thus, Plaintiff points to nothing regarding NBH's conduct that induced his reliance to purchase any securities, meaning Plaintiff does not have standing to bring this claim against NBH.

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's claim for violation of the Securities Exchange Act § 10(b) and Rule 10b-5 be **GRANTED** (Doc. 83) for lack of standing, and this claim should be **DISMISSED WITH PREJUDICE**.

    ii.    **Failure to State a Claim**

Because Plaintiff could not establish standing as to his § 10(b) and Rule 10b-5 claim, he also necessarily did not sufficiently plead the claim. "To state a claim under § 10(b) of the Securities Exchange Act and SEC Rule 10b-5, a plaintiff must allege: (1) a material

---

4. While Plaintiff does not seem to make such an argument, to the extent Plaintiff relies on the exchange of shares following the spin-off of NBH from MMAT, this does not constitute a purchase or sale of securities. *Targgart v. Next Bridge Hydrocarbons*, 790 F. Supp. 3d 520, 525 (N.D. Tex. 2025) (stating that "receiving shares in a distribution does not confer standing").

misrepresentation or omission; (2) scienter (a 'wrongful state of mind'); (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a 'causal connection between the material misrepresentation and the loss.'" *Mun. Employees' Ret. Syst. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019) (quoting *Dura Pharm.*, 544 U.S. at 341–42). In pleading scienter, Plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id*. (citing 15 U.S.C. § 78u-4(b)(2)(a)).

Plaintiff fails to allege factual allegations to meet most, if not all, of the elements. To start, Plaintiff's allegation of a material misrepresentation is entirely too conclusory. Plaintiff simply repeats throughout his Complaint that NBH, Brda, and McCabe made misrepresentations regarding Torchlight's asset valuations and MMTLP's purpose, which induced investor reliance. (Doc. 73 at 10, 11, 13). This would not suffice a normal pleading standard, let alone the heightened pleading that is required here. Further, in an attempt to show a connection with the purchase of a security and a reliance on the misrepresentation, Plaintiff again points to statements NBH put out after Plaintiff last purchased an MMTLP security. *Id*.; (Doc. 87 at 5). Finally, the Complaint alleges nothing to establish a strong inference that NBH intended to "deceive, manipulate, or defraud" Plaintiff. *Tellabs*, 551 U.S. at 319 ("To establish liability under § 10(b) and Rule 10b–5, a private plaintiff must prove that the defendant acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud.").

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's claim for violation of the Securities Exchange Act § 10(b) and Rule 10b-5 be **GRANTED** (Doc. 83) for failure to state a claim, and this claim should be **DISMISSED WITH PREJUDICE**.

    **B.**    **Violation of Sherman Act §§ 1–2 and Clayton Act §§ 4, 7**

In his Complaint, Plaintiff brings a cause of action for a violation of the Sherman Act §§ 1–2 and the Clayton Act §§ 4, 7 against NBH, along with NBH's CEO, McCabe; Brda; GTS; and GTS's CEO, Rubenstein. (Doc. 73 at 11). Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. To establish liability under § 1, Plaintiff must show that NBH "(1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 843 (5th Cir. 2015). "Unlike a contract or other combination in restraint of trade, a conspiracy violates the Sherman Act even without proof of injury because of the surreptitious, pernicious effect a conspiracy ultimately can have upon a free market. Violation of the Sherman Act is therefore not dependent on damage, although no damages can be recovered unless proved." *Multiflex, Inc. v. Samuel Moore & Co.*, 709 F.2d 980, 986 (5th Cir. 1983). "Even though a conspiracy in unreasonable restraint of trade may be proved, to justify a private suit the plaintiff must additionally demonstrate injury under the standard of section 4 of the Clayton Act, 15 U.S.C. § 15." *Id.* at 987.

In Plaintiff's Complaint, he alleges Defendants GTS, Rubenstein, NBH, Brda, and McCabe "colluded to restrain trade and monopolize the U.S. OTC energy securities market, defined as securities traded on OOTC/OTCBB platforms." (Doc. 73 at 11). Further, he provides that "GTS's unauthorized MMTLP trading, enabled by FINRA's provision of outdated 2012 [Torchlight] data coordinated with NBH, Brda, and McCabe's fraudulent misrepresentations, created synthetic shares and inflated prices by over 200% in June 2021." *Id.* at 11–12 (internal citations omitted). Plaintiff's allegations fail to state a claim for relief under § 1 of the Sherman Act. While Plaintiff does state what he believes the relevant market to be, he provides no facts to

allow the Court to determine whether this may plausibly be considered a relevant geographic or cognizable product market for antitrust purposes. *Wampler v. Sw. Bell. Telephone Co.*, 597 F.3d 741, 744 (5th Cir. 2010) ("The first step in this analysis [of § 1 of the Sherman Act] is determining the relevant market, which itself is a function of the relevant product market and the relevant geographic market."); *RX Sols., Inc. v. Caremark, LLC*, No. 23-CV-100, 2025 WL 360656, at *5 (S.D. Miss. Jan. 31, 2025) ("The Amended Complaint refers to Defendants' alleged unfair monopolization of the 'prescription medication market.' But this conclusory description of the relevant market that Defendants purportedly seek to monopolize is insufficient because it does not define Plaintiff's proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, which is necessary to plead a legally sufficient product market."). As to the conspiracy element, Plaintiff simply uses the words "colluded" and "coordinated," but provides no factual allegations as to any agreement between these Defendants, including NBH. And even so, "[t]he primary purpose of section 1 is to prevent the diminution of competition in the marketing of goods and services, the sale of stock of a single company within the context of a takeover battle for that one company does not fall within this definition." *Kalmanovitz v. G. Heileman Brewing Co., Inc.*, 769 F.2d 152, 156 (3d Cir. 1985).

      Section 2 of the Sherman Act makes it unlawful for any person or firm to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. A conspiracy to monopolize requires Plaintiff to establish four elements: "(1) the existence of specific intent to monopolize; (2) the existence of a combination or conspiracy to achieve that end; (3) overt acts in furtherance of the combination or conspiracy; and (4) an effect upon a

substantial amount of interstate commerce." *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.*, 200 F.3d 307, 316 (5th Cir. 2000). "A private sector suit for such damages is subject to the requirements set forth in section 4 of the Clayton Act, 15 U.S.C. § 15, just as is a section 1 claim." *Multiflex, Inc.*, 709 F.2d at 990. Plaintiff's Sherman Act § 2 claims fail, just as his § 1 claim did. Plaintiff provides nothing more than what the Court discussed above, which falls far short of the allegations needed to sustain a § 2 claim. Further, Plaintiff's Response does not discuss § 2 at all, so the Court has no basis to allow this claim to proceed.

"Section 7 of the Clayton Act prohibits a corporation from acquiring the stock or assets of another corporation 'in any line of commerce' in which the effect 'may be substantially to lessen competition, or to tend to create a monopoly.'" *Assoc. of Taxicab Operators, USA v. Yellow Checker Cab Co. of Dall./Fort Worth, Inc.*, 910 F. Supp. 2d 971, 976 (N.D. Tex. Nov. 28, 2012) (quoting 15 U.S.C. § 18). "Section 7 of the Act proscribes mergers whose effect may be substantially to lessen competition, or to tend to create a monopoly." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 485 (1977) (internal quotations omitted). "Section 4, in contrast, . . . provides treble damages to '(a)ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws.'" *Id*. (quoting 15 U.S.C. § 15(a)). Again, Plaintiff's Complaint makes a conclusory statement that these Defendants colluded to monopolize the U.S. OTC energy securities market, but without more, Plaintiff does not come close to alleging a § 7 violation. (Doc. 73 at 11). And without sufficiently pleading an antitrust claim, Plaintiff also cannot recover damages under § 4 of the Clayton Act.

Finally, Plaintiff is unable to make a claim for an antitrust suit because he does not plead an antitrust injury. As the Supreme Court has explained, "Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from

that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Brunswick*, 429 U.S. at 489. Plaintiff alleges the market manipulation, consisting in part of NBH's "fraudulent misrepresentations," caused Plaintiff's economic losses, which constitutes an antitrust injury. (Doc. 73 at 12). However, based on the facts he pleaded, Plaintiff's injury is not "attributable to an anti-competitive aspect of the practice under scrutiny." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990).

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's claims for a violation of Sherman Act §§ 1–2 and Clayton Act §§ 4, 7 be **GRANTED** (Doc. 83) and these claims should be **DISMISSED WITH PREJUDICE**.

### C. Negligence

In his Complaint, Plaintiff alleges NBH owed Plaintiff a duty to act with reasonable care in securities transactions, NBH breached that duty by misrepresenting Torchlight and NBH's asset valuations, which caused economic harm. (Doc. 73 at 13). NBH pushes back, arguing that a negligent act cannot be the basis for securities fraud violations and, even if it could be, Plaintiff provides no authority or fact to support that NBH owed Plaintiff a duty and breached that duty. (Doc. 83 at 18). The Court agrees with NBH as to Plaintiff's failure to allege the elements of negligence. Plaintiff provides no support for his argument that NBH owed a duty of care to Plaintiff. *Hill v. Pepper Hamilton LLP*, No. 17-CV-021, 2017 WL 10841216, at *6 (W.D. Tex. May 31, 2017) ("[The plaintiff] fails to allege that [the defendant] owed him any legal duty, nor does he allege any facts from which the Court could infer that [the defendant] owed [the plaintiff] a legal duty."). Further, Plaintiff makes no factual allegations as to how NBH's "misrepresentations" *caused* Plaintiff's $65,250,000–$130,500,000 loss.

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's claim for negligence be **GRANTED** (Doc. 83), and this claim should be **DISMISSED WITH PREJUDICE**.

### D.     Unjust Enrichment

In his Complaint, Plaintiff seeks to bring an unjust enrichment claim against NBH for unjustly profiting from misrepresentations it made. (Doc. 73 at 14). But unjust enrichment is not an independent cause of action; it is merely a theory of recovery. *In re Primera Energy, LLC*, 579 B.R. 75, 183 (Bankr. W.D. Tex. 2017); *Llort v. BMW of N. Am., LLC*, No. 20-CV-94, 2020 WL 2928472, at *10 (W.D. Tex. June 2, 2020). Because the Court has found Plaintiff's only substantive claims fail to state a cause of action, Plaintiff has no underlying claim to tether his unjust enrichment claim to.

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's unjust enrichment claim be **GRANTED** (Doc. 83), and this claim should be **DISMISSED WITH PREJUDICE**.

### IV.     RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** NBH's Motion to Dismiss Plaintiff's Second Amended Complaint under 12(b)(6) be **GRANTED**. (Doc. 83). Further, the Court **RECOMMENDS** Plaintiff's claims as to NBH for a violation of the Securities Exchange Act § 10(b) and Rule 10b-5; a violation of Sherman Act §§ 1–2 and Clayton Act §§ 4, 7; negligence; and unjust enrichment be **DISMISSED WITH PREJUDICE**.

SIGNED this 19th day of December, 2025.

                                            RONALD C. GRIFFIN
                                            UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party *has not been served* by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).