IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| CONTIQUE WILLCOT,<br>    *Plaintiff*,<br><br>v.<br><br>SECURITIES & EXCHANGE COMMISSION; FINANCIAL INDUSTRY REGULATORY AUTHORITY; GTS SECURITIES LLC; NEXT BRIDGE HYDROCARBONS, INC.; JOHN BRDA; GREGORY MCCABE; and ARI RUBENSTEIN;<br>    *Defendants*. | MO:24-CV-00317-DC-RCG |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendant Securities and Exchange Commission's Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 93).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the relevant case law, the Court **RECOMMENDS** the Securities and Exchange Commission's Motion to Dismiss be **GRANTED**. (Doc. 93).

### I. BACKGROUND

Plaintiff Contique Willcot ("Plaintiff"), proceeding *pro se*, filed his Original Complaint in this Court on December 6, 2024. (Doc. 1). Plaintiff amended his Complaint once as a matter of right and a second time with leave of Court. (Docs. 3, 73). Plaintiff's Second Amended Complaint bring claims against seven Defendants—Securities and Exchange Commission ("the Commission"); Financial Industry Regulatory Authority ("FINRA"); GTS Securities, LLC

---

[1]. All citations are to CM/ECF generated pagination unless otherwise noted.

("GTS"); Ari Rubenstein ("Rubenstein"); Next Bridge Hydrocarbons, Inc. ("NBH"); John Brda ("Brda"); and Gregory McCabe ("McCabe").

The relevant factual allegations in Plaintiff's Complaint are as follows. In June 2021, Metamaterials, Inc. and Torchlight Energy Resources, Inc. ("TRCH") merged to form Meta Materials, Inc. ("MMAT shares"), creating Series A Preferred shares ("MMTLP shares"). *Id*. at 5–6. In the merger, TRCH shareholders received ½ MMAT share and 1 MMTLP share for each TRCH share—Plaintiff ended up with 591 MMAT shares and 1,182 MMTLP shares. *Id*. at 6. Plaintiff alleges MMTLP shares were not intended to be tradeable. *Id*.

Beginning in October 2021, MMTLP shares were traded on the over-the-counter market. *Id*. at 6. During this time, Plaintiff alleges GTS traded MMTLP on the over-the-counter market, creating synthetic shares and enabling naked short selling and inflating prices during Plaintiff's purchases. *Id*. Plaintiff asserts that NBH, Brda, and McCabe's misrepresentations regarding TRCH's asset valuations induced investor reliance. *Id*. at 10. And by December 2022, Plaintiff alleges he held 26,100 MMTLP shares. *Id*. at 5.

On December 9, 2022, FINRA halted trading of MMTLP shares, citing "settlement uncertainty." *Id*. at 7. FINRA's U3 trading halt was abrupt and done without proper notice to investors, meaning shareholders were unable to sell their positions prior to the halt. *Id*. Plaintiff alleges the halt locked "Plaintiff and 65,000 investors out of a short squeeze with potential sales at $100,000–$200,000 per share, causing $65,250,000–$130,500,000 in losses." *Id*. Then, on December 13, 2022, MMTLP shares were exchanged on a one-to-one basis for shares of NBH, which is not publicly traded. *Id*. at 8. Accordingly, many shareholders have been unable to trade their NBH shares.

As to the Commission's liability, Plaintiff alleges that on July 12, 2019, Jeffrey Davies emailed Commission officials warning of TRCH fraud ("2019 email"), including stock price spikes and Brda's manipulation. *Id*. at 7. Plaintiff alleges that because the Commission received this email and 246 other complaints by September 2023, the Commission had a non-discretionary duty to act on the alleged fraud. *Id*. Plaintiff also make reference to payments made to Professor James J. Angel and congressional meetings that occurred in 2021 and 2022, providing those events "suggest bias, undermining the SEC's investor protection mandate."[2] *Id*. at 8.

Plaintiff brings three causes of action against the Commission: (1) violation of the Securities Exchange Act § 10(b) and Rule 10b-5, (2) negligence, and (3) a declaratory judgment.[3] (Doc. 73 at 9–14). On July 14, 2025, the Commission filed a Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 93). Plaintiff and the Commission filed their respective Response and Reply. (Docs. 103, 107). Accordingly, this matter is ripe for disposition.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for "lack of subject-matter jurisdiction." Under Rule 12(b)(1), "[l]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts

---

2. Without any other information provided, the Court cannot make sense of this allegation regarding Professor Angel and the congressional meetings.

3. Plaintiff's Response to the Commission's Motion to Dismiss argues he sufficiently states an antitrust violation under the Sherman Act § 1-2 against the Commission. (Doc. 103 at 12). However, Plaintiff's Second Amended Complaint does not bring such a claim against the Commission (*See* Doc. 73 at 11), so the Court will not address it (Doc. 107 at 10 n.13).

plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. Furthermore, when a Rule 12(b)(1) motion is accompanied by the filing of another Rule 12 motion, the former should be considered before addressing attacks on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161.

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual

4

allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery.") (internal quotation marks and citations omitted).

In a court's review of a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions."). "Although dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017).

### C. Rule 9(b)

Securities Exchange Act § 10(b) and Rule 10b-5 provides a remedy only for those victimized by securities fraud. "Fraud claims are subject to the heightened pleading standard of

Rule 9(b), under which 'a party must state with particularity the circumstances constituting fraud.'" *Poe v. Bock*, No. CV-17-00232, 2018 WL 4677901, at *2 (W.D. Tex. June 11, 2018) (quoting FED. R. CIV. P. 9(b)), *R. & R. adopted*, 2018 WL 4275839 (W.D. Tex. Sept. 7, 2018). The Fifth Circuit has interpreted this to mean a plaintiff "must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Stated differently, "[a] claim of fraud must allege the 'who, what, when, and where.'" *Big Thirst, Inc. v. Donoho*, 657 F. Supp. 3d 914, 924 (W.D. Tex. 2023) (quoting *Williams*, 112 F.3d at 178). Further, in securities fraud suits, the Private Securities Litigation Reform Act ("PSLRA") "reinforces the particularity requirements of Rule 9(b), requiring the plaintiffs to state not only the time, place, the identity of the speaker, and the content of the alleged misrepresentation, but also to explain why the challenged statement or omission is false or misleading. The PSLRA *also* requires that the complaint 'with respect to *each* act or omission alleged' to be false or misleading 'state with *particularity facts* giving rise to a *strong* inference that *the defendant* acted with the required state of mind.'" *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362–63 (5th Cir. 2004) (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

### III.  DISCUSSION

**A.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

The Commission argues this Court lacks subject matter jurisdiction over Plaintiff's claims against the Commission because Plaintiff does not have standing to bring his claims and, separately, sovereign immunity bars his claims. (Doc. 93 at 11). The Court will address each in turn.

**i.  Standing**

Article III of the United States Constitution limits federal courts' jurisdiction to cases and controversies. U.S. CONST. art. III § 2. "Among other things, that limitation requires a plaintiff to have standing." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295 (2022). "The requisite elements of Article III standing are well established: A plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Id*. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). To meet the first element, the injury suffered must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). The traceability or causation requirement "does not require a party to establish proximate causation, but only requires that the injury be 'fairly traceable' to the defendant." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011) (citing *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997)). Finally, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.*, 528 U.S. at 181.

The Commission argues Plaintiff cannot establish the second and third elements of standing: traceability and redressability. (Doc. 93 at 12–14). The Commission explains that any link between its alleged failure to regulate third parties and Plaintiff's monetary damage years later is too speculative to show a causal connection. *Id*. at 12–13. Further, Plaintiff's only collectible relief—a declaration that the Commission breached its obligations to protect Plaintiff—would not redress any harms Plaintiff endured. *Id*. at 13. On the flip side, Plaintiff argues the Commission's inaction on the 2019 email resulted in predictable harm and a favorable ruling for Plaintiff—including damages, declarations, and injunctions—would redress this harm and prevent future harm. (Doc. 103 at 9–10). The Court agrees with the Commission.

7

Recently, the Supreme Court explained that "when (as here) a plaintiff challenges the government's 'unlawful regulation (or lack of regulation) of someone else,' 'standing is not precluded, but it is ordinarily substantially more difficult to establish.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) (quoting *Lujan*, 504 U.S. at 562). This is "often because unregulated parties may have more difficulty establishing causation—that is, linking their asserted injuries to the government's regulation (or lack of regulation) of someone else." *Id*. "When the plaintiff is an unregulated party, causation ordinarily hinges on the response of the regulated (or regulable) third party to the government action or inaction . . . ." *Id*. at 383 (quoting *Lujan*, 504 U.S. at 562) (internal quotations omitted). "Yet the Court has said that plaintiffs attempting to show causation generally cannot 'rely on speculation about the unfettered choices made by independent actors not before the courts.'" *Id*. (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 (2013)). However, this is exactly what Plaintiff has done here as it relates to the Commission.

Plaintiff alleges he suffered financial harm in the amount of at least $65,000,000 in 2022 due to alleged fraud perpetrated by Brda and McCabe. (Doc. 73). To establish causation, Plaintiff claims the Commission was aware of this fraud in 2019 based on one email it received from a concerned individual and took no action. *Id*. The link between these two events is far too attenuated to satisfy the second element of standing and create a casual connection. The Commission explains this:

> Even if the SEC had investigated the issues raised in the 2019 email soon after receiving the email, it is unknown whether, and if so when, it would have decided to bring an enforcement action and what relief it would have sought. Even if the Commission would have brought an enforcement action, a court would have needed to rule in the Commission's favor. Even if a court ruled in the Commission's favor, the court would have needed to enjoin the fraud or order recompense for monetary losses.

8

(Doc. 93 at 13). To establish causation here, the Court would need to "rely on speculation about the unfettered choices made by independent actors not before" it. *All. for Hippocratic Med.*, 602 U.S. at 383. The Court is unwilling to do so. *Id*. (holding "where the government action is so far removed from its distant (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing").

Even if there was a casual link here, Plaintiff's harms cannot be redressed by his claims against the Commission. Plaintiff seems to seek monetary damages from the Commission and a declaration that the Commission's inaction breached non-discretionary duties under the Securities Act § 20(a). (Doc. 73 at 14). As discussed below, sovereign immunity bars Plaintiff's claims for monetary damages against the Commission, thus his injuries cannot be redressed. *Dee v. Granholm*, No. 23-1950, 2024 WL 4263831, at *4 (D.D.C. Sept. 23, 2024) ("If a claim is barred by sovereign immunity, it is not redressable.") (citing *Seed v. Env't Prot. Agency*, 100 F.4th 257, 265 (D.C. Cir. 2024)). Second, the declaration Plaintiff requests would not redress his alleged economic harms. Thus, Plaintiff fails to establish the element of redressability.

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to standing be **GRANTED**. (Doc. 93). Because Plaintiff does not have standing to bring his claims against the Commission, these claims should be **DISMISSED WITH PREJUDICE**.

    ii.   **Sovereign Immunity**

Even if Plaintiff had standing, Plaintiff's claims against the Commission are barred by sovereign immunity. Sovereign immunity is jurisdictional in nature and deprives a court of subject matter jurisdiction. *See Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). "[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."

9

*Lehman v. Nakshian*, 453 U.S. 156, 160 (1981). Only Congress can consent to suit against the United States and "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted). Typically, in determining whether subject-matter jurisdiction exists, "[c]ourts must strictly construe all waivers of the federal government's sovereign immunity, [resolving] all ambiguities in favor of the sovereign." *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998). The plaintiff bears the burden of showing unequivocal waiver of sovereign immunity. *St. Tammany Parish, ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009).

The Commission argues Plaintiff does not identify any statute that waives sovereign immunity over his claims. (Doc. 93 at 15). The Court agrees. In his Complaint, Plaintiff claims the court has jurisdiction pursuant to 28 U.S.C. § 1331 for claims under the Securities Act; 28 U.S.C. § 1332(a) for diversity jurisdiction; supplemental jurisdiction under 28 U.S.C. § 1367 for his state law negligence claims; and pursuant to the Declaratory Judgment Act. (Doc. 73 at 4). First, general jurisdictional statutes such as 28 U.S.C. §§ 1331, 1332, 1367 do not waive sovereign immunity. *Smith v. Booth*, 823 F.2d 94, 97 (5th Cir. 1987); *Richardson v. FDA*, No. 08-CV-0209, 2008 WL 4393481, at *2 (N.D. Tex. Sept. 25, 2008); *Mocek v. City of Albuquerque*, No. CIV 11-1009, 2013 WL 312881, at *66 (D. N.M. Jan. 14, 2013); *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 201 (D.D.C. 2013). Second, the Declaratory Judgment Act only conveys subject matter jurisdiction in cases where it already exists, and it does not waive sovereign immunity. *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997); *Smart v. Holder*, No. 09-CV-101, 2009 WL 2498213, at *4 (W.D. Tex. Aug. 12, 2009) (quoting *Anderson v. United States*, 229 F.2d 675, 677 (5th Cir. 1956)).

While Plaintiff's Complaint does not claim any other statute that waives sovereign immunity, the Commission in its Motion to Dismiss address both the Federal Tort Claims Act ("FTCA") and the Administrative Procedure Act ("APA"). (Doc. 93 at 15). As the Commission explains, both these statutes can waive sovereign immunity, but they are inapplicable to Plaintiff's claims. *Id*. Plaintiff argues in direct opposition to the Commission. (Doc. 103 at 10–11).

To start, this Court does not have jurisdiction over the Commission because of the FTCA. "The FTCA waives sovereign immunity and permits suit against *the United States* for claims sounding in state tort law for money damages." *Cantu Silva v. United States*, 110 F.4th 782, 787 (5th Cir. 2024) (emphasis added). "It is beyond dispute that the United States, and not the responsible agency or employee, is the proper party defendant in a Federal Tort Claims Act suit." *Naranjo v. Thompson*, No. 11-CV-105, 2017 WL 11638032, at *4 (W.D. Tex. Mar. 6, 2017); 28 U.S.C. § 1346(b) (". . . shall have exclusive jurisdiction of civil actions on claims *against the United States*, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]") (emphasis added). The United States is not a party to this action. Instead, Plaintiff has chosen to bring suit against a federal agency. Because Plaintiff sued the agency and not the United States, the Court finds it does not have jurisdiction arising out of the FTCA to hear Plaintiff's claims for money damages against the Commission.

Additionally, the APA does not waive sovereign immunity over Plaintiff's claims. Under § 702 of the APA, sovereign immunity is waived for claims seeking non-monetary damages when a person is "suffering legal wrong because of agency action, or adversely affected or

11

aggrieved by agency action." 5 U.S.C. § 702. The Commission identifies two primary issues with waiving sovereign immunity under the APA for Plaintiff's claims: (1) § 702's waiver of sovereign immunity does not apply when the agency action is discretionary and (2) § 702's waiver of sovereign immunity only applies to Plaintiff's claims if an "agency action" harmed him. (Doc. 93 at 17–19). The Court agrees that if Plaintiff had properly argued sovereign immunity is waived under the APA, his claims should fail under these principles.

First, § 702's waiver of sovereign immunity does not apply when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Again, Plaintiff's claim is that the Commission did not investigate the 2019 email it received, and he argues the Commission had a "non-discretionary duty under Securities Act § 20(a)" to investigate, address the violations, and enjoin the fraud. (Doc. 73 at 7–8). However, the statute Plaintiff cites *explicitly* gives the Commission discretion to investigate. 15 U.S.C. § 77t(a) (alternatively cites as Securities Act § 20) ("Whenever it shall appear to the Commission, either upon complaint or otherwise, that the provisions of this subchapter, or of any rule or regulation prescribed under authority thereof, have been or are about to be violated, it may, *in its discretion*, either require or permit such person to file with it a statement in writing, under oath, or otherwise, as to all the facts and circumstances concerning the subject matter which it believes to be in the public interest to investigate, and may investigate such facts.") (emphasis added). Further, the Supreme Court "has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Accordingly, § 702's waiver of sovereign immunity applies to Plaintiff's claims against the Commission. *See id*. at 838 ("The general exception to reviewability provided by § 701(a)(2) for action 'committed to

agency discretion' remains a narrow one but within that exception are included agency refusals to institute investigative or enforcement proceedings, unless Congress has indicated otherwise.") (internal quotations omitted); *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984) ("It appears, in short, that Congress intended to vest the SEC with considerable discretion in determining when and how to investigate possible violations of the statutes administered by the Commission.").

Second, Plaintiff's complaints against the Commission do not constitute agency action. At best, Plaintiff alleges the Commission's inaction. While § 702 does contemplate an agency's failure to act, it is "properly understood as a failure to take an *agency action*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). And an agency action "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof." 5 U.S.C. § 551(13). Plaintiff wholly fails to allege the Commission did not take such an action. *Norton*, 542 U.S. at 63 (stating a failure to act is, "for example, the failure to promulgate a rule or take some decision by a statutory deadline").

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to sovereign immunity be **GRANTED**. (Doc. 93). Because the Commission's sovereign immunity bars Plaintiff's claims, the claims should be **DISMISSED WITH PREJUDICE**.

### B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Even if Plaintiff had standing and the Commission's sovereign immunity did not bar his claims, Plaintiff failed to state a claim for which relief can be granted.

### i. Securities Exchange Act § 10(b) and Rule 10b-5

"Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person to use or employ, in connection with the purchase or sale of any security, any manipulative or

deceptive device or contrivance in contravention of such rules and regulations as the SEC may prescribe." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260 (2024) (internal quotations omitted). "Rule 10b–5 implements this prohibition and makes it unlawful for issuers of registered securities to 'make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *Id.* (quoting 17 C.F.R. § 240.10b–5(b) (2022)). The Supreme Court has interpreted Section 10(b) to provide a right of action to purchasers or sellers of securities injured by its violation. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318 (2007). "But the statutes make these latter actions available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

"To state a claim under § 10(b) of the Securities Exchange Act and SEC Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter (a 'wrongful state of mind'); (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a 'causal connection between the material misrepresentation and the loss.'" *Mun. Employees' Ret. Syst. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019) (quoting *Dura Pharm.*, 544 U.S. at 341–42). In pleading scienter, Plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (citing 15 U.S.C. § 78u-4(b)(2)(a)).

In his Response, Plaintiff argues he has met each element:

> Alleges SEC's reckless inaction enabled fraud/manipulation (scienter via 2019 tip knowledge, bias from Angel payments). Causation/loss: Delay post-tip caused $65M harm. Reliance:

14

> Presumed in omission cases. Viable claim. SEC's interventions elsewhere highlight inaction here as scienter.

(Doc. 93 at 12) (internal citations omitted). However, the Court finds Plaintiff failed to allege factual allegations to meet most of the elements, let alone all of them. For example, the root of his claim stems back to Plaintiff believing the Commission had a duty to investigate the 2019 email. As discussed above, this is not an actionable claim because the Commission has discretion to investigate, thus this fact cannot constitute the material omission. Further, the Commission's knowledge of the 2019 email and payments to Professor Angel do not establish a strong inference that the Commission intended to "deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319 ("To establish liability under § 10(b) and Rule 10b–5, a private plaintiff must prove that the defendant acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud."). And Plaintiff does not allege he bought or sold any securities in reliance on the Commission's conduct. Finally, again, Plaintiff has not provided any facts to connect the actions of the Commission to his economic losses.

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to Plaintiff's claim for violation of the Securities Exchange Act § 10(b) and Rule 10b-5 be **GRANTED** (Doc. 93) for failure to state a claim, and this claim should be **DISMISSED WITH PREJUDICE**.

    ii.    **Negligence**

In his Complaint, Plaintiff alleges the Commission owed Plaintiff a duty to maintain market integrity, the Commission breached that duty by failing to act on known fraud, which caused economic harm. (Doc. 73 at 13). The Commission pushes back, arguing it does not owe a duty of care to individual investors and, even if it did, the Commission did not breach that duty

because the 2019 email created no obligation to investigate. (Doc. 93 at 20–22). The Court agrees with the Commission.

The Commission relies primarily on *Grady* to show its lack of duty. *Grady v. United States*, No. 13-15C, 2013 WL 4957344 (Fed. Cl. July 31, 2013), *aff'd*, 565 F. App'x 870 (Fed. Cir. 2014). In *Grady*, a *pro se* plaintiff brought suit against the Commission after sustaining a financial loss during a stock market "Flash Crash." *Id*. at *1. There, the plaintiff argued the 1934 Securities Act imposed a fiduciary duty on the Commission to investors to maintain "fair and orderly markets." *Id*. at *3. The Court found the Commission "has no such duty, however, because the statute does not establish any sort of trust relationship that benefits investors." *Id*. This Court follows *Grady*. Further, courts have refused to find the Commission owes a duty of care to individual investors, because if it did, the Commission "would become the guarantor of the investment decisions of individuals who choose to participate in regulated markets. While, undoubtedly, one function of the SEC is to protect the public from people [committing fraud], to impose an obligation on the government to expend the resources sufficient to uncover every wrong which could be discovered from a proper investigation is to impose an unlimited obligation on the government to spend its resources on such endeavors, whether or not fiscal policy concerns might require otherwise." *Baer v. United States*, No. 11-1277, 2011 WL 6131789, at *7 (D.N.J. Dec. 8, 2011). The Commission is not liable for individual investors' losses; thus, Plaintiff has failed to state a recoverable claim for negligence.

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to Plaintiff's claim for negligence be **GRANTED** (Doc. 93) for failure to state a claim, and this claim should be **DISMISSED WITH PREJUDICE**.

    iii.    **Declaratory Judgment**

Plaintiff seeks a declaration that the Commission's "inaction breached non-discretionary duties under Securities Act § 20(a), failing to protect investors from known fraud." (Doc. 73 at 14–15). Plaintiff claims these declarations are necessary to remedy harm to Plaintiff and 65,000 other investors. *Id*. at 15.

However, the Declaratory Judgment Act provides no independent cause of action. *Texas v. Ysleta del Sur Pueblo*, 367 F. Supp. 3d 596, 602 (W.D. Tex. 2019); *Carson v. Fed. Nat'l Mortgage Assoc.*, No. 11-CA-925, 2012 WL 13029757, at *2 (W.D. Tex. Jan. 26, 2012). Rather, "[i]n a declaratory judgment action, the parties litigate the underlying claim, and the declaratory judgment is merely a form of relief that the court may grant." *Val-Com Acquisitions Tr. v. CitiMortgage, Inc.*, 421 F. App'x 398, 400–01 (5th Cir. 2011). Because the Court has found Plaintiff's only substantive claims fail to state a cause of action, Plaintiff has no underlying claim to tether his claim under the Declaratory Judgment Act to. *Id*. at 401 ("After the district court dismissed the TILA and RESPA claims for failure to state a claim under Rule 12(b)(6), there was no underlying claim for the court to adjudicate and the court could not declare a violation of TILA or RESPA."). Additionally, as the Court has already discussed, as a matter of law, the Commission did not have any such non-discretionary duty that Plaintiff seeks declared.

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to Plaintiff's declaratory judgment claim be **GRANTED** (Doc. 93) for failure to state a claim, and this claim should be **DISMISSED WITH PREJUDICE**.

## IV.   RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** the Commission's Motions to Dismiss Plaintiff's Second Amended Complaint under Rule 12(b)(1) and, alternatively 12(b)(6), be **GRANTED**. (Doc. 93). Further, the Court **RECOMMENDS** Plaintiff's claims as to the

Commission for a violation of the Securities Exchange Act § 10(b) and Rule 10b-5, negligence, and declaratory judgment be **DISMISSED WITH PREJUDICE**.

SIGNED this 19th day of December, 2025.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).